UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:12-cv-21678-LENARD/O'SULLIVAN

KATRINA GARCIA, LAURA EGGNATZ,
and JULIE MARTIN, individually, and on
behalf of all others similarly situated,

     *Plaintiffs*,

    vs.

KASHI COMPANY, a California
Corporation, and THE KELLOGG
COMPANY, a Michigan Corporation,

     *Defendants.*

_____/

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

| | | |
|---|---|---|
| JENNER & BLOCK LLP | JENNER & BLOCK LLP | FOWLER WHITE BOGGS P.A. |
| Dean N. Panos | Kenneth K. Lee | Edward M. Waller, Jr. |
| (admitted *Pro Hac Vice*) | (admitted *Pro Hac Vice*) | (FL Bar No. 0106341) |
| Richard P. Steinken | 633 West 5th Street | Ashley B. Trehan |
| (admitted *Pro Hac Vice*) | Suite 3600 | (FL Bar No. 43411) |
| 353 N. Clark Street | Los Angeles, CA 90071-2054 | 501 E. Kennedy Boulevard |
| Chicago, IL 60654-3456 | Phone: 213-239-5100 | Suite 1700 |
| Phone: 312-222-9350 | Fax: 213-239-5199 | Tampa, Florida 33602 |
| Fax: 312-527-0484 | | Phone: 813-222-1137 |
| | | Fax: 813-229-8313 |

*Attorneys for Defendants*

**INTRODUCTION**

It is undisputed that the FDA has declared that foods with bioengineered ingredients are not materially different from their non-bioengineered counterparts, and that they therefore do not require any special labeling. It is further undisputed that under federal law only USDA-certified organic products are guaranteed not to include any potential bioengineered ingredients. And it is beyond dispute that the FDA has declined to adopt a formal definition of "natural," citing to widely divergent and subjective definitions offered by members of the public.

Despite these U.S. government policies, Plaintiffs allege that Kashi's labeling of its products as "all natural" and "nothing artificial" is deceptive because the products (i) potentially contain bioengineered ingredients and (ii) include vitamins and high-protein soy that they allege were synthetically processed. As set forth in Kashi's opening brief and in this reply, Plaintiffs' Complaint must be dismissed for the following reasons:

First, their state law claims regarding bioengineered ingredients are preempted under federal law, as Plaintiffs seek to require labeling conditions on bioengineered ingredients in contravention of federal policy and regulations. Plaintiffs cannot circumvent FDA policy on bioengineered ingredients by claiming that they are merely objecting to the term "all natural," and not the presence of bioengineered ingredients. Otherwise, any plaintiff could execute an end-run around federal policy on bioengineered ingredients by imposing additional state law labeling conditions on bioengineered ingredients.   Redacted

Redacted

Second, the Court has the option of deferring to the FDA's expertise with respect to bioengineered ingredients under the primary jurisdiction doctrine. Several federal courts have recently dismissed virtually identical cases on the grounds that the FDA is better suited to determine whether foods with bioengineered ingredients can be described as "natural" and can issue a uniform policy that avoids conflicting judicial decisions.

Third, Plaintiffs' claims regarding the presence of bioengineered ingredients in Kashi products cannot survive the *Twombly*/*Iqbal* plausibility standard. They do not allege that Kashi products in fact contain such ingredients, but rather rely solely on Kashi's public statement that it is *possible* that GMO seeds commingled with non-GMO seeds during storage and shipment. The Supreme Court has held that "mere possibility" does not meet the plausibility requirement.

Fourth, Plaintiffs in their opposition do little to save their individual causes of action. The consumer protection claims fail, as Plaintiffs have alleged no reason why a reasonable consumer would be misled by Kashi's labeling, and the negligent misrepresentation claim fails to the extent that claim is based on unidentified advertising. Further, Plaintiffs' warranty claims must be dismissed for lack of privity.

## ARGUMENT

### I. Plaintiffs' GMO Claims Are Preempted Because They Seek to Impose a Labeling Requirement Contravening FDA Policy and Federal Regulations.

As explained in Kashi's motion (p. 6), Plaintiffs seek to impose a labeling standard for products with bioengineered ingredients that conflicts with the FDA's decades-long policy on the labeling of bioengineered food. The FDA has consistently held that bioengineered ingredients are not materially different from their traditional counterparts and that they do not require any special labeling. *See* Ex. 3 at 22,991.[1] The FDA has even stated that it may be potentially misleading to suggest that foods with non-bioengineered ingredients are superior to foods with bioengineered ingredients. *See* Mot. at 4. Therefore, Plaintiffs' state law claims alleging mislabeling based on the presence of bioengineered ingredients are preempted under federal law.

Further, Plaintiffs' claims are preempted because they conflict with FDA labeling regulations that state a food is considered misbranded unless its label bears "the common or usual name of each such ingredient." 21 U.S.C. § 343(i)(2). The FDA has stated that "terms that describe an ingredient of a multi-ingredient food as bioengineered *should not be used* in the ingredient list of the multi-ingredient food," as each ingredient must be identified solely "by its common or usual name." Ex. 5 at 3 (emphasis added). Therefore, to avoid misbranding its products, Kashi must identify all ingredients by their common names, irrespective of the use of bioengineering in their development. Plaintiffs' claims, however, are based on the premise that bioengineered products must be labeled differently than other ingredients so as to avoid customer

---

[1] Plaintiffs argue that "since the 1992 Statement of Policy on genetically engineered food, FDA has backtracked on its original policy." Opp. at 7. This argument is wrong. In 2005, an FDA scientist testifying before the Senate reconfirmed the FDA's determination that it is "not aware of any information showing that foods derived by [bioengineered] methods differ from other foods in any meaningful or material way," and that the "1992 [policy] statement and its scientific underpinnings still reflect FDA's thinking about bioengineered foods." http://www.fda.gov/NewsEvents/Testimony/ucm112927.htm (last visited Jan. 3, 2014).

2

confusion.  Plaintiffs thus try to impose a state law requirement that is "not identical" to the federal requirements that govern this aspect of labeling.  *See* 21 U.S.C. § 343-1(a).

The Ninth Circuit's recent decision in *Pom Wonderful LLC v. Coca-Cola Co.* forecloses Plaintiffs' claims.  679 F.3d 1170 (9th Cir. 2012).  There, the Ninth Circuit held that Lanham Act claims related to allegedly misleading juice labels were preempted because Congress had delegated the area of juice labeling to the FDA.  *Id.* at 1174-75.  Despite the fact that the FDA had "not taken a view on whether Coca-Cola's labeling misleads consumers" and had "not established a general mechanism to review juice beverage labels before they reach consumers," the court found the claim preempted, as "[w]e are primarily guided in our decision . . . by Congress's decision to entrust matters of juice beverage labeling to the FDA and by the FDA's comprehensive regulation of that labeling."  *Id.* at 1178.  That rationale is directly applicable here.  Although the FDA has "not taken a view on whether [Kashi's] labeling misleads consumers," the agency has acted "extensively and carefully" in regulating food labeling, and natural and bioengineered foods in particular.  *See id.*  Notably, Plaintiffs' opposition brief does not address *Pom Wonderful*.

Nor can Plaintiffs avoid preemption by arguing that their claims relate to the "all natural" label.  Federal courts have rejected such attempts as an end-run around preemption because the *sole* reason why Plaintiffs object to "all natural" is *because* of the presence of GMO ingredients that are expressly allowed by the FDA.  In other words, Plaintiffs are attempting to impose state law conditions in addition to federal law based on the presence of bioengineered ingredients.

The recent *Hairston v. South Beach Beverage Co.,* case is directly on point.  No. 12-1429, 2012 WL 1893818 (C.D. Cal. May 18, 2012).  In that case, the plaintiff similarly argued that it was only objecting to the term "all natural," and not the presence of allegedly artificial vitamins expressly allowed under federal law.  *Id*. at *9.  As the court put it in dismissing the complaint, a plaintiff "cannot avoid preemption of these claims by arguing that his claim relates solely to Defendants' 'all natural' representations . . . .  Plaintiff's argument would effectively allow Plaintiff to avoid preemption of those claims, and would undermine the purpose of the federal labeling standards which includes avoiding a patchwork of different state standards."  *Id.* at *9-10.  Allowing Plaintiffs here to proceed with state law claims of deception regarding the "all natural" label would "undermine the purpose of the federal labeling standards" regarding bioengineered foods.  *Id*.  Plaintiffs argue that *Hairston* is "distinguishable on its facts."  Opp. at

3

10. While *Hairston* deals with regulations governing fruit and vitamin names, the import of the case is directly applicable: preemption of Plaintiffs' GMO claims based on the FDA's common name regulations precludes Plaintiffs' claims regarding the "all natural" label.

Plaintiffs also attempt to distinguish the decision in *In re Pepsico, Inc., Bottled Water Mktg. and Sales Practices Litig.*, 588 F. Supp. 2d 527 (S.D.N.Y. 2008), on the basis that no federal regulation applies to bioengineered ingredients in natural foods. Opp. at 10. This argument misses the mark, as the FDA policies here are entitled to preemptive effect. *See, e.g.*, *Degelmann v. Advanced Med. Optics, Inc.* 659 F.3d 835, 841-42 (9th Cir. 2011).[2] Given these controlling federal policies, the rationale of *In re Pepsico* is directly on point. There, the court rejected the plaintiff's argument that "state requirements are permitted as long as the federal standard does not specifically address the terms or images at issue." 588 F. Supp 2d at 538. Instead, the court held that "[w]here federal requirements address the subject matter that is being challenged through state law claims, such state law claims are preempted to the extent they do not impose identical requirements." *Id*. Here, the federal policies do not expressly prohibit or permit natural claims on foods containing bioengineered ingredients. But Florida and California cannot impose the non-identical requirement that Kashi must identify that its products contain GMOs if it describes its products as "natural," or conversely, that Kashi cannot make natural claims on packaged foods containing bioengineered ingredients. In short, Plaintiffs cannot attach additional state "strings" to federal standards for ingredient disclosures, because they are not "identical to federal standards." *Id.* at 538-39.

Redacted

---

[2] Plaintiffs' reliance on *Briseno v. Conagra Foods*, 2011 U.S. Dist. LEXIS 154750 (C.D. Cal. Nov. 23, 2011) is unavailing. *See* Opp. at 8. *Briseno* was decided before the Ninth Circuit's ruling in *Pom Wonderful*, and Kashi respectfully submits that, had the *Briseno* court applied the analysis compelled by *Pom Wonderful*, it would have found the plaintiff's claims preempted.

Redacted

### III. In the Alternative, the Court Should Defer to the FDA Under the Primary Jurisdiction Doctrine.

The parties agree that the primary jurisdiction analysis is governed by the factors set forth in *In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practices Litig.*, --- F. Supp. 2d ---, 2013 WL 3830124, at *26 (S.D. Fla. 2013). Opp. at 12. However, Plaintiffs distort Kashi's argument by asserting that "Congress has not placed the need to resolve consumer fraud issues within FDA's jurisdiction." Opp. at 13. Kashi does not allege that *all* consumer fraud issues must be deferred to the FDA. Rather, Kashi asserts that the primary jurisdiction doctrine should be invoked as to Plaintiffs' specific claims regarding natural and bioengineered foods.

As explained in Kashi's motion, the FDA has established a policy on natural foods that prohibits unexpected ingredients. Mot. at 2. Further, the FDA is actively involved in the regulation of bioengineered foods and has appointed a Biotechnology Evaluation Team. As the Florida Supreme Court has recognized, "the doctrine of primary jurisdiction counsels in favor of

Redacted

having an administrative agency with the experience and expertise to deal with the complex issues raised in this case." *Flo-Sun, Inc. v. Kirk*, 783 So. 2d 1029, 1041 (Fla. 2001).

No fewer than [four] federal courts have recently held that the FDA is better suited to determine whether foods with bioengineered ingredients should be described as "natural." *See* Mot. at 11-13. This Court should join these other courts and defer to the FDA's expertise to ensure uniform administration of federal policy here.[4]

### IV. Plaintiffs' GMO Claims Fail to Meet the Plausibility Standard.

Relying on outdated case law, Plaintiffs allege that dismissal is appropriate only if Plaintiffs can prove "no set of facts" that would entitle them to relief. Opp. at 5. The Supreme Court specifically rejected this standard in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 562-63 (2007), articulating in its place a plausibility standard that requires a plaintiff to provide "more than a sheer possibility that the defendant has acted unlawfully" to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This plausibility standard governs here.

Despite Plaintiffs' contention that they have alleged sufficient facts regarding the presence of GMOs in Kashi products, the allegations in the Complaint are wholly conclusory. Plaintiffs rely only on the "prevalence of GMOs in corn and soy products" generally (Opp. at 17), but such allegations are insufficient to establish the plausibility of Plaintiffs' claims about Kashi's specific products. *See Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1355-56 (S.D. Fla. 2012) (dismissing FDUTPA claim that "fail[ed] to provide . . . specific details regarding how Plaintiff kn[ew]" defendant's honey did not contain pollen). They have not alleged a single fact indicating that Kashi products have any trace of GMO ingredients. Their sole basis for their lawsuit is that Kashi publicly stated that it is "possible" that GMO seeds may have commingled with non-GMO seeds in shipment and storage.

### V. Plaintiffs Cannot Save Their Individual Causes of Actions.

#### A. The FDUTPA, UCL, FAL, and CLRA claims fail because plaintiffs cannot explain why a reasonable consumer would be misled.

Plaintiffs first contend that their consumer protection claims "cannot be resolved on a motion to dismiss." Opp. at 17. But it is not enough to merely recite the mantra that alleged

---

[4] Cases cited by Plaintiffs are easily distinguishable. For example, *In re Horizon Milk*, No. 12-2324, 2013 WL 3830124 (S.D. Fla. July 24, 2013 involved DHA, which (unlike GMOs) has not been the focus of multiple FDA policies and declarations.

6

factual issues preclude dismissal. Product mislabeling claims are properly and commonly dismissed under Rule 12(b)(6) when they can be decided as a matter of law.[5] Here, Plaintiffs' claims can be decided as a matter of law.

First, the Complaint never articulates a plausible definition of what "natural" means in the context of packaged products. It is not enough to offer the tautological definition that "natural" products must be "natural" because consumers understand that packaged Kashi protein bars, for example, do not grow naturally from trees or plants — they require some human intervention and processing. Indeed, the FDA declined to adopt a definition of the word "natural" because the public offered widely varying subjective definitions of the word "natural."

The recent decision *Pelayo v. Nestle USA, Inc.*, is directly on-point. No. 13-5213, 2013 WL 5764644, at *4 (C.D. Cal. Oct. 25, 2013) (dismissing claim as to "all natural" packaged pasta because plaintiff did not offer a plausible definition of "natural" for packaged products). Though Plaintiffs try to distinguish the case as an outlier, other courts have adopted *Pelayo*'s holding that a plaintiff's implausible definition of "natural" necessitates dismissal of claims based on allegedly mislabeled "natural" products. In *Balser v. Hain Celestial Group, Inc.*, the court cited *Pelayo* in dismissing with prejudice a consumer class action alleging mislabeling of "natural" shampoo. No. 13-5604, 2013 WL 6673617, at *1-2 (C.D. Cal. Dec. 18, 2013). The court held that "no reasonable consumer would be misled" by the natural label because "there are no shampoo trees," and thus "Plaintiffs cannot plausibly allege they were deceived to believe shampoo was 'existing in or produced by nature.'" *Id.* Here, similarly, no reasonable consumer would be misled into believing that Kashi's packaged foods were, as Plaintiffs define the term "natural," "untouched by scientific modifications." Compl. ¶ 4.

Lastly, Plaintiffs assert with respect to the bioengineered ingredients that the issue of genetically modified foods is a highly significant issue and is thus "material" to a reasonable consumer. Opp. at 18-19. Even assuming that is true, it is irrelevant. The FDA has held that the presence of bioengineered ingredients is *not a material fact* for purposes of food labeling and, therefore, does not need to be disclosed or labeled any differently than its traditional counterpart. Further, a reasonable consumer would not be deceived by the term "natural" because the federal

---

[5] *See, e.g., Sugawara v. Pepsico, Inc.*, No. 08-01335, 2009 U.S. Dist. LEXIS 43127, at *13-14 (E.D. Cal. May 21, 2009) (granting 12(b)(6) motion to dismiss food mislabeling claim); *McKinniss v. Sunny Delight Beverages Co.*, No. 07-02034, 2007 WL 4766525, at *1, *7 (C.D. Cal. Sept. 4, 2007) (same).

7

government has issued certified organic regulations for consumers who want food that is guaranteed not to have any potential GMO ingredients. *See* Mot. at 16.

### B. The negligent misrepresentation claim must be dismissed to the extent it is based on unidentified advertising.

Although Plaintiffs' negligent misrepresentation claim is based on "advertising not related to the label" (Compl. ¶ 90), the Complaint fails to identify a single piece of advertising that Plaintiffs saw and allegedly relied upon aside from Kashi's product packaging. Plaintiffs make vague references in their opposition brief to statements made on Kashi's website and in print and television advertisements. Opp. at 21-22. However, the Complaint includes no mention of *any* print or television commercials, and does not allege that the Plaintiffs saw or relied upon Kashi's website. Compl. ¶ 29. Plaintiffs assert that "Defendants are in a better position [than Plaintiffs] to identify all of their advertising." Opp. at 22. Kashi cannot be tasked with Plaintiffs' burden of identifying with particularity the advertising on which they allegedly relied. *See McGee v. JP Morgan Chase Bank, NA*, 520 Fed. App'x 829, 831 (11th Cir. 2013).[6]

### C. Florida requires privity for warranty claims.

Plaintiffs assert that Florida courts have "relaxed" the privity requirement for warranty claims in consumer class actions. For express warranty claims, many courts have *refused* to deviate from the privity historically required under Florida law. *See, e.g.*, *Hill v. Hoover Co.*, 899 F. Supp. 2d 1259, 1267 (N.D. Fl. 2012) (dismissing express and implied warranty claims brought by consumer against vacuum manufacturer because "the Plaintiff has failed to plead that she was in privity with the Defendants"); *Yvon v. Baja Marine Corp.*, 495 F. Supp. 2d 1179, 1184 (N.D. Fla. 2007) (privity required for consumers' express warranty claim regarding faulty product).[7] For implied warranty claims, Florida courts have consistently refused to relax the privity requirement in any context. In *Kramer v. Piper Aircraft Corp.*, 520 So. 2d 37 (Fla. 1988),

---

[6] Though Kashi maintains that Rule 9(b) applies to Plaintiffs' negligent misrepresentation claim (*see Lehman Bros. Holdings, Inc. v. Fearer*, 12–60434, 2012 WL 6214438, at *3 (S.D. Fla. Dec. 13, 2012)), Plaintiffs' claim is insufficient under Rule 8(a) as well.

[7] Plaintiffs also argue that *Sencer v. Carl's Markets, Inc.*, 45 So. 2d 671 (Fla. 1950) and *Florida Coca-Cola Bottling Co. v. Jordan*, 62 So. 2d 910 (Fla. 1953) save their express warranty claims. Opp. at 22-23. Those cases are inapposite for two key reasons. First, they involved only *implied* warranty claims. *See Sencer*, 45 So. 2d at 672; *Jordan*, 62 So. 2d at 910. Second, any exceptions recognized in these earlier cases were explicitly overruled by the Florida Supreme Court in *Kramer v. Piper Aircraft Corp.*, 520 So. 2d 37 (Fla. 1988) discussed below.

8

the Florida Supreme Court held unanimously that "the doctrine of strict liability in tort supplants *all* no-privity, breach of implied warranty cases," such that an implied warranty claim remains *only* "where privity of contract is shown." *Id*. at 39 (emphasis added) (citation omitted); *see also David v. Am. Suzuki Motor Corp.*, 629 F. Supp. 2d 1309, 1321-23 (S.D. Fla. 2009).

> **D.    Plaintiffs' declaratory judgment claim should be dismissed.**

Plaintiffs argue that their declaratory and injunctive relief claim is properly pled because it has been pleaded "in the alternative" to Plaintiffs' warranty claims. Opp. at 21. This argument does not save the declaratory-relief claim from dismissal, as courts regularly dismiss declaratory-relief claims that are duplicative of substantive claims in a complaint.

> **E.    Plaintiffs' money had and received claim fails under California (and Florida) law.**

Plaintiffs do not dispute that their money had and received claim cannot survive under California law because they provided *no money* to be used for Plaintiffs' benefit; rather, they paid money in exchange for products. *See Avidor v. Sutter's Place, Inc.*, 151 Cal. Rptr. 3d 804, 816 (2013). Now Plaintiffs attempt to reframe their claim as an unjust enrichment claim under Florida law. Opp. at 23. Setting aside Plaintiffs' explicit reliance on California law (Compl. ¶ 121), their unjust enrichment claim must be dismissed because "[i]t is well settled in Florida that unjust enrichment is . . . not available where there is an adequate legal remedy." *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005).

## VI.    Plaintiffs Lack Standing As To Products They Did Not Purchase.

Plaintiffs do not dispute that they allege to have purchased only eight of the eighty-one diverse products challenged in this action. Compl. ¶¶ 21-23, 33-34. Plaintiffs argue, however, that they have standing as to all of the challenged products because the products are "sufficiently similar." Opp. at 23-24. In the alternative, Plaintiffs claim that the standing issue should be left for resolution at the class certification stage. *Id.* at 24. Neither of these arguments is availing.

First, Plaintiffs point to no Eleventh Circuit case law adopting the "sufficient similarity" analysis. In fact, a judge in this District held very recently that a named plaintiff in a consumer class action lacked standing to pursue claims regarding products he did not purchase because he could not "plead that he suffered any injury with regard to [those] products." *Toback v. GNC Holdings, Inc.*, No. 13-80526, 2013 WL 5206103, at *4-5 (S.D. Fla. Sept. 13, 2013). The court

9

did not consider the similarity of the products, even though they came from the same product line, were advertised similarly, and contained the same challenged ingredients. *Id.* at *1.[8]

Second, deferral of the standing inquiry is particularly inappropriate in the Eleventh Circuit, where "Article III standing of a named plaintiff must be established on a claim-by-claim basis." *Id.* at *4 ("the law . . . is clear that at least one named plaintiff must establish Article III standing for each class subclaim"). For this reason, "deferring the standing determination to the class certification stage will yield no different result." *Id.*

### VII. Plaintiffs Cannot Save Kellogg Company From Dismissal.

Plaintiffs agree that "[a] parent corporation will not be held liable for the actions of its subsidiary unless the subsidiary is deemed to be a mere instrumentality of the parent." Opp. at 24-25 (citation omitted) (internal quotation marks omitted). Yet nothing in the Complaint suggests that Kashi is entirely controlled by Kellogg.[9] Plaintiffs must state specific facts justifying the piercing of the corporation veil. *See Pegasus Imaging Corp. v. Northrop Grumman Corp.*, Case No. 07-1937, 2008 WL 5099691, at *3 (M.D. Fla. Nov. 24, 2008) (dismissing claim against parent company because the complaint "fail[ed] to include sufficient factual allegations of [the parent company's] direct participation in the decisions, processes, or personnel directly responsible for" the allegedly unlawful activity).

### CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Second Amended Complaint in its entirety with prejudice.

---

[8] Even if this Court were to adopt the "sufficient similarity" test, the Kashi products would fail, as the only similarity among many of them is that they are produced by Kashi and advertised as natural. *See Larsen v. Trader Joe's Co.*, No. 11-05188, 2012 WL 5458396, at *4-5 (N.D. Cal. June 14, 2012) (dismissing consumer class action claims based on Trader Joe's "all natural" crescent rolls, which plaintiffs had not purchased, where the other challenged products included Trader Joe's "all natural" cookies, juice, and cinnamon rolls).

[9] Plaintiffs cannot rely on facts outside the Complaint to survive a motion to dismiss. *See Bruhl v. PricewaterhouseCoopers*, No. 03-23044, 2007 WL 997362, at *4 (S.D. Fla. Mar. 27, 2007).

Dated:  January 6, 2014                                Respectfully submitted,

                                                <u>s/Edward M. Waller, Jr.</u>
Edward M. Waller, Jr. FBN 0106341
ewaller@fowlerwhite.com
Ashley B. Trehan FBN 43411
ashley.trehan@fowlerwhite.com
FOWLER WHITE BOGGS P.A.
P.O. Box 1438
Tampa, Florida  33601
Phone: 813-228-7411
Fax: 813-229-8313


JENNER & BLOCK LLP
Dean N. Panos (admitted *Pro Hac Vice*)
dpanos@jenner.com
Richard P. Steinken (admitted *Pro Hac Vice*)
rsteinken@jenner.com
353 N. Clark Street
Chicago, IL  60654-3456
Phone: 312-222-9350
Fax: 312-527-0484

JENNER & BLOCK LLP
Kenneth K. Lee (admitted *Pro Hac Vice*)
klee@jenner.com
633 West 5th Street
Suite 3600
Los Angeles, CA 90071-2054
Phone: 213-239-5100
Fax: 213-239-5199


Counsel for Defendants

11

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of January, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will provide electronic notice to all counsel of record on the Service List below.

s/Edward M. Waller, Jr.
Edward M. Waller, Jr.

## SERVICE LIST

### Garcia et al v. The Kellogg Company et al
### CASE NO. 12-cv-21678-LENARD/O'SULLIVAN

Howard W. Rubinstein, Esq.
howardr@pdq.net
Florida Bar. No. 104108
THE LAW OFFICE OF HOWARD W. RUBINSTEIN
1615 Forum Place, Ste. 4C
West Palm Beach, FL 33401
Tel: 832-715-2788

L. DeWayne Layfield
dewayne@layfieldlaw.com
Law Office of L. DeWayne Layfield
P. O. Box 3829
Beaumont, TX 77704
Tel: 409-832-1891

Robert A. Chaffin
robert@chaffinlawfirm.com
The Chaffin Law Firm
4265 San Filipe, Suite 1020
Houston, TX 77027
Tel: 713-528-1000
Fax: 713-952-5972

Angela Valentina Arango-Chaffin
Angela@ChaffinLawFirm.com
Chaffin Law Firm
1455 Ocean Drive
Apt 811
Miami, FL 33139
Tel: 713-818-2515
Fax: 561-750-3364

Benjamin M. Lopatin
lopatin@hwrlawoffice.com
The Law Offices of Howard W. Rubinstein, P.A.
One Embarcadero Center, Suite 500
San Francisco, CA 94111
Tel: 800-436-6437

Gillian L. Wade
gwade@milsteinadelman.com
Sara D. Avila
savila@milsteinadelman.com
Milstein Adelman & Kreger LLP
2800 Donald Douglas Loop North
Santa Monica, CA 90405
Tel: 310-396-9600

*Counsel for Plaintiffs Katrina Garcia, Laura Eggnatz and Julie Martin*