**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No.: 12-21678-CIV-LENARD/GOODMAN

LAURA EGGNATZ, KATRINA GARCIA,
and JULIE MARTIN,
individually, and on behalf of all others similarly situated,

       *Plaintiffs*,

    vs.

KASHI COMPANY, a California
Corporation,

       *Defendants.*
_____/

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY**
**APPROVAL OF CLASS ACTION SETTLEMENT**

**<u>TABLE OF CONTENTS</u>**

I.    INTRODUCTION ...................................................................................................1

II.   PROCEDURAL HISTORY....................................................................................2

     A.  The Litigation..............................................................................................2

     B.  Settlement Negotiations ..............................................................................3

III.  SUMMARY OF THE PROPOSED SETTLEMENT TERMS ..............................5

     A.  The Settlement Class....................................................................................5

     B.  Monetary Relief for the Settlement Class....................................................5

     C.  Non-Monetary Relief ..................................................................................6

     D.  Class Release ...............................................................................................7

     E.  The Notice Program and Settlement Administration...................................7

          1.  The Publication Notice Program......................................................8

          2.  The Settlement Website and the Toll-Free Settlement Phone Line............9

          3.  Settlement Administration ...............................................................9

     F.  Service Awards, Attorneys' Fees and Costs ...............................................10

IV.  LEGAL STANDARD FOR PRELIMINARY APPROVAL ...............................10

V.   THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ...................12

     A.  The Settlement Was the Result of Serious, Informed, and Non-Collusive Arm's Length Negotiations...............................................................................13

     B.  The Settlement is Fair, Adequate and Reasonable.......................................14

          1.  Likelihood of Success at Trial .......................................................15

          2.  Range of Possible Recovery and the Point On or Below the Range of Recovery at Which a Settlement is Fair .......................................................15

          3.  Complexity, Expense and Duration of Litigation ....................................17

4. Stage of the Proceedings ............................................................................................18

VI.  THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED ............................18

A.  The Settlement Class Satisfied Rule 23(a)...................................................................19

B.  The Settlement Class Satisfies Rule 23(b)(3) ..............................................................21

VII.  THE NOTICE PROGRAM IS APPROPRIATE AND SHOULD BE APPROVED...........22

VIII.  THE PROPOSED SCHEDULE OF EVENTS ....................................................................23

IX.  CONCLUSION....................................................................................................................24

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

*Adams v. Inter-Con Sec. Sys., Inc.* (N.D. Cal. Oct. 30, 2007)
2007 WL 3225466 ...........................................................................................13

*Appleyard v. Wallace* (11th Cir. 1985)
754 F.2d 955 ...................................................................................................20

*Association for Disabled Americans, Inc. v. Amoco Oil Co.* (S.D. Fla. 2002)
211 F.R.D. 457................................................................................................10

*Behrens v. Wometco Enterprises, Inc.* (S.D. Fla. 1988)
118 F.R.D. 534................................................................................................16

*Bennett v. Behring Corp.* (11th Cir. 1984)
737 F.2d 982 .............................................................................................10, 11

*Bonner v. City of Prichard* (11th Cir. 1981)
661 F.2d 1206 .................................................................................................11

*Borcea v. Carnival Corp.* (S.D. Fla. 2006)
238 F.R.D. 664................................................................................................18

*Busby v. JRHBW Realty, Inc.* (11th Cir. 2008)
513 F.3d 1314 .................................................................................................20

*Bussey v. Macon Cnty. Greyhound Park, Inc.* (11th Cir. 2014)
562 F. App'x 782 .............................................................................................21

*Cotton v. Hinton* (5th Cir. 1977)
559 F.3d 1326 ...........................................................................................10, 15

*Eisen v. Carlisle & Jacquelin* (1974)
417 U.S. 156 ...................................................................................................22

*Francisco v. Numismatic Guaranty Corp. of Am.* (S.D. Fla. Jan. 31, 2008)
2008 WL 649124 .............................................................................................13

*In re Disposable Contact Lens Antitrust Litig.* (M.D. Fla. 1996)
170 F.R.D. 524................................................................................................20

*In re Employee Benefit Plans Sec. Litig.* (D. Minn. June 2, 1993)
1993 WL 330595 .............................................................................................13

iii

*In re Indep. Energy Holdings PLC* (S.D.N.Y. Sept. 29, 2003)
   2003 WL 22244676 ...............................................................................................13

*In re U.S. Oil and Gas Litig.* (11th Cir. 1992)
   967 F.2d 489 ........................................................................................................10

*In re Warner Comm. Sec. Litig.* (S.D.N.Y. 1985)
   618 F. Supp. 735 ..................................................................................................14

*Karhu v. Vital Pharmaceuticals* (11th Cir.)
   14-11648 ...............................................................................................................14

*Kilgo v. Bowman Trans.* (11th Cir. 1986)
   789 F.2d 859 ........................................................................................................19

*Kirkpatrick v. J.C. Bradford & Co.* (11th Cir. 1987)
   827 F.2d 718 ........................................................................................................20

*Little v. T-Mobile USA, Inc.* (11th Cir. 2012)
   691 F.3d 1302 ......................................................................................................21

*Lipuma v. Am. Express Co.* (S.D. Fla. 2005)
   406 F.Supp.2d 1298 ..................................................................................15, 16, 18

*Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan* (11th Cir. 2000)
   221 F.3d 1235 ......................................................................................................20

*Murray v. Auslander* (11th Cir. 2001)
   244 F.3d 807 ..................................................................................................19, 20

*Randolph v. J.M. Smucker Co.* (Dec. 23, 2014)
   303 F.R.D. 679 .....................................................................................................15

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.* (11th Cir. 2010)
   601 F.3d 1159 ......................................................................................................21

*Smith v. Wm. Wrigley Jr. Co.* (S.D. Fla. June 15, 2010)
   2010 WL 2401149 ........................................................................................11, 19, 23

*Twigg v. Sears, Roebuck & Co.* (11th Cir. 1998)
   153 F.3d 1222 ......................................................................................................22

*Vega v. T-Mobile USA, Inc.* (11th Cir. 2009)
   564 F.3d 1256 ......................................................................................................19

*Williams v. Mohawk Indus., Inc.* (11th Cir. 2009)
    568 F.3d 1350 ...............................................................................................................19

## STATE CASES

*Rollins, Inc. v. Butland* (Fla. Dist. Ct. App. 206)
    951 So. 2d 860 ...............................................................................................................16

## FEDERAL STATUTES

FED. R. CIV. P. 23(a) ...............................................................................................................19

FED. R. CIV. P. 23(a)(2) ...............................................................................................................19

Fed. R. Civ. P. 23(b)(3) ...............................................................................................................22

## OTHER SOURCES

4 *Newberg on Class Actions* (4th ed. 2002)
    § 11.41 ...............................................................................................................10, 13

*Manual for Complex Litigation*, Third (West 1995)
    § 21.312 ...............................................................................................................22
    § 21.632 ...............................................................................................................11
    § 30.42 ...............................................................................................................11

## I.     INTRODUCTION

Plaintiffs KATRINA GARCIA and LAURA EGGNATZ (collectively, "Plaintiffs") respectfully move for Preliminary Approval of the proposed Stipulation of Settlement attached hereto as **Exhibit 1** (the "Agreement"), which will resolve Plaintiffs' and all Settlement Class Members' ("Class Members") claims in the above-captioned action (the "Litigation"). [1] Defendant KASHI COMPANY ("Kashi") does not oppose this motion. The Court should grant Preliminary Approval because the Settlement provides substantial relief for the Class and because the terms of the Settlement are fair, adequate and reasonable. In view of the procedural posture and significant risks presented in this Litigation, the Settlement—which consists of cash payments to Class Members who submit valid claims, Kashi's agreement to remove the 'all natural' claims from Products containing the Challenged Ingredients and supervised compliance with a Non-GMO Verification program for certain Products—is a tremendous result for the Class. *See* Declaration of Gillian L. Wade ("Wade Decl."), attached hereto as **Exhibit 2**.

As set forth in further detail below, the proposed Settlement plainly meets the standard for preliminary approval. Thus, the Parties move the Court to enter the [Proposed] Order Granting Preliminary Approval of Class Action Settlement attached as Exhibit F to the Agreement and lodged concurrently herewith. That order: (1) preliminarily approves the terms of the Settlement; (2) certifies the Class for settlement purposes, appointing Plaintiffs as Class Representatives and appointing Milstein Adelman LLP, The Law Offices of Howard W. Rubinstein, P.A., the Law Office of L. DeWayne Layfield, PLLC and the Chaffin Law Firm as Class Counsel; (3) appoints Digital Settlement Group, LLC as the Class Action Claims Administrator; (4) approves the form,

---

[1] All capitalized defined terms used herein have the same meanings ascribed in the Agreement.

method and plan of Class Notice; (5) mandates procedures and deadlines for Class Members to make claims, object or exclude themselves from the Settlement; and, (6) schedules a Settlement Hearing and related deadlines.

## II.  PROCEDURAL HISTORY

### A. The Litigation

On May 3, 2012, Plaintiffs Katrina Garcia and Laura Eggnatz filed a class action complaint against Kashi and its parent company, Kellogg Company ("Kellogg") in this District seeking monetary damages, declaratory relief and injunctive relief. [ECF 1]. Plaintiffs allege the labeling of certain Kashi food products as "All Natural" was false and deceptive because the products were made with GMO ingredients. *Id.* The defendants filed a Motion to Dismiss on July 7, 2012, which was fully briefed as of August 6, 2012.   [ECF 7, 13].   While the Motion was pending, on January 11, 2013 this action was consolidated with Julie Martin's[2] case (originally filed in the Northern District of California, alleging the same 'all natural' claims under California's consumer protection statutes). [ECF 30]. Plaintiffs filed an Amended Consolidated Class Action Complaint on February 1, 2013, and Kashi filed another Motion to Dismiss on March 1, 2013 [ECF 37], which was fully briefed as of April 19, 2013. [ECF 45].

On October 18, 2013, Plaintiffs filed a Second Amended Consolidated Class Action Complaint (the "SAC") to add allegations regarding allegedly synthetic ingredients also contained in the Products.   [ECF 58].   Kashi moved to dismiss for the third time on December 2, 2013.   [ECF 71].   Kashi's Motion to Dismiss Plaintiffs' SAC was fully briefed

---

[2]  Ms. Martin is excluded from the proposed Class because a settlement on behalf of California residents was reached in *Astiana v. Kashi Co.*, No. 3:11-cv-01967-H-BGS. She voluntarily dismissed her claims in this action on June 4, 2015. [ECF 177].

as of January 6, 2014.   [*See* ECF 84].   On September 5, 2014, the Court entered an Order

granting in part and denying in part Kashi's Motion to Dismiss Plaintiffs' SAC.   *Garcia v.*

*Kashi Co.* 43 F. Supp.3d 1359 (S.D. Fla. 2014).   The Court held Plaintiffs' claims were not

preempted by federal law, and that the primary jurisdiction doctrine did not require referral of

claims to the Food and Drug Administration (FDA). *Id.* at 1372-1382. The Court denied

Kashi's Motion to Dismiss Plaintiffs' claims for FDUTPA violations,[3] negligent

misrepresentation, breach of express warranty and money had and received. *Id.* at 1384-86.

Plaintiffs' claims for breach of implied warranty and declaratory judgment were dismissed, as

was the Kellogg Company. *Id.* at This Court also held Plaintiffs' claims were limited to the

eight Kashi products Plaintiffs actually purchased.[4] *Id.* at 1392-94.

On January 16, 2015, following full merits and expert discovery, Plaintiffs filed a motion

for class certification [ECF 118] and Kashi filed a motion for summary judgment. [ECF 142].

Both motions were fully briefed as of March 2, 2015. [ECF 163, 166]. Trial was set to

commence June 1, 2015. [ECF 100].

B.      Settlement Negotiations

On December 12, 2012, the Parties engaged in preliminary settlement discussions via

private mediation with the Honorable Judge J. Richard Haden (Ret.). Agreement § I(K). The

---

[3]  The Court also denied Defendant's Motion to Dismiss Plaintiff Martin's claims brought under California's consumer protection statutes. *Id.* at 1384-86.

[4]  These products are: Kashi® GOLEAN® Crunch! Cereal; Kashi® GOLEAN® Crunchy! Chocolate Peanut Protein & Fiber Bars; Kashi® GOLEAN® Roll! Chocolate Peanut Butter & Fiber Bars; Kashi® TLC Trail Mix Chewy Granola Bars; Kashi® TLC Honey Almond Flax Chewy Granola Bars; Kashi® TLC Peanut Butter Chewy Granola Bars; Kashi® TLC Cherry Dark Chocolate Chewy Granola Bars; and Kashi® TLC Pumpkin Spice Flax Crunchy Granola Bars. This Settlement includes all products within the Kashi Product line bearing the 'all natural' claims. *See* Ex. H to the Agreement.

Parties did not reach an agreement, and on January 9 2014, the Court referred the Parties back to mediation, which occurred on June 4, 2014 before Judge Haden. [ECF 97]. In advance of the settlement negotiations, Kashi provided Plaintiffs with certain documents regarding the Products, the Challenged Ingredients and the Products' national sales during the class period (May 8, 2008 to present). Class Counsel relied on this information and these representations in the continued settlement negotiations. Wade Decl. ¶ 5. Again, the Parties did not reach an agreement.

After the close of fact and expert discovery, full briefing of class certification and Kashi's Motion for Summary Judgment, and following an in-person settlement meeting in Chicago with Defendant's lead counsel, the parties attended another full day of formal mediation before Judge Haden on March 24, 2015. [ECF 160, 163, 166]. At the final mediation, the Parties had the benefit of fact and expert discovery, including expert reports and depositions, document production, Class Representative and Rule 30(b)(6) depositions. Wade Decl. ¶¶ 6-7. With the assistance of Judge Haden, the Parties reached an agreement to resolve this Litigation on a national class basis (except California, in light of the *Astiana* settlement). *Id.* at ¶ 8. At all times throughout the mediation proceedings and settlement discussions, the negotiations were adversarial, non-collusive and at arm's length. Wade Decl. ¶ 9.

On April 6, 2015, the Parties informed the Court that following private mediation and months of protracted, extensive and hard-fought negotiations, the Parties reached a settlement of this class action. [ECF 170]. The Parties executed a Settlement Agreement on June 5, 2015 memorializing the agreement reached at mediation, subject to Preliminary Approval and Final Approval as required by Rule 23 of the Federal Rules of Civil Procedure. Wade Decl. ¶ 10.

4

## III.    SUMMARY OF THE PROPOSED SETTLEMENT TERMS

The Settlement's terms are detailed in the Agreement attached hereto as Exhibit A. The

following is a summary of the Settlement's material terms.

### A.    The Settlement Class

For the purpose of implementing the terms of the Agreement, Plaintiffs request

conditional certification of the following Settlement Class, pursuant to Rule 23(b)(3):

> All consumers, excluding California residents, who purchased any
> package of the Products in the United States during the Settlement
> Class Period for personal or household use.

Agreement § II(A)(5).[5] Excluded from the Class are: (a) employees, officers and directors of

Kellogg and Kashi; (b) persons or entities who purchased the Products for the purpose of re-sale;

(c) retailers or re-sellers of the Products; (d) governmental entities; (e) persons who timely and

properly exclude themselves from the Settlement; (f) the Court, the Court's immediate family

and Court staff; and, (g) California residents. *Id.* The Products are those Kashi products labeled

"All Natural," "100% Natural" and/or "Nothing Artificial," including those in Exhibit H to the

Agreement. *Id.* at § II(A)(22). The Settlement Class Period is May 3, 2008 through the date the

Court enters the Preliminary Approval Order. *Id.* at § II(A)(5), (21).

### B.    Monetary Relief for the Settlement Class

Kashi has agreed to provide significant monetary compensation to Class Members who

submit valid claims forms. Kashi will fully reimburse Class Members who make valid claims

accompanied by written proof of purchase (i.e. receipts). Agreement § IV(A)(1)(a). There is no

---

[5] Plaintiffs' Second Amended Complaint alleged a nearly identical Class definition, excluding California residents and utilizing the same class period. [ECF 58 at ¶ 60]. Plaintiff later sought to certify a Florida class only (ECF 118).

limit to the number of units for which Class Members can be reimbursed where they have valid proofs of purchase. *Id.* For Class Members who do not submit proof of purchase with their claims, Kashi will reimburse $0.55 (fifty-five cents) per package for every Product purchased during the Class Period, with a maximum recovery of fifty (50) boxes, for a total recovery[6] of $27.50. *Id.* at § IV(A)(1)(b). In no event shall the total amount of money available to the Class be less than two million dollars. *Id.* at § IV(A)(1)(a).

### C.      Non-Monetary Relief

Kashi also intends to manufacture, or continue manufacturing, certain Products as "GMO free" and display on those Products a "Non-GMO Project Verified" label designation. *Id.* at § IV(C)(2). Accordingly, in addition to the cash recovery available to the Class, as additional consideration for the Settlement Class, Kashi will provide Plaintiffs' Counsel with compliance information regarding Non-GMO Project Verified label designations on the Products on a bi-annual basis for three years.[7] *Id.* Kashi also agreed to remove the "All Natural," "100% Natural," and "Nothing Artificial" labels on Products containing any of the Challenged Ingredients, unless such ingredient is approved or determined as acceptable by a federal agency

---

[6] Claimants' reimbursements may be proportionately modified up or down, on a per-unit basis, depending on the number of claims made. *Id.* at § IV(A)(3). In no event shall Kashi pay more than $3.99 million to settle this action.

[7] Specifically, Kashi will provide Class Counsel with a list of Products that are being manufactured without GMO ingredients, along with the following: (i) documents identifying its third party technical administrator for the Non-GMO Project Verification; (ii) copies of all licensing agreements for the Products between Kashi and the Non-GMO Project Verified; (iii) copies of all documents provided for evaluation purposes to Kashi's third party administrator for the Non-GMO Verified Project; (iv) copies of all press releases regarding the Products' Non-GMO Project Verification; and, (v) copies of all Product label modifications that are introduced into the stream of commerce. Agreement at § IV(C)(2).

or controlling regulatory body to be designated as "natural."[8]  *Id.* at IV(C)(1).

### D.    Class Release

In exchange for the benefits conferred by the Settlement, all Settlement Class Members who do not opt out will be deemed to have released Kashi and Kellogg Company from claims arising out of or relating to the packaging, marketing, distribution or sale by Kashi of the Products with the 'all natural' claims which have been or could have been asserted in the SAC or in any previous complaints. The Released Claims do not include claims for personal injury. The detailed release language can be found in Sections II(A)(23)-(24) and VII of the Agreement.

### E.    The Notice Program and Settlement Administration

Defendant will also pay for Class Notice and Class Settlement Administration. The Parties selected Digital Settlement Group, LLC ("DSG") as the notice and settlement administrator for this Settlement. Agreement §§ II(A)(6), V(C). Class Notice has been designed to give the best notice practicable, is tailored to reach putative Class Members, and is reasonably calculated under the circumstances to apprise the Class of the pendency of the Litigation, Class Members' rights to make a claim for money, opt-out of the Settlement Class or object to the Settlement the terms of the Settlement, and Class Counsel's fee application and request for Service Awards. Agreement at §§ V(A)(1) and Exhibits C, D, G.

The Notice Program is comprised of three parts: (1) print publication notice; (2) digital notice; and, (3) long form notice with more detail than the print or digital notices, which will be

---

[8]  Kashi also agreed to remove the 'all natural' claims from the Products' packaging in *Astiana*. Although the Settlement reached in *Astiana* applies only to California residents, nothing in the Settlement mentions removing the 'natural claims' from packaging distributed nationally.

available on the Settlement Website and via e-mail and mail upon request. *Id*. All forms of Notice to the Class will include, among other information: a description of the Settlement; a date by which Class Members may make a claim, exclude themselves from the Settlement Class, or object to the Settlement; the address of the Settlement Website; and, the toll-free telephone line. *Id*. at §§ V(A)(1) and Exs. C, D, G. The Notice and Media Plan constitute sufficient notice to all persons entitled to notice, and satisfy all applicable requirements of law, including Rule 23 and the constitutional requirements of due process.

Requests for exclusion and Claim Forms must be sent to the Claims Administrator and postmarked or uploaded before their respective deadlines. *Id*. at § VI(B)(1). Objections must be filed with the Court with copies of the objection sent to lead Plaintiffs' Counsel and Defendant's Counsel by the objection deadline.    *Id*. at § VI(C)(3).[9] The deadline for both objections and requests for exclusion is 30 days before the Settlement Hearing. *Id.* at §§ V(A)(2)(a), V(C)(1). The deadline to submit a Claim Form and accompanying documentation is eight (8) days before the Settlement Hearing. *Id.* at § IV(A)(6).

### 1.    The Publication Notice Program

The Published Notice Program is comprised of a (1) one-time print publishing of the summary notice (Ex. D to the Agreement) in *Food Network Magazine* and *Prevention Magazine;* and (2) targeted website and portal banner advertisements with embedded links to the Settlement Website on Google, Yahoo and their partner sites, which will run for 30 days. Agreement at Exs.

---

[9] For an objection to be valid, it must be a writing signed by the objecting Class Member and include: (1) the name of the Litigation, the objector's name and address; (2) the name, address and telephone number of the objector's lawyer; (4) all grounds for the objection, accompanied by any legal support; (4) a statement of whether the objector or his/her lawyer intends to personally appear or testify at the Settlement Hearing; and, (5) a list of persons the objector or his/her lawyer intends to call to testify at the Settlement Hearing. *Id*. at § VI(C)(1)-(2).

D, G. The Published Notice will appear no later than 75 days after the Preliminary Approval Order. *Id.* § V(B). As part of the Motion for Final Approval, Class Counsel will file an affidavit by the Administrator confirming Notice was given in accordance with the Media Plan.

### 2.    The Settlement Website and the Toll-Free Settlement Phone Line

The Administrator will establish a Settlement Website as a means for Settlement Class Members to obtain notice of, and information about, the Settlement. Agreement § II(A)(30). The Settlement Website will include information about the Litigation and the Settlement, relevant documents and electronic and printable forms relating to the Settlement, including the Claim Form which can be submitted online or printed and mailed. *Id.* The Settlement Website shall be activated within 7 days of the Court's Preliminary Approval Order. *Id.* The Administrator will also establish and maintain an automated toll-free telephone line for Class Members to call with Settlement-related inquiries. *Id.*

### 3.    Settlement Administration

The Administrator's duties and responsibilities include, among other things: (1) establishing and maintaining a Post Office box for requests for exclusion from the Settlement Class; (2) establishing and maintaining a toll-free telephone line for answering Settlement-related inquiries; responding to any mailed Class Member inquiries; (3) processing requests for exclusion; (4) processing and transmitting distributions to the Settlement Class Members and performing the duties of Escrow Agent as described in the Agreement and Exhibit B; and, (5) performing any other Settlement-administration-related function at the instruction of Class Counsel and Defendant's Counsel. Agreement § V(C) and Ex. B.

**F.      Service Awards, Attorneys' Fees and Costs**

Class Counsel will seek, and Kashi will not oppose, Service Awards of $5,000 for each of the Class Representatives. Agreement at § VIII(C). The Service Awards will compensate the Class Representatives for their time and effort in the Litigation, and for the risks they undertook in prosecuting the Litigation. Kashi will not oppose Class Counsel's request for attorneys' fees of up to $1.5 million based on Class Counsel's lodestar, plus reimbursement of litigation costs and expenses of up to $180,000. *Id.* at § VIII(A).

**IV.     LEGAL STANDARD FOR PRELIMINARY APPROVAL**

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of the compromise of claims brought on a class basis. "Although class action settlements require court approval, such approval is committed to the sound discretion of the district court." *In re U.S. Oil and Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992). In exercising that discretion, courts are mindful of the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). The policy favoring settlement is especially relevant in class actions, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See, e.g., Association for Disabled Americans, Inc. v. Amoco Oil Co.,* 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation of being the most complex.") (citing *Cotton v. Hinton*, 559 F.3d 1326, 1331 (5th Cir. 1977)[10]); *See also* 4 *Newberg on Class Actions* § 11.41 (4th ed. 2002) (citing cases).

---

[10] Decisions by the former Fifth Circuit prior to October 1, 1981 are binding on the Eleventh

The purpose of preliminary evaluation of proposed class action settlements is to determine whether the settlement is within the "range of reasonableness." *Id*. at § 11.26. "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Smith v. Wm. Wrigley Jr. Co.,* No. 09-cv-60646, 2010 WL 2401149, *2 (S.D. Fla. June 15, 2010). Settlement negotiations involving arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness. *See Manual for Complex Litigation*, Third, § 30.42 (West 1995).

When determining whether a settlement is ultimately fair, adequate and reasonable, courts in the Eleventh Circuit have looked to six factors: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved." *Bennett,* 737 F.2d at 986. Courts have, at times, engaged in a "preliminary evaluation"[11] of these factors to determine whether the settlement falls within the range of reason at the preliminary approval stage. *See, e.g., Smith,* 2010 WL 2401149 at *2. At this stage, however, the Court need only conduct a *prima facie* review of the relief and notice provided by the Agreement to determine whether notice should be sent to the Class Members. *Manual for Complex Lit.* at § 21.632.

---

Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*)).

[11]  Plaintiffs do not address the fifth factor related to objections to the Settlement in the context of this Motion because at the preliminary stage, Class Notice has not yet been distributed and no objections to the Settlement have been raised. Plaintiffs address the remaining factors here, but reserve a more thorough analysis of each factor for the Motion for Final Approval.

The Court's grant of Preliminary Approval will allow all Settlement Class Members to receive notice of the Settlement's terms, the date and time of the Settlement Hearing at which Settlement Class Members may be heard and further evidence and argument concerning the fairness, adequacy and reasonableness of the Settlement may be presented. *Id.* at §§ 13.14, 21.632. Neither formal notice nor a hearing is required at the preliminary approval stage; the Court may grant such relief upon an informal application by settling parties, and may conduct any necessary hearing in court or in chambers, at the Court's discretion. *Id*. at § 13.14.

## V.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Each of the relevant factors weighs in favor of Preliminary Approval. First, the Settlement was reached at the third mediation in the absence of collusion, and is the product of good-faith, informed and arm's length negotiations by competent counsel. Furthermore, a preliminary review of the factors related to the fairness, adequacy and reasonableness of the Settlement demonstrates the Settlement falls well within the range of reasonableness, such that Preliminary Approval is appropriate. Any settlement requires parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay. Plaintiffs' Motion for Class Certification (ECF 118) and Kashi's Motion for Summary Judgment (ECF 119) were both fully briefed at the time a settlement was reached, and Class Members faced the prospect of being forced to pursue *individual* non-class actions, or having judgment entered in Kashi's favor. With the benefit of full merits and expert discovery and preliminary trial preparations, Plaintiffs and Class Counsel concluded the benefits of this Settlement outweigh the risks attendant to continuing to fight over class certification and the merits of Plaintiffs' claims. Wade Decl. at ¶¶ 7-13.

12

**A.      The Settlement Was the Result of Serious, Informed, and Non-Collusive Arm's Length Negotiations**

Typically, "[t]here is a presumption of fairness when a proposed class settlement, which was negotiated at arm's-length by counsel for the class, is presented to the Court for approval." *Newberg*, § 11.41; *see also In re Employee Benefit Plans Sec. Litig.*, No. 3-92-708, 1993 WL 330595, *5 (D. Minn. June 2, 1993) ("[t]he court is entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement").

Here, the Parties did not reach a Settlement until after years of negotiation, multiple mediation sessions, full merits and expert discovery, as well as extensive and hard-fought motion practice. Wade Decl. at ¶ 13. Class Counsel conducted a thorough investigation and analysis of Plaintiffs' claims and Kashi's defenses, and reviewed the discovery and expert testimony, which enabled them to gain an understanding of the evidence related to central questions in the case and prepared counsel for well- informed settlement negotiations.[12]  *Id.*

Indeed, the Settlement ultimately required three formal, full-day mediation sessions before Judge Haden over the span of nearly three years.[13]  *Id.* at ¶ 14. By this time, Plaintiffs and their counsel, who have significant experience in prosecuting complex consumer class actions,

---

[12]  *See Francisco v. Numismatic Guaranty Corp. of Am.,* No. 06-61677-CIV, 2008 WL 649124, *11 (S.D. Fla. Jan. 31, 2008) ("Class Counsel had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation" where counsel conducted 30(b)(6) depositions and obtained "thousands" of pages of discovery).

[13]  That the Parties received the assistance from an experienced mediator over the period of three mediation sessions is a factor evidencing the Settlement is fair and non-collusive.  *See, e.g.*, *Adams v. Inter-Con Sec. Sys., Inc.*, No. C-06-5428 MHP, 2007 WL 3225466, *3 (N.D. Cal. Oct. 30, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive"); *In re Indep. Energy Holdings PLC*, No. 00 Civ. 6689(SAS), 2003 WL 22244676, *4 (S.D.N.Y. Sept. 29, 2003) ("the fact that the settlement was reached after exhaustive arm's length negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable").

had a "clear view of the strengths and weaknesses" of their case and were in a strong position to make an informed decision regarding the reasonableness of a potential settlement. *See In re Warner Comm. Sec. Litig*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985). The extensive nature of the negotiations, the experience of Class Counsel, and the fair result reached illustrate the arm's-length negotiations that led to the Settlement and the execution of the Agreement.

## B.   The Settlement is Fair, Adequate and Reasonable

This Court may conduct a preliminary review of the *Bennett* factors to determine whether the Settlement Falls within the "range of reason" such that Class Notice and a Settlement Hearing as to the fairness, adequacy and reasonableness of the Settlement are warranted.

### 1.      Likelihood of Success at Trial

While Plaintiffs and Class Counsel are confident in the strength of their case, they are also pragmatic in their awareness of the fact that in order to succeed at trial, Plaintiffs would be required to succeed on their pending Motion for Class Certification and overcome Kashi's defenses on the merits. Wade Decl. ¶ 15. Kashi vigorously opposed Plaintiffs' Motion for Class Certification, which was filed weeks after an order from the Honorable Beth J. Bloom denying class certification in a similar consumer class action regarding 'all natural' claims. *Id*. Specifically, Judge Bloom found the class was not ascertainable[14] because the variation in the challenged products and labels created a "subjective memory problem," as consumers would have to "remember whether they purchased the challenged products." *See Randolph v. J.M.*

---

[14] The issue of whether the class members can self-identify where retailers have no records identifying class members is on appeal before the Eleventh Circuit, which heard oral arguments on February 6, 2015. *Karhu v. Vital Pharmaceuticals,* No. 14-11648 (11th Cir.) (appealing order denying class certification).

14

*Smucker Co.,* No. 13-CIV-80581, 303 F.R.D. 679, 685-692 (Dec. 23, 2014).[15] Moreover, Kashi

put forward evidence, including internal consumer surveys and expert testimony, demonstrating

consumers have varying definitions of the term 'natural,' and that the 'all natural' claims are not

material to reasonable consumers. [ECF 142 at pp. 11-14]. Although Plaintiffs and Class Counsel

are confident they could have overcome Kashi's challenges with their own expert's consumer

survey and testimony regarding commonality and typicality, Plaintiffs recognize the risks

associated with proving class-wide damages. Wade Decl. ¶ 16. If they were to prevail on their

Motion for Class Certification, with Kashi's summary judgment motion under submission,

Plaintiffs also faced an imminent risk of judgment being entered against them. *Id.*

Protracted litigation carries inherent risks that would have delayed and endangered Class

Members' recovery. Wade Decl. at ¶ 17. Even if Plaintiffs prevailed at trial, recovery could be

delayed for years by an appeal. *Id.*; *see also Lipuma v. Am. Express Co.,* 406 F.Supp.2d 1298,

1322 (S.D. Fla. 2005) (likelihood that appellate proceedings could delay class recovery "strongly

favor[s] approval of a settlement). This Settlement provides relief to Class Members without

further delay. Wade Decl. at ¶ 17. Under the circumstances, the Plaintiffs and Class Counsel

appropriately determined the Settlement outweighs the risks of continued litigation.

**2.      Range of Possible Recovery and the Point On or Below
the Range of Recovery at Which a Settlement is Fair**

When evaluating "the terms of the compromise in relation to the likely benefits of a

successful trial…the trial court is entitled to rely upon the judgment of experienced counsel for

the parties." *Cotton*, 559 F.2d at 1330. "Indeed, the trial judge, absent fraud, collusion, or the

like, should be hesitant to substitute its own judgment for that of counsel." *Id*. Courts have found

---

[15] Counsel representing Kashi in this Litigation also represented J.M. Smucker. *Id.* at 682.

settlements may be reasonable even where the plaintiffs recover only part of their actual losses. *See Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("[T]he fact that a proposed settlement amounts only to a fraction of the potential recovery does not mean the settlement is unfair or inadequate"). "[S]trong defenses to the claims presented makes the possibility of a low recovery quite reasonable." *Lipuma*, 406 F.Supp. 2d at 1323.

Class Counsel have a thorough understanding of the practical and legal issues they would continue to face taking this case to verdict, based on their experience in other consumer fraud class actions and the procedural posture of this Litigation at the time settlement was reached. Wade Decl. at ¶ 18. Plaintiffs faced a number of serious challenges, class certification and the materiality of the 'all natural' claims chief among them. *Id*.

The cash available to the Class is reasonable given the procedural posture and the complexity of the Litigation and the significant barriers that stood between now and any final judgment in favor of Plaintiffs and the Class: denial of class certification; interlocutory Rule 23(f) appeal of class certification; subsequent decertification; summary judgment; trial; and, post-trial appeals. *Id.* at ¶ 19. Additionally, the non-monetary relief—Kashi's agreement to remove the 'all natural' claims from Products containing at least one of the Challenged Ingredients and participate in the Non-GMO Verification project for other Products—also provides meaningful benefits.

Damages under FDUTPA are limited to the "price premium," or, the difference between the value of the product as advertised and the value of the product received. *Rollins, Inc. v. Butland,* 951 So. 2d 860, 869 (Fla. Dist. Ct. App. 206). Based on the opinion of Plaintiffs' damages expert, Ph.D. economist David Sharp of EconOne, Defendant's use of the 'all natural'

16

claims increased the Products' prices by an average of 14.5% per ounce, which is approximately four cents ($0.04) per ounce. [ECF at¶¶ 9, 14-17]. Thus, the full refund available to Class Members who submit claims accompanied by proofs of purchase through the Settlement achieves an excellent recovery, which would be achieved at trial only if the trier of fact determined the Products were valueless (which is unlikely given they were food products and arguably provide some benefit to the consumer). Likewise, the fifty-five cents ($0.55) per package (up to $27.50) available *without* a proof of purchase is also a successful achievement based on the estimated recovery given the extraordinary obstacles Plaintiffs faced in the litigation. Indeed, this per-person recovery exceeds the amount made available in the *Astiana* action, which involved the same 'all natural' claims on the same Products. *See Astiana, et al., v. Kashi Company,* No. 3:11-cv-01967-H-BGS, ECF 242 (Sept. 2, 2014) (entering final judgment and approving settlement of $0.50 per package with a maximum recovery of $25 per household, even where claimants had a proof of purchase).[16]

### 3.    Complexity, Expense and Duration of Litigation

The traditional means for handling claims like those at issue here would unduly tax the court system, require a massive expenditure of public and private resources, and given the relatively small value of the claims of individual Class Members, would be impracticable. The Settlement is the best vehicle for Class Members to receive the relief to which they are entitled in a prompt and efficient manner. Wade Decl. at ¶ 20. The Parties already expended significant

---

[16] Because *Astiana* involved a common fund that was not exhausted by claims, the class members there actually received approximately $4.30 for each product claimed. *Id.* at 11. Specifically, in *Astiana,* the notice program generated approximately 18,176 claims and no opt-outs. The Parties had the benefit of this information in determining an appropriate remedy for the Class in this Settlement. Wade Decl. at ¶ 32.

resources, including retaining and deposing experts, and additional pretrial and trial proceedings in this Court and the appellate courts would have involved additional substantial and expensive resources. Absent settlement, this case would take at least another two years to exhaust all appeals. *Id.*

### 4.    Stage of the Proceedings

Courts consider the stage of proceedings at which settlement is achieved "to ensure that Plaintiff had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma,* 406 F. Supp. 2d at 1324. This Settlement was reached at a pivotal stage in the Litigation: after full merits and expert discovery with pending motions for class certification and summary judgment, and a June 1, 2015 trial date. Wade Decl. at ¶ 21. Plaintiffs settled the Litigation with the benefit of discovery, which enabled Class Counsel to evaluate with confidence the strength and weaknesses of Plaintiffs' claims and Kashi's defenses. *Id.* Plaintiffs also faced the very real prospect of being foreclosed from any recovery at all in this Court, depending on the outcome of either motion.

## VI.   THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED

For settlement purposes, Plaintiffs respectfully request certification of the Settlement Class defined above and in Section II(A)(5) of the Agreement. "A class may be certified solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue." *Borcea v. Carnival Corp.*, 238 F.R.D. 664, 671 (S.D. Fla. 2006) (internal quotation marks omitted). For settlement purposes, Kashi does not oppose class certification.

### A.    The Settlement Class Satisfied Rule 23(a)

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is

impractical."  FED. R. CIV. P. 23(a).   "The numerosity inquiry is not focused solely on the number of proposed class members, but instead whether joinder of proposed class members is impracticable." *Smith,* 2010 WL 2401149 at *4 (quotations omitted). Numerosity is satisfied because the Class consists of thousands of consumers throughout the United States, and joinder of all such persons is impracticable. *Kilgo v. Bowman Trans*., 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied with at least 31 class members "from a wide geographical area").

Commonality requires at least one question of law or fact common to the members of the Class.   FED. R. CIV. P. 23(a)(2).   This is a "relatively light burden" that does not require "all questions of law and fact raised by the dispute be common."   *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 (11th Cir. 2009) (citations omitted).   Rather, it simply requires at least one issue whose resolution will affect all or a significant number of the putative class members. *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009). A "class action must involve issues that are susceptible to class-wide proof." *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001). The commonality requirement is satisfied because the allegations of wrongdoing here involve the Products' standardized packaging containing the uniform "All Natural" and/or "Nothing Artificial" claims. Common questions include whether the Challenged Ingredients are "natural" and whether consumers are likely to be deceived by the presence of one of the Challenged Ingredients in the Products.

Rule 23(a)(3) requires the claims and defenses of the representative parties to be "typical of the claims and defenses of the class." This "measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large."   *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314 (11th Cir. 2008).   The typicality requirement, like

19

commonality, is not demanding.   *See In re Disposable Contact Lens Antitrust Litig.*, 170 F.R.D. 524, 532 (M.D. Fla. 1996).   "[A] strong similarity of legal theories will satisfy the typicality requirement despite substantial factual differences."   *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985). Named plaintiffs are typical of the class where they "possess the same interest and suffer the same injury as the class members." *Murray*, 144 F.3d at 811. Here, Class Representatives' claims are reasonably coextensive with those of absent Class Members. They are not California residents, were exposed to the same 'all natural' claims, purchased at least one of the Products during the Class Period and have suffered the same economic injuries.

Rule 23(a)(4) requires a showing that the representative parties will fairly and adequately protect the interests of the class. The requirement applies both to the class representatives and their counsel. *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718 (11th Cir. 1987). The determinative factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (internal quotation marks omitted). The Class Representatives' interests are coextensive with, and not antagonistic to, the interests of the Class because they have an equally great interest in the relief offered by the Settlement, and absent Class Members have no diverging interests. Further, the Class Representatives are represented by qualified and competent Class Counsel with extensive experience and expertise prosecuting complex class actions, including consumer actions similar to the instant case. *See* Wade Decl. ¶ 22-30 (attaching firm resumes).

Although not a Rule 23 prerequisite, courts note an implied requirement that a class is "adequately defined and clearly ascertainable." *Little v. T-Mobile USA, Inc.,* 691 F.3d 1302,

1303-04 (11th Cir. 2012) (citation omitted). There is no need to identify individual class members as a prerequisite to certification; rather they must be identifiable by reference to objective criteria. *Bussey v. Macon Cnty. Greyhound Park, Inc.,* 562 F. App'x 782, 787 (11th Cir. 2014) (unpublished). The analysis of the criteria should be "administratively feasible," meaning identifying class members should be "a manageable process that does not require much, if any, individual inquiries." *Id.* In the context of a class settlement, the class definition must be sufficiently precise and based on objective criteria such that a person reading the class definition as part of the nationwide notice campaign would be able to determine he or she is a Class Member. *Id.* Here, the Class is defined with respect to objective criteria: non-California residents who purchased one of the Products during a specific date range. This objective criteria is administratively feasible here, as potential Class Members can self-identify. Thus, in the context of the Settlement, the proposed Class is sufficiently ascertainable.

### B.     The Settlement Class Satisfies Rule 23(b)(3)

Rule 23(b)(3) requires common questions of law or fact to predominate over individual questions, and that class action treatment is superior to other available methods of adjudication.

Predominance requires common issues of fact and law to have "a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.,* 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotation marks omitted). Plaintiffs satisfy the predominance requirement because liability questions common to all Class Members substantially outweigh any possible individual issues. The claims of the Class Representatives and the Settlement Class are based on

the same legal theories and the same uniform 'all natural' advertising. Whether these claims are false or deceptive need only be determined once as to the entire Class.   Resolution of thousands of claims in one action is far superior to individual lawsuits because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). Absent certification, potential class members would lack incentive to pursue individual claims due to the small awards involved.

## VII.   THE NOTICE PROGRAM IS APPROPRIATE AND SHOULD BE APPROVED

"Rule 23(e)(1) requires the Court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Compl. Lit., supra,* at § 21.312 (internal quotation marks omitted). The test is whether the method employed to distribute the notice was reasonably calculated to apprise the class of the pendency of the action, of the proposed settlement, and of the class members' rights to opt out or object.   *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). To satisfy this standard, "[n]ot only must the substantive claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt out of the action." *Twigg v. Sears, Roebuck & Co.,* 153 F.3d 1222, 1227 (11th Cir. 1998) (internal quotation marks omitted).

The proposed notice program—collectively, print publication in two magazines, *Food Network Magazine* and *Prevention Magazine*, targeted website and online advertisements, a dedicated Settlement Website and a toll free number—easily satisfies these requirements. Because Kashi does not sell the Products directly to consumers, but rather to retailers, there is no way to identify the vast majority of individual Class Members. Individual Settlement Class

Members cannot otherwise be identified through reasonable effort due to the nature of the consumer product at issue and the wide geographical area over which they are spread. *See Smith,* 2010 WL 2401149, at *6 (approving notice plan consisting of notice given "in two widely-read magazines as well as several popular websites). Therefore, Class Notice shall be provided as set forth above and in the Media Plan, attached to the Agreement as Exhibit G.

As noted in the proposed forms of notice, attached as Exhibits C and D to the Settlement and described above, Class Notice will inform Class Members of their options for opting-out or objecting to the Settlement, information about the Settlement Hearing, the salient terms of the Settlement and how to obtain additional information. The language of the proposed Notice (Exs. C, D) and Claim Form (Ex. A) are plain and easy to understand and provide neutral and objective information about the nature of the Settlement. Declaration of Mark Schey, attached hereto as **Exhibit 3**.

Accordingly, the proposed plan to disseminate Class Notice satisfies all due process requirements. DSG's actual costs and expenses have been estimated to be approximately $300,000, and will be paid by Defendant.

## VIII.   THE PROPOSED SCHEDULE OF EVENTS

The proposed schedule depends upon the date the Court enters the Preliminary Approval Order and schedules the Settlement Hearing. If a Preliminary Approval Order is entered by June 26, 2015 or earlier, the Parties propose the following deadlines:

//

//

//

23

| Event | Deadline |
|---|---|
| Last Day for Print Notice to Commence | September 9, 2015 |
| Motion for Final Approval, Application for Service Award and Application for Attorneys' Fees and Expenses Due | September 25, 2015 |
| Deadline for Class Members to Opt-Out or Object | October 8, 2015 |
| Responses to Objections Due | October 26, 2015 |
| Deadline to Submit Claims | November 2, 2015 |
| Settlement Hearing | November 16, 2015 |

If preliminary approval is not granted by June 26, 2015, Class Counsel will propose dates by which the events above will occur, based upon the deadlines required to print notice in *Prevention* and *Food Network Magazine*. Both publications impose deadlines for payment and copy that are approximately 60-75 days before they appear on stores shelves. Wade Decl. ¶ 31.

IX.   **CONCLUSION**

For the reasons set forth herein, Plaintiffs respectfully request that the Court preliminarily approve the class action settlement, conditionally certify the Settlement Class, approve the proposed Notice Plan and schedule the Settlement Hearing.

Respectfully submitted,

June 5, 2015                                  *Angela Arango-Chaffin*
                                             Angela Arango-Chaffin, Esq.
                                             Florida Bar No. 87919
                                             angela@chaffinlawfirm.com
                                             THE CHAFFIN LAW FIRM
                                             1455 Ocean Drive, Suite 811
                                             Miami Beach, FL 33139
                                             Tel.: (713) 818-2515
                                             Fax: (713) 952-5972

THE LAW OFFICES OF HOWARD W. RUBINSTEIN, P.A.
Michael T. Fraser
Florida Bar No. 87411
mfraser@hwrlawoffice.com
One Embarcadero Center, Suite 500
San Francisco, CA 94111
Tel.: (800) 436-6437
Fax: (415) 692-6607

LAW OFFICE OF L.DEWAYNE LAYFIELD
L. De-Wayne Layfield, Esq.(Admitted *pro hac vice*)
Texas Bar No.: 12065710
dewayne@layfieldlaw.com
P.O. Box 3829
Beaumont, TX 77704-3829
Tel.: (409) 832-1891
Fax: (866) 280-3004

MILSTEIN ADELMAN, LLP
Mark A. Milstein, Esq. (Admitted *pro hac vice*)
California Bar No. 155513
mmilstein@milsteinadelman.com
Gillian L. Wade, Esq. (Admitted *pro hac vice*)
gwade@milsteinadelman.com
California Bar No. 229124
Sara D. Avila Esq. (Admitted *pro hac vice*)
California Bar No. 263213
savila@milsteinadelman.com
2800 Donald Douglas Loop North
Santa Monica, California 90405
Tel.: (310) 396-9600
Fax: (310) 396-9635

*Counsel for Plaintiffs and the Proposed Class*

25

## CERTIFICATE OF COMPLIANCE

I HEREBY CERTIFY that on this 5th day of June, 2015, this filing complies with Local

Rule 5.1 and this Court's January 29, 2015 Order (Dkt. 173).


By:_____/s/ Gillian L. Wade_____
Gillian L. Wade

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the foregoing was filed and served via CM/ECF electronic transmission on June 5, 2015 to those parties that are registered with the Court to receive electronic notifications in this matter.


By:_____/s/ Michael T. Fraser_____
    Michael T. Fraser


27