### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

FILED by __PG__ D.C.

DEC 2 1 2015

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. of FLA. – MIAMI

LAURA EGGNATZ and KATRINA
GARCIA, individually, and on behalf of all
others similarly situated,

    *Plaintiffs,*

   vs.

KASHI COMPANY, a California
Corporation,
    *Defendant.*

Case No.: 12-21678-CIV-LENARD/GOODMAN

### OBJECTION TO SETTLEMENT

## REQUIRED INFORMATION

1) Case Name and Number of the Lawsuit:  Garcia v. Kashi Company, Case No. 12-21678-CIV-LENARD/GOODMAN

2) Name and Address:  S. Perry Thomas, Jr.
        Abbey, Abbey & Thomas, PLLC
        121 W. Grant Street, Suite 3
        Caro, Michigan  48723

3) Grounds for Objection:  See below and attached.

4) Identity of counsel representing me:  N/A.

5) I do not intend to ask the Court for permission to personally appear and/or testify at the Settlement Hearing.

6) Persons who may be called to testify at the Final Approval Hearing:  None.

7) Signature:  (Signed at the end of the document).

## GROUNDS FOR OBJECTION

**I.    INTRODUCTION**

I submit the following objection to the settlement in *Garcia, et al. v. Kashi Company*,

Case No. 12-21678 (S.D. Florida).  I purchased Kashi cereals, including Kashi's GoLean Crunch

Cereal, within the Settlement Class Period and am a Class Member of the Settlement.  There are

five problems with the *Garcia* Stipulation of Settlement (hereinafter "Settlement") that make it

fundamentally unfair to Class Members, and for which final approval of the Settlement should be

denied.  These fundamental problems are:

1. The Settlement allows Class funds to be paid for purchases of products **not** part of the Class, thereby diminishing the payments to Class Members for products that are part of the Class.  **The Court has an obligation (as does Class Counsel) to ensure that Class funds are properly allocated, and the current Settlement cannot be approved since it fails at this miserably.**

2. For other products subject to the Release but not specifically identified, the Settlement provides Class Members with **no** compensation or other relief whatsoever for those purchases.  **A Settlement that releases claims without compensation for unidentified products that the parties could well identify is *per se* unfair and must not be approved.**

3. The Release is severely overbroad as it includes claims that were never at issue in this action, and for which no compensation or any form of relief is being given to Class Members.

4. The Settlement's Notice fails to notify putative Class Members that they will be releasing products and claims which were never raised in this case, for which no compensation or relief is being given, and against companies not named in this action.  **This is a *per se* due process violation mandating that the Settlement may not be approved.**

5. The Settlement is severely underfunded.  Besides being an inadequate amount to fairly compensate Class Members at the outset, the Settlement seeks to further reduce the amount available for the Class by using a disproportionately high amount of the fund to pay Plaintiffs' Counsel under a clear sailing agreement.  Specifically, the Settlement provides $1.68 million to Plaintiffs' Counsel, just $2 million for millions of Class Members in 49 states, and no appreciable non-cash relief fairly attributable to the efforts in this case or from this Settlement.  In contrast, an earlier settlement for just a California class and resolving only some of the same claims gave $3.75 million to class members of that single state, just $1.25 million in costs and fees, and true injunctive relief requiring the removal of the "All Natural" and "Nothing Artificial" labeling nationwide (mooting

any benefit of the same so-called relief professed to be (but not actually) given in this Settlement).

While the court could deny final approval the Settlement on any one of these bases, the culmination of these problems makes approval of the Settlement untenable.  For the reasons stated herein, the Court should deny final approval of the Settlement.

## II.   ARGUMENT

### A. The Settlement allows Class funds to be paid for purchases of products <u>not</u> part of the Class, thereby diminishing the payments to Class Members for products that are part of the Class.

The first fundamental problem with the Settlement is it allows Class funds to be paid for products not part of the Class, improperly reducing the money being paid to Class Members on a per-claim, pro-rata basis.  A court must ensure that the distribution of the settlement proceeds is equitable. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855, 119 S.Ct. 2295, 144 L.Ed.2d 715 (fairness of distribution is "the second element of equity within a class").  A reasonable distribution plan should consider the value of different categories of claims.  *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004).

The Settlement distribution is inequitable as it pays claims for purchases of Kashi products not labeled "All Natural," [1] the labeling statement challenged in this action.  While the "Class" is limited to consumer who purchased Kashi products labeled "All Natural," "100% Natural," "Nothing Artificial" and the like (Settlement, §§II.A.5 and 22), neither the Class Notice, nor the Claim Form, tells Claimants they can only make claims for products labeled "All Natural."  Rather, the Claim Form points to a list of products called Exhibit H to the Settlement (hereinafter "Exhibit H"), which is a non-exclusive list of over 100 Kashi products, and does not

---

[1] "All Natural" used herein refers to the labeling statements purportedly at issue in this case, including All Natural, Nothing Artificial, and 100% Natural and the like.  Settlement, § II.A.22.

specify that the products must have been labeled All Natural to be a qualified Class product. *See* Exhibit H.

The Parties' failure to notify potential Claimants that claims could be made only for All Natural labeled products is critical because the same Kashi Products at issue in this case were sold **without** All Natural labeling during the Settlement Class Period.[2]  Thus, it is certain that claims were made for purchases of non-Class products not labeled All Natural, which have zero value in this action because they are not products subject to Plaintiffs' allegations. Each no-value claim made for non-Class products will reduce the funds available in the limited $2 million fund, reducing the funds to be allocated amongst Class Members for legitimate claims that have value on a pro-rata basis.  Settlement, § IV.A.3.a (pro-rata decrease for excessive claims); § IV.A.3.b (pro-rata increase for a low number of claims).  Due to the pro-rata distribution to Claimants, the distribution of Class funds is inequitable to Class Members as their share is reduced for every claim made for the purchase of valueless, non-Class products not labeled All Natural.

Paying claims for purchasing Kashi products not labeled All Natural that are not class products, and for which no claim has been brought and for which Kashi would have no liability, ignores the value of such claims and takes settlement funds away from Class Members are limited to persons who purchased Kashi-branded All Natural products. Such reduction of payments to legitimate Class Members is a basis to deny approval of the Settlement. *McDonough v. Toys R Us, Inc.*, 80 F. Supp. 3d 626, 649 (E.D. Pa. 2015) (requiring modification to settlement before final approval to allocate funds based on class members' damages); *In re*

---

[2] Kashi publically confirmed in an email statement that it would change its labels to remove the All Natural statements by the end of 2014 as a result of a prior settlement.  *See* http://www.cbsnews.com/news/kashi-to-drop-all-natural-label-from-some-products-to-settle-lawsuit/.

*Katrina Canal Breaches Litig.*, 628 F.3d 185, 189 (5th Cir. 2010) (decertifying settlement class where distribution of settlement funds failed to treat claimants equitably amongst themselves).

Unfortunately, this is not an easy fix because the Claim Form did not require an attestation about which products were purchased, or when, to determine if the claimed products would have been labeled All Natural. The only way to correct the fundamental problem of paying for claims made for the purchase of non-Class products is to re-notice the Settlement, including individual notice to people who already made claims, asking for people to submit new claims. The new notice must make it clear that people can only make claims for products labeled All Natural, and the Claim Form should be redesigned to require Claimants to attest that their claims are based on the purchase of products labeled All Natural.

As it stands, without such corrective notice, claim form and resubmission of claims, final approval of the Settlement should be denied because it is fundamentally unfair to give Class Members less than their fair allotment of the Settlement fund because of payments made to people for purchases of non-class products not labeled All Natural, which have zero value in this case.

**B. The Release is overbroad as it encompasses products not identified as being part of the case, and the Settlement provides Class Members no compensation or other relief whatsoever for the purchase of these non-identified released products.**

A second fundamental problem with the Settlement is it is inadequate to compensation Class Members for the products at issue, and it provides no compensation for a number of unidentified products covered by an overly-broad Release. As explained in more detail below (*infra*, § II.E) the Settlement provides for $2 million to be divided amongst Claimants from 49 states and D.C., and for purchases of certain identified products spanning nearly 7½ years. Settlement, §§ IV.A.2, II.A.27. To put this amount in perspective, the *Astiana* settlement

4

recovered $3.75 million for California residents *only* who purchased the same products labeled as being All Natural, which did not include claims that could provide for statutory damages that are available to Class Members here.[3]  Adding insult to injury, the Settlement Releases claims for an unknown number of unidentified products the Parties could have identified but chose not to disclose to Class members.  These unidentified released products include non-Kashi-branded products such as Bear Naked products, for which no Class Member can make a Claim and for which no compensation or any other relief is being given by this Settlement.

The Settlement permits claims to be made for the purchases of "Products," which are limited to Kashi-branded products labeled "All Natural."  Settlement, § II.A.22.  The Parties could have identified all "Products" for which Class Members could make claims, but did not do so.  The settled action concerns Kashi's products being labeled All Natural despite containing certain allegedly non-natural ingredients.  Amended Consolidated Class Action Complaint, Dkt. No. 58 at 1-3; Settlement at I.  Kashi, and presumably Plaintiffs' counsel, knows which of Kashi's products were labeled All Natural during the Settlement's class period, and what ingredients were in those products since they said they have completed all discovery, and had their case on the doorsteps of trial.  Dkt. No. 187-1, Joint Declaration of Counsel, ¶¶ 10-13.  Given these two critical pieces of information, either Kashi or Plaintiffs' counsel could have created an all-inclusive list of the "Products" at issue in the action, but they did not.  Rather, they chose to leave "Products" ambiguous by pointing to an admittedly **<u>non-exclusive</u>** list of products

---

[3] Unlike the *Astiana* action, this Settlement includes Class Members in states which, for false advertising claims similar to the claims being settled and released here, provides for statutory damages from $25 to $500 per violation. *See, e.g.,* New York General Business Law § 349 ($50 statutory damage per deceptive act or practice); New York General Business Law § 350-d ($500 statutory damage per false advertisement); N.J. Stat. Ann. § 56:12–17 ($100 civil penalty per violation of New Jersey law); Mass. Gen. Laws Ann. ch. 93A, § 9 ($25 per violation of Massachusetts consumer fraud law).

(Exhibit H), and crafting a broad release that applies to products not identified in Exhibit H, some of which were not-Kashi-branded products, and for which no relief is whatsoever is being given to any Class Member.

The Settlement's "Released Claims" includes all known or unknown claims "of food products labeled as 'All Natural,' '100% Natural,' 'Nothing Artificial,' or the like." Settlement, § II.A.23. Thus, the Release covers food products that are not limited to those sold under the Kashi Name, and applies to a large number of unidentified "Release Parties," which includes Kashi's subsidiaries and its parent Kellogg Company. Settlement, § II.A.24. Through this Settlement, its non-exclusive list of products at issue, and its overly broad release, Kashi is attempting to get a back-door release for products which no relief is being given to anyone, and for which Class Members may have real, known claims.

For example, the Release expressly applies to products labeled "100% Natural." Settlement, § II.A.23. However, *no Kashi-branded product was labeled 100% Natural during the Class Period.*[4] Kashi's wholly-owned subsidiary, Bear Naked, Inc., did sell products labeled "100% Natural" during the Class Period which was subject of a separate lawsuit in California. *See Thurston, et al. v. Bear Naked, Inc.*, Case No. 11-cv-2890-H (BGS), Dkt. No. 218 (S.D. Cal.). The *Thurston* action resulted in a $325,000 settlement for California residents, separate from the money recovered in the *Astiana* settlement for the purchases of the same Kashi-branded products that is the focus of Plaintiffs' lawsuit here. Yet, this Settlement makes no mention of Bear Naked, Inc. or the Bear Naked products that are subject to the Release, and provides no

---

[4] Neither Plaintiffs here, nor the plaintiffs in *Astiana*, made any allegation that Kashi labeled any Kashi products as being "100% Natural" during their respective class periods.

compensation or any other form of relief to Class Members who happened to have also purchased Bear Naked products.

Plaintiffs' counsel and/or Kashi might argue that the Settlement does not apply to non-Kashi branded products, such as Bear Naked products.  To the extent they make this argument in response to this Objection, I have attached for the Court's consideration the Settlement website's Frequently Asked Questions ("FAQ") (https://www.allnaturalsettlement.com/FAQ.dtm) indicated that the Settlement releases claims against Bear Naked.  *See* Exhibit 2, FAQ No. 14 (downloaded September 15, 2015) ("If I Did Not Exclude Myself, Can I Sue Kashi Company and Bear Naked, Inc. For the Same Thing Later?  No. Unless you excluded yourself, you gave up any right to sue Kashi Company for the claims that these Settlements resolve, including any claims relating to Kashi Company for any of the Released Claims")[5].  However, burying the fact that the Settlement's release includes claims for purchase of Bear Naked products, for which no compensation is being given, in the Settlement Administrator's FAQ without mentioning it in the Class Notice, in the Settlement Agreement, or on the Claim Form, is inadequate to notify Class Members of the broad scope of the Release.   In future lawsuits, Kellogg Company and its subsidiaries will certainly argue that the Release bars claims for the purchase of any Kellogg product labeled "All Natural ... or the like" by anyone who happened to have purchased a Kashi All Natural product during the Settlement Class Period.[6]

---

[5] Since capturing Exhibit 2, the Claim Administrator changed the FAQ to remove reference of Bear Naked and the fact that the Release bars claims from being brought against Bear Naked in the future.  This is just another way the Parties are concealing the over-breadth of the release, and the scope of the products Kashi is trying to obtain a release for.

[6] As explained further below, the overly broad release that deals with any claims not only asserted, but those what "could have been" asserted, will result in Kashi, and potentially other

Clearly, Kashi bargained for a nationwide release of any claims against it, its parent Kellogg Company, and any of their related companies, for a paltry $2 million to be paid to Class Members in 49 states and D.C.  It is shameful that Plaintiffs' counsel is willing to give Kellogg Company and countless of its subsidiaries a virtual free-pass for a wide array of real, known mislabeling claims for such a small settlement. [7]   Where, as here, the Release encompasses claims unrelated to the case at hand, it is too broad and should be rejected.  *Bond. v. Ferguson Enterprises, Inc.*, No. 1:09-CV-01662, 2011 WL 284962, at *7 (E.D. Cal. Jan. 25, 2011).

### C. The Release is severely overbroad, as it includes claims that were never at issue in this action, and for which no compensation or any form of relief is being given to Class Members.

In addition to unidentified products not at issue in this case, the severely overbroad release also bars claims that were never part of this action, and for which no Class Members received compensation or any other form of relief.  The Release purports to bar claims that are "known or unknown, suspected or unsuspected ... which have been or could have been asserted." Settlement, § II.A.23.  Settlements which purport to release claims not raised in the action are often rejected.  *See, e.g., Kakani v. Oracle Corp.*, 2007 WL 1793774, at *2–3 (N.D.Cal.2007)

---

companies within Kellogg Company's corporate enterprise, to argue the release applies to bar any claims that exist on or before the conclusion of the settlement, which was after Kashi had stopped labeling its products "All Natural," the only claim at issue in Plaintiffs' action.

[7] Even if the parties wanted to expressly name and release claims for non-Kashi products not at issue in this action, Plaintiffs lack Article III standing to pursue claims based on products they have not alleged to have bought, and could not release claims they themselves could not raise in federal court.  *See De Leon v. Bank of Am., N.A. (USA)*, No. 6:09-CV-1251-ORL-28, 2012 WL 2568142, at *11-12 (M.D. Fla. Apr. 20, 2012) report and recommendation adopted, No. 6:09-CV-1251-ORL-28, 2012 WL 2543586 (M.D. Fla. July 2, 2012) (denying preliminary approval of settlement that attempted to release claims under a different contract than the one the plaintiffs were bound by).  Without Article III standing, the Court could not adjudicate claims or certify any action as it relates to such products under Rule 23, even for settlement purposes, as Plaintiffs would not be typical or adequate of purchasers of non-Kashi products.  *Id.*

(rejecting a settlement in part because of the "draconian scope" of the proposed release, which, among other things, released and forever discharged the defendant from any and all claims that were asserted or could have been asserted in the complaint whether known or unknown); *Tijero v. Aaron Bros., Inc.*, No. C 10-01089 SBA, 2013 WL 60464, at *9 (N.D. Cal. Jan. 2, 2013)(rejecting settlement because the "release does not appropriately track the extent and breadth of Plaintiffs' allegations in the FAC and releases unrelated claims"); *Trotsky v. Los Angeles Fed. Sav. & Loan Assn.*, 48 Cal.App.3d 134 (1975)(overturning class action settlement that added claims not at issue in the underlying lawsuit because the named plaintiffs were not appropriate representatives for the claim, and a class action settlement could not release a claim beyond the scope of the complaint).

Given the overly-broad "could have been asserted" language, Kashi (and other companies as described above) will argue that the Release bars any type of claim regarding the labeling of products that could have been alleged against it up to the resolution of this action. While a broad, general release might be acceptable in a settlement if the relief given to class members was sufficient, there the $2 million to settle claims on behalf of residents in 49 states and D.C. is not nearly sufficient. As described more fully below, Kashi paid $5 million to settle the identical "All Natural" claims on behalf of California residents alone, and received a release limited to just the actual "All Natural" claims raised, and did not include claims not raised. This is direct evidence that the $2 million for residents in every state except California is not compensation for a release of all potential claims.

Given the overbreadth of the Release as it relates to unknown claims which "could have been asserted" but were not, without providing any compensation whatsoever for such a broad release, final approval of the Settlement should be denied.

9

**D. The Settlement Notice fails to adequately notify Class Members of the broad scope of the release which applies to products not at issue in the action, and known claims existing against Kashi right now.**

As explained above, the Settlement's overbroad release applies to companies not before the court, products not at issue in this case, and for claims that have been raised against Kashi in other cases but were never at issue in this case. *See* Sections B-C, *supra*. In addition to failing to compensate or provide another form of relief to Class Members for such an overbroad release, the Parties fail to provide adequate notice to Class Members of how broad the release is and that they are releasing "unknown...or unsuspected [claims] ... which have been or could have been asserted." Such a release of future claims, without adequate notice, is something the Supreme Court has been specifically critical of. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 628, 117 S. Ct. 2231, 2252, 138 L. Ed. 2d 689 (1997) (questioning the adequacy of notice regarding potential future claims, but denying certification of the class on separate grounds).

The Settlement's Notice (Exhibit C to the Settlement at ¶ 4) indicates that only people who purchased Kashi products labeled All Natural are Class Members, despite the fact the release covers more than Kashi-branded products. *See* Section B, *supra*. The Claim Form (Exhibit A to the Settlement) makes no mention about the release, and points putative Class Members to the list of products in Exhibit H to the Settlement. However, neither the Claim Form nor the Notice indicates Exhibit H is not an all-inclusive list of the products at issue, or that the Release covers products made by other companies such as Bear Naked. See Section B, *supra*.

10

Similarly, the Notice does not adequately inform Class Members about the scope of the release and the number and type of other claims being released. The Notice indicates the lawsuit is about Kashi products labeled All Natural, but the Release bars claims not raised in Plaintiffs Amended Complaint. *See* Section C, *supra*. Food companies such as Kashi and its parent company Kellogg Company have been the targets of numerous lawsuits throughout the nation alleging violations of FDA regulations and state consumer laws based on the labeling of their products. Thus, they are certainly aware that their labels may give rise to other potential claims that have been raised against them, or their similarly-labeled competitors. The Notice does not inform Class Members about other claims pending against Kashi, or that by not opting out of the Settlement they will be giving up any rights to pursue such claims against Kashi and its parent and affiliated companies in the future. While a broad release might be ok if adequate notice and sufficient monetary compensation were given, the Class received neither here.[8]

For all of these reasons, the Notice was inadequate and final approval of the Settlement should be denied.

---

[8] Kashi also knows the addresses and/or emails of Class Members who purchased the Products and are subject to the Settlement's release, but the Parties did not give direct notice to any Settlement Class Member. Kashi maintains a website and a social media presence, and Class Members likely contacted Kashi (or Kellogg Company) indicating they purchased Products. Kashi may also have Class Member information from other cases it has been involved in. Yet, the Parties made no effort to provide any known Class Members with direct notice of the Settlement, only general public notice, making the notice plan inadequate. Dkt. No. 186-2, Declaration of Mark Schey, ¶¶ 9-13. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175 (1974) ("'[N]otice by publication ha[s] long been recognized as a poor substitute for actual notice and . . . its justification [is] 'difficult at best.'"); *In re Platinum & Palladium Commodities Litig.*, No. 10CV3617, 2014 WL 3500655, at *14 (S.D.N.Y. July 15, 2014), appeal dismissed (Oct. 6, 2014) (approving of a court-modified class notice that included general notice to the public, as well as specific notice to known and likely class members); *Ross v. Trex Co., Inc.*, No. 09-CV-00670-JSW, 2013 WL 6622919, at *2 (N.D. Cal. Dec. 16, 2013) (final settlement in a consumer action granted, after both publication and direct mail notice was given to known Class Members); *In re Zurn Pex Plumbing Products Liab. Litig.*, No. 08-MDL-1958 ADM/AJB, 2013 WL 716088, at *8 (D. Minn. Feb. 27, 2013) (same).

### E. The Settlement is woefully underfunded, and has two tell-tale signs of collusion including a clear-sailing provision and disproportionately high counsels' fees.

The Court has a significant supervisory role in determining the reasonableness of counsel's fees in light of the benefits obtained for the class. *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1293 (11th Cir. 1999). When a settlement takes place before class certification, as it has in this instance, the court should apply a higher standard of fairness to ensure that the class representatives and their counsel do not receive a disproportionate benefit at the expense of unnamed class members who class counsel has a duty to represent. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *accord In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 805 (3d Cir. 1995); *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir.1982); *Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust*, 834 F.2d 677, 681 (7th Cir.1987); Manual for Complex Litigation § 30.45 (3rd. ed. 1995). Here, Counsels' fees are disproportionately high compared to the woefully inadequate amount being divided amongst Class Members, and the non-monetary relief is illusory. Indeed, this Settlement has two tell-tale signs of collusion: a "clear-sailing" agreement for Plaintiffs' counsels' fees, and counsels' fees being disproportionate to the amount of money recovered for the Class, which might explain why Plaintiffs' counsel were willing to enter such a deal on behalf of the Class. *See In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

The Settlement provides for $2 million to be paid to Class Members residing in 49 states and D.C, from an all-in $3.99 million cash settlement.[9] Settlement, § IV.A.3.a. Plaintiffs' counsel have requested that nearly half of the total Settlement fund, $1.5 million in fees and $168,204 in costs, be paid to them from the Settlement fund. Dkt. No. 187. Given the

---

[9] The settlement provides for Kashi to pay $3.99 million, from which $1.99 million has been earmarked to pay for the settlement administrator, Plaintiffs and Plaintiffs' counsel. Settlement, §§ IV.A.1, A.2.a. and A.2.b.

benchmark for fees for counsel in a class action settlement is 25% (*Hall v. Bank of Am., N.A.*, No. 1:12-CV-22700-FAM, 2014 WL 7184039, at *9 (S.D. Fla. Dec. 17, 2014)), counsels' request for fees and expenses accounting for 42% of the fund is unjustified.[10] Settlements such as this one, where a disproportionate amount of the total recovery is going to Plaintiffs' Counsel and not the Class, is evidence of collusion. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir. 1998); *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 952 (7th Cir. 2006).

Even if Plaintiffs' counsel were not taking nearly half of the Settlement fund for themselves, the amount being settled for is still inadequate. The "**identical**"[11] claims that were brought in an earlier action on behalf of California residents resulted in a $5 million settlement ($3.75 million set aside for class members), more than 20% more money than the 49-state settlement here. *See* Exhibit 1. The *Astiana* settlement was negotiated after the plaintiffs there certified a statewide class (*Astiana v. Kashi Co.*, 291 F.R.D. 493, 510 (S.D. Cal. 2013)), completed all merits and nearly all expert discovery, and the case was on the eve of trial. *Astiana v. Kashi Co.*, Case No. 11-cv-1967-H-BGS, Dkt. No. 227-1 at pp. 25-26. Despite the claims being identical as Plaintiffs' counsel concedes, the *Astiana* settlement encompassed less products than this Settlement covers (*see* § B, *supra*), and included a limited release encompassing only the claims at issue in that case and not claims that "could have been" raised

---

[10] Any deviation from the benchmark is not called for in this action. *See In re: Managed Care Litig.*, No. MASTER00-1334-MD-MOR, 2003 WL 22850070, at *6 (S.D. Fla. Oct. 24, 2003). This case is not novel, it is an unremarkable copy of an earlier, and more successful case, *Astiana*. The amount of money recovered for the Class ($2 million) is low, while the release being given is extremely onerous. Furthermore, Plaintiffs do not have a certified class and have not survived Kashi's pending motions on experts and the merits of Plaintiffs' action.

[11] *See* Plaintiffs' Memorandum in Support of Motion for Class Certification, Dkt. No. 118-1 at n. 1 ("Plaintiff Julie Martin, a California resident, is not being offered as a class representative, in light of the Settlement Defendant reached with California residents regarding claims **identical** to those alleged in this case," citing *Astiana*) (emphasis added).

but were not.  *See* § C, *supra*.  Moreover, the *Astiana* single-state settlement covered sales over less time than this Settlement.  Compare Exhibit 1, § II.A.27 (less than 7 year class period) with Settlement, § II.A.27 (a 7.5 year class period).  Even if the scope of the products, the release and non-monetary benefits provide by this Settlement were equal to the settlement in *Astiana* – which they clearly are not – California accounts for only 12% of the total U.S. population so, proportionally, Class Members in the other 49 states should be divvying up more than $33 million, not a mere $2 million.

Comparing the two "All Natural" settlements side-by-side, this Settlement fund is severely inadequate and would be even if Plaintiffs had bargained for a release that encompassed only the "All Natural" claims and the products at issue in their action, and not the expanded products and claims that are being released.  Such a comparatively low-value settlement can only be explained by the fees and expenses Plaintiffs' Counsel expect to receive at the expense of the Class.  Indeed, despite the *Astiana* settlement obtaining more money for a single state, releasing fewer claims made on the packaging of less products and for a shorter class period, counsel in *Astiana* asked for less money to cover their costs and fees than Plaintiffs' counsel are requesting here – $1.25 million compared to Plaintiffs' counsels' request for $1.68 million here.  Dkt. No. 187.

To help get the settlement approved, Plaintiffs' counsel negotiated for a clear sailing agreement where Kashi "shall not oppose an award of attorneys' fees in an amount not to exceed $1,500,000 ..." and "expenses in an amount not to exceed $180,000."  Settlement, § VIII.A.[12]  Such clear sailing agreements are indicia of collusion between the parties.  *Weinberger v. Great*

---

[12] The *Astiana* settlement did not contain a clear sailing agreement requiring Kashi not to oppose any requested fee and expense award.  Compare Exhibit 1 at VIII.A.

*N. Nekoosa Corp.*, 925 F.2d 518, 524 (1st Cir.1991) (clear-sailing agreements are evidence of potential collusion because "lawyers might urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees.")  Courts often deny approval of settlements which provide clear-sailing arrangements, and that provide the vast majority of the settlement fund to go to Plaintiffs' Counsel, while class members get little of the settlement. *Eubank v. Pella Corp.*, 753 F.3d 718, 720 (7th Cir. 2014)("we and other courts have often remarked the incentive of class counsel, in complicity with the defendant's counsel, to sell out the class by agreeing with the defendant to recommend that the judge approve a settlement involving a meager recovery for the class but generous compensation for the lawyers – the deal that promotes the self-interest of both class counsel and the defendant and is therefore optimal from the standpoint of their private interests"); *see also Grok Lines, Inc. v. Paschall Truck Lines, Inc.*, No. 14 C 08033, 2015 WL 5544504, at *9 (N.D. Ill. Sept. 18, 2015)(denying approval of a settlement with a clear-sailing clause, and no money going to class members).

Plaintiffs' counsel claim that the "Other Relief" obtained (Settlement, § IV.C.) – Kashi removing the "All Natural" statements from its products and participation in the non-GMO Verified project – justifies the paltry amount Kashi is paying to settle the claims of millions of Class Members throughout the country, and their own fees. Dkt. No. 187-1, Joint Declaration of Class Counsel in Support of Plaintiffs' Motion for Attorneys' Fees and Costs, ¶ 22.  However, this "Other Relief" Plaintiffs obtained from Kashi in this Settlement is illusory as they were both already given by Kashi prior to this Settlement.

The Settlement's "Other Relief" calls for Kashi to modify its labeling and advertising to remove the All Natural statements by the end of 2015.  Settlement, § IV.C.1.  Kashi previously agreed to remove these same "All Natural" statements by the end of 2014 for all of its products

15

sold nationwide as a result of the *Astiana* agreement, and its products no longer are labeled All Natural. *See* Exhibit 1, § IV.B; § A, *supra*; http://www.cbsnews.com/news/kashi-to-drop-all-natural-label-from-some-products-to-settle-lawsuit/ (Kashi's public announcement that it was removing the "All Natural" statements from its products by the end of 2014).   Instead of disclosing that Kashi previously agreed to remove the "All Natural" statements from its labels, Plaintiffs' counsel asserts this "Other Relief" obtained in the Settlement has value because, "*Astiana* applies only to California residents." Dkt. No. 187-1, ¶ 22.  This is simply untrue as Plaintiffs' counsel should well know based on the plain language of the *Astiana* settlement and Kashi's public statements.  Moreover, Plaintiffs' counsel finished all expert discovery prior to entering into the Settlement with Kashi which, presumably, would include a model for damages for the sale of "All Natural" products which would necessarily preclude the sale of products not labeled "All Natural." Dkt. No. 187-1, ¶ 11.  If Plaintiffs' experts modeled damages based on the sale of "All Natural" products, Plaintiffs' counsel would have necessarily had to make sure they were not modeling them based on non-qualifying sales, and to do this they would have to know that Kashi stopped selling "All Natural" labeled products before the end of their Class Period.[13]

Further, the Settlement's "Other Relief" includes that Kashi intends "to package certain Products with a 'non-GMO Project Verification label." Settlement, IV.C.2.  While this is true, much like the removal of the "All Natural" statements from Kashi's products, the Parties did not

---

[13] Even if Kashi had not already removed the "All Natural" statements from its labeling, the Settlement's "Other Relief" does not require Bear Naked to remove the "100% Natural" statement off its products which are subject to the Release because the label change is limited to Kashi's labels.  Settlement, § IV.C.  However, even if the Settlement called for Bear Naked to remove its "100% Natural" labels, again this relief would be illusory since Bear Naked agreed to remove such statements from its products as part of a settlement of the *Thurston* action.

tell the Court that Kashi's agreement to package products with non-GMO Product Verification labels was not as a result of negotiation with Plaintiffs' counsel, but was instead something Kashi announced it was doing voluntarily in 2014 around the same time it was settling the *Astiana* action.[14]

Given the little amount of money being divided amongst Class Members in 49 states and D.C., the disproportionately large amount of money going to Plaintiffs' counsel, the lack of any non-cash relief, and a clear-sailing clause where Kashi (understandably) did not object to paying Plaintiffs' attorneys' fees for such a small settlement amount, the final approval of the Settlement should be denied.

## III.     CONCLUSION

Final approval of this Settlement should be denied for all the reasons stated herein.

Dated:  December 17, 2015                              Respectfully submitted,

                                                       By: _____
                                                            S. Perry Thomas, Jr.


Sent to:

Clerk of Courts
United States District Court for
    the Southern District of Florida
U.S. Courthouse
400 North Miami Avenue
Miami, FL  33128

**Class Counsel:**

---

[14] *See* https://www.kashi.com/natural-living/organic/kashi-and-the-nongmo-project.

Mark A. Milstein
Gillian L. Wade
Sara D. Avila
MILSTEIN ADELMAN LLP
2800 Donald Douglas Loop North
Santa Monica, CA 90405
Telephone: (310) 396-9600

**Kashi's Counsel:**

Dean N. Panos
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
Telephone: 312/222-9350

1  FEINSTEIN DOYLE PAYNE & KRAVEC, LLC
2  Joseph N. Kravec, Jr.
   Wyatt A. Lison
3  429 Forbes Avenue
   Allegheny Building, 17th Floor
4  Pittsburgh, PA 15219
   Telephone: (412) 281-8400

5

6  FARUQI & FARUQI, LLP
   Nadeem Faruqi
7  Antonio Vozzolo
   Andrea Clisura
8  369 Lexington Avenue, 10th Floor
   New York, NY 10017
9  Telephone: (212) 983-9330

10 *Counsel for Plaintiffs*

JENNER & BLOCK LLP
Kenneth K. Lee (Cal. Bar No. 264296)
klee@jenner.com
Kate T. Spelman (Cal. Bar No. 269109)
kspelman@jenner.com
633 West 5th Street, Suite 3600
Los Angeles, CA 90071
Phone: (213) 239-5100
Fax:   (213) 239-5199

JENNER & BLOCK LLP
Dean N. Panos (*pro hac vice*)
dpanos@jenner.com
353 North Clark Street
Chicago, IL 60654
Phone: (312) 222-9350
Fax:   (312) 527-0484

*Counsel for Defendant Kashi Company*

11                 IN THE UNITED STATES DISTRICT COURT

12              FOR THE SOUTHERN DISTRICT OF CALIFORNIA

13

| | |
|---|---|
| 14  SKYE ASTIANA, MILAN BABIC, TIMOTHY BOLICK, JOE CHATHAM, JAMES COLUCCI, TAMARA DIAZ, MARTHA ESPINOLA, TAMAR LARSEN, MARY LITTLEHALE and KIMBERLY S. SETHAVANISH, on behalf of themselves and all others similarly situated, )))))))))) | Case No. 11 CV 1967 H (BGS)  **STIPULATION OF SETTLEMENT** |
|         Plaintiffs,  vs. )))) | |
| KASHI COMPANY, a California Corporation,  Defendant. ))))) | |

22       This Stipulation of Settlement is made and entered into by and among Plaintiffs Skye Astiana,

23  Milan Babic, Tamara Diaz, Tamar Larsen, and Kimberly S. Sethavanish ("Plaintiffs"), on behalf of

24  themselves and each of the Settlement Class Members, and Defendant Kashi Company ("Defendant"

25  or "Kashi") (collectively, the "Parties").

26

27

28                                1

**EXHIBIT**

_1_

I.     RECITALS

A.     In 2011, the following putative class action complaints were filed against Kashi and other related Defendants in the United States District Court for the Southern District of California: Bates v. Kashi Company, et al., 3:11-cv-1967; Babic v. Kashi Company, 3:11-cv-02816; Espinola v. Kashi Company, 3:11-cv-02629 (initially filed in the United States District Court for the Central District of California (11-cv-8534)); Diaz v. Kashi Company, et al., 11:cv-2256; Chatham v. Kashi Company, et al., 11-cv-2285; Sethavanish, et al. v. Kashi Company, 11-cv-02356 (initially filed in the United States District Court for the Northern District of California (11-cv-4453)); and Baisinger v. Kashi Company, 11-cv-2367 (initially filed in the United States District Court for the Northern District of California (11-cv-4581)) (collectively "the Original Complaints").

B.     On November 28, 2011, the Court ordered the consolidation of the related actions. (ECF No. 16 (naming Bates the lead case; ordering consolidation of Diaz, Chatham, Sethavanish and Baisinger cases); see also ECF No. 22 (ordering consolidation of Espinola case); ECF No. 8 in 3:11-cv-2816 (ordering consolidation of Babic case).)  On January 18, 2012, the Court appointed the law firms of Stember Feinstein Doyle & Payne, LLC and Faruqi & Faruqi, LLP as interim co-lead counsel. (ECF No. 41.)

C.     On February 21, 2012, Plaintiffs filed a Consolidated Amended Complaint For Damages, Equitable, Declaratory and Injunctive Relief against Kashi Company, Kashi Sales LLC and Kellogg Company (Case No. 3:11-cv-01967) (the "Consolidated Amended Complaint"), which amended and superseded the above-referenced Original Complaints.  (ECF No. 49.)

D.     In the Consolidated Amended Complaint, which was filed as a putative class action, Plaintiffs allege that they bought certain Kashi food products based, at least in part, on allegedly misleading statements printed on the products' labels that the products were "All Natural" or "Nothing Artificial."  Plaintiffs allege that, based on the labels, they believed the products contained no synthetic or artificial ingredients and therefore paid a premium price for the products.  Plaintiffs further allege that the products that bore the "All Natural" or "Nothing Artificial" labels contained

1   certain unnatural, synthetic or artificial ingredients.  Plaintiffs further allege that they either would

2   not have purchased the products or would have paid less for the products had they known at the time

3   of purchase that the products contained ingredients that were unnatural, synthetic or artificial.

4        E.       On April 6, 2012, Defendants filed a motion to dismiss the Consolidated Amended

5   Complaint.  (ECF No. 61.)  Plaintiffs opposed Defendants' motion to dismiss.

6        F.       On July 16, 2012, the Court entered an Order granting in part and denying in part

7   Defendants' motion to dismiss.  (ECF No. 79.)  The Court dismissed all of Plaintiffs' claims against

8   Kashi Sales, LLC and Kellogg Company.  The Court also dismissed Plaintiffs' Magnuson-Moss

9   Warranty Act ("MMWA") causes of action, common law fraud cause of action, and claim for unjust

10  enrichment.  The Court denied the remaining portions of Defendants' motion to dismiss the

11  Consolidated Amended Complaint.

12       G.       On April 15, 2013, Plaintiffs filed a motion for class certification.  (ECF No. 108.)

13  Kashi opposed Plaintiffs' motion for class certification.

14       H.       On July 30, 2013, the Court entered an Order granting in part and denying in part

15  Plaintiffs' motion for class certification.  (ECF No. 148.)  The Court appointed Faruqi & Faruqi, LLP

16  and Feinstein Doyle Payne & Kravec, LLC as co-lead counsel.

17       I.       On August 12, 2013, Kashi filed a Petition For Permission To Appeal Under Federal

18  Rule of Civil Procedure 23(f) in the United States Court of Appeals for the Ninth Circuit.

19       J.       On October 22, 2013, the Ninth Circuit denied Kashi's petition for permission to

20  appeal the District Court's class certification ruling.

21       K.       On October 24, 2013, Kashi filed a motion to modify the Court's July 30, 2013 class

22  certification order.  (ECF No. 182.)  Plaintiffs opposed Kashi's motion.

23       L.       On November 22, 2013, the Court denied Kashi's motion to modify the Court's class

24  certification order.  (ECF No. 203.)

25       M.       On October 23, 2013 and December 5, 2013, Class Counsel, Defendant and

26  Defendant's Counsel participated in mediations conducted by the Honorable Howard B. Weiner (ret.)

27

28

1   at which they reached a tentative settlement.  Subsequent to those sessions, the Parties engaged in

2   protracted, extensive, and hard-fought settlement negotiations.  As a result of those negotiations, the

3   Parties agreed to settle the Litigation pursuant to the terms set forth in this Stipulation of Settlement.

4        N.   Based upon Class Counsel's investigation and evaluation of the facts and law relating

5   to the matters alleged in the pleadings, including the completion of all merits discovery in this action

6   and the parties' exchange of trial expert reports on liability and damage issues, Plaintiffs and Class

7   Counsel agreed to settle the Litigation pursuant to the provisions of this Stipulation after considering,

8   among other things:  (1) the substantial benefits available to the Class under the terms herein; (2) the

9   attendant risks and uncertainty of litigation, especially in complex actions such as this, as well as the

10  difficulties and delays inherent in such litigation; and (3) the desirability of consummating this

11  Stipulation to provide effective relief to the Class and to end the conduct at issue.

12       O.   Kashi has denied and continues to deny each and all of the claims and contentions

13  alleged by Plaintiffs.  Kashi has expressly denied and continues to deny all charges of wrongdoing or

14  liability against it arising out of any of the conduct, statements, acts or omissions alleged, or that

15  could have been alleged, in the Litigation.

16       P.   Nonetheless, Kashi has concluded that further defense of the Litigation would be

17  protracted and expensive, and that it is desirable that the Litigation be fully and finally settled in the

18  manner and upon the terms and conditions set forth in the Stipulation.  Defendant also has taken into

19  account the uncertainty and risks inherent in any litigation.  Kashi, therefore, has determined that it is

20  desirable and beneficial to it that the Litigation be settled in the manner and upon the terms and

21  conditions set forth in the Stipulation.

22       Q.   This Stipulation effectuates the resolution of disputed claims and is for settlement

23  purposes only.

24  II.   DEFINITIONS

25       A.   As used in this Stipulation the following capitalized terms have the meanings

26  specified below.  Unless otherwise indicated, defined terms include the plural as well as the singular.

27

28

4

1        1.     "Challenged Ingredients" means one of more of the following ingredients:
pyridoxine hydrochloride, calcium pantothenate,  hexane-processed soy ingredients, ascorbic acid,
calcium phosphate, glycerin, monocalcium phosphate, sodium phosphate, potassium bicarbonate,
potassium carbonate, sodium acid pyrophosphate, sodium citrate, alpha tocopherol acetate, mixed
tocopherols, tocopherol acetate, and/or xanthan gum.

2.     "Claim Form" means the documents to be submitted by Claimants seeking
payment pursuant to this Stipulation that will be available online at the Settlement Website,
substantially in the form attached hereto as Exhibit A and discussed in § IV.A.5 of this Stipulation.

3.     "Claimant" means a Settlement Class Member who submits a claim for
payment as described in § IV of this Stipulation.

4.     "Claims Administration Protocols" means the protocols set forth in the Claims
Administration Protocols, attached as Exhibit B.

5.     "Class" means all California residents who purchased any package of the
Products during the Settlement Class Period.  Excluded from the Class are:  (a) Kashi's employees,
officers and directors; (b) persons or entities who purchased the Products for the purpose of re-sale;
(c) retailers or re-sellers of the Products; (d) governmental entities; (e) persons who timely and
properly exclude themselves from the Class as provided herein; and (f) the Court, the Court's
immediate family, and Court staff.

6.     "Class Action Settlement Administrator" means, subject to Court approval,
The Garden City Group, Inc., which will provide the Class Notice and administer the claims process.

7.     "Class Counsel" means, subject to Court approval to represent the Settlement
Class, the attorneys appointed as class counsel by the Court's July 30, 2013 Order (ECF No. 148) and
means the following individuals:

| | |
|---|---|
| Joseph N. Kravec, Jr. | Nadeem Faruqi |
| Wyatt A. Lison | Antonio Vozzolo |
| Feinstein Doyle Payne & Kravec, LLC | Andrea Clisura |
| 429 Forbes Avenue | Faruqi & Faruqi, LLP |
| Allegheny Building, 17th Floor | 369 Lexington Avenue, 10th Floor |
| Pittsburgh, PA  15219 | New York, NY  10017 |
| Telephone: (412) 281-8400 | Telephone: (212) 983-9330 |

8.      "Class Notice" means, collectively, the "Notice of Class Action Settlement" and the "Publication Notice," substantially in the forms attached hereto as Exhibit C and Exhibit D, respectively, and discussed in § V of this Stipulation, but which may be modified as necessary to comply with the provisions of any order of Preliminary Approval entered by the Court.

9.      "Class Representatives" means, subject to Court approval, Skye Astiana, Milan Babic, Tamara Diaz, Tamar Larsen and Kimberly S. Sethavanish.

10.     "Court" means the United States District Court for the Southern District of California.

11.     "Defendant" means the Kashi Company.

12.     "Defendant's Counsel" means the following individuals:

Dean N. Panos
Jenner & Block LLP
353 North Clark Street
Chicago, IL 60654-3456
Telephone: (312) 923-2765

Kenneth K. Lee
Jenner & Block LLP
633 West 5th Street, Suite 3500
Los Angeles, CA 90071-2054
Telephone: (213) 239-5100

13.     "Effective Date" means the date on which all of the conditions of settlement have been satisfied, as discussed in § IX of this Stipulation.

14.     "Final Judgment" means the "Final Judgment And Order of Dismissal" to be entered by the Court, substantially in the form attached hereto as Exhibit E, which, among other things, fully and finally approves the Settlement and dismisses the Consolidated Amended Complaint with prejudice.

15.     "Incentive Award" means any award sought by application to and approved by the Court that is payable to the Representative Plaintiffs from the Settlement Fund.

16.    "Litigation" means the lawsuit captioned <u>Astiana, et al. v. Kashi Company,</u> Case No. 11-CV-01967 (S.D. Cal.), consisting of the Consolidated Amended Complaint and the Original Complaints.

17.    "Notice Deadline" is fifty (50) days after the Court enters the Preliminary Approval Order and means the deadline for all notifications discussed in the media plan (attached as Exhibit G).

18.    "Party" or "Parties" means the Plaintiffs and Defendant in this Litigation.

19.    "Person" means a natural person, individual, corporation, partnership, association, or any other type of legal entity.

20.    "Plaintiffs" means the class representatives Skye Astiana, Milan Babic, Tamara Diaz, Tamar Larsen and Kimberly S. Sethavanish, on behalf of themselves and each of the Settlement Class Members.

21.    "Plaintiffs' Counsel" means Class Counsel and the following individuals:

Behram V. Parekh
Heather M. Baker
Michael L. Kelly
Kirtland & Packard, LLP
2041 Rosecrans Avenue, Third Floor
El Segundo, CA 90245
Telephone: (310) 536-1000

Janet Lindner Spielberg
Law Office of Janet Lindner Spielberg
12400 Wilshire Boulevard, Suite 400
Los Angeles, CA 90025
Telephone: (310) 392-8801

Joseph N. Kravec, Jr.
Wyatt A. Lison
Feinstein Doyle Payne & Kravec, LLC
429 Forbes Avenue
Allegheny Building, 17th Floor
Pittsburgh, PA 15219
Telephone: (412) 281-8400

Michael David Braun
Braun Law Group PC
10680 West Pico Boulevard, Suite 280
Los Angeles, CA 90064
Telephone: (310) 836-6000

Nadeem Faruqi
Antonio Vozzolo
Andrea Clisura
Faruqi & Faruqi, LLP
369 Lexington Avenue, 10th Floor
New York, NY 10017
Telephone: (212) 983-9330

Jacob Goldberg
Faruqi & Faruqi, LLP
101 Greenwood Avenue, Suite 600
Jenkintown, PA 19046
Telephone: (215) 277-5770

Rosemary M. Rivas
Finkelstein Thompson LLP
505 Montgomery Street, Suite 300
San Francisco, CA 94111
Telephone: (415) 398-8700

David E. Bower
Faruqi & Faruqi, LLP
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884

Marc L. Godino
Glancy, Binkow & Goldberg, LLP
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150

Jason S. Hartley
Stueve Siegel Hanson, LLP
550 West C Street, Suite 1750
San Diego, CA 92101
Telephone: (619) 400-5822

22.    "Preliminary Approval Order" means the "Order Preliminarily Approving Class Action Settlement, Conditionally Certifying the Settlement Class, Providing For Notice and Scheduling Order," substantially in the form of Exhibit F attached hereto, which, among other things, preliminarily approves this Stipulation, certifies the settlement-only class, provides for notification to the Settlement Class and sets the schedule for the Settlement Hearing.

23.    "Products" means Kashi products labeled as "All Natural" or "Nothing Artificial" and containing any of the Challenged Ingredients.  A list of such products is set forth below:

GoLean Chewy Chocolate Almond Toffee Protein & Fiber Bars
GoLean Chewy Cookies and Cream Protein & Fiber Bars
GoLean Chewy Malted Chocolate Crisp Protein & Fiber Bars
GoLean Chocolate Malted Crisp Protein & Fiber Bars
GoLean Chewy Oatmeal Raisin Cookie Protein & Fiber Bars
GoLean Chewy Peanut Butter Chocolate Protein & Fiber Bars
GoLean Chocolate Malted Crisp Protein & Fiber Bar
GoLean Crunchy! Chocolate Almond Protein & Fiber Bars
GoLean Crunchy! Chocolate Caramel Protein & Fiber Bars
GoLean Crunchy! Chocolate Peanut Protein & Fiber Bars
GoLean Crunchy! Chocolate Pretzel Protein & Fiber Bars
GoLean Crunchy! Cinnamon Coffee Cake Protein & Fiber Bars
GoLean Oatmeal Raisin Protein & Fiber Bar
GoLean Peanut Butter & Chocolate Protein & Fiber Bar
GoLean Roll! Caramel Peanut Protein & Fiber Bar
GoLean Roll! Chocolate Peanut Protein & Fiber Bar
GoLean Roll! Chocolate Turtle Protein & Fiber Bar
GoLean Roll! Fudge Sundae Protein & Fiber Bar
GoLean Roll! Oatmeal Walnut Protein & Fiber Bar
TLC Baked Apple Spice Soft-Baked Snack Bars
TLC Blackberry Graham Soft-Baked Snack Bars
TLC Cherry Dark Chocolate Chewy Granola Bars

8

TLC Cherry Vanilla Soft-Baked Snack Bars
TLC Cranberry Walnut Fruit & Grain Bars
TLC Cranberry Walnut Layered Granola Bars
TLC Dark Chocolate Coconut Fruit & Grain Bars
TLC Dark Chocolate Coconut Layered Granola Bar
TLC Dark Mocha Almond Chewy Granola Bars
TLC Honey Almond Flax Chewy Granola Bars
TLC Honey Toasted 7 Grain Granola Bars
TLC All Natural Chewy Granola Bar in Honey Toasted
Kashi TLC Crunchy Granola Bar Honey Toasted 7 Grain
TLC Peanut Peanut Butter Chewy Granola Bars
TLC Peanutty Dark Chocolate Layered Granola Bar
TLC Pumpkin Pie Fruit & Grain Bars
TLC Pumpkin Pecan Layered Granola Bar
TLC Pumpkin Pecan Fruit & Grain Bars
TLC Pumpkin Spice Flax Crunchy Granola Bars
TLC Raspberry Chocolate Fruit & Grain Bars
TLC Raspberry Chocolate Layered Granola Bar
TLC Ripe Strawberry Soft-Baked Snack Bars
TLC Roasted Almond Crunch Crunchy Granola Bars
TLC Trail Mix Chewy Granola Bars
7 Grain Waffles
Blueberry Waffles
GoLean Blueberry Waffles
GoLean Strawberry Flax Waffles
GoLean Original 7 Grain Waffles
Berry Blossoms Squares Cereal
GoLean Crisp Toasted Berry Crumble Cereal
GoLean Crunch Cereal
GoLean Crunch Honey Almond Flax Cereal
Honey Sunshine Squares Cereal
Cocoa Beach Granola
Mountain Medley Granola
Summer Berry Granola
GoLean Chocolate Shake
GoLean Vanilla Shake
GoLean Creamy Instant Hot Cereal Truly Vanilla
GoLean Hearty Instant Hot Cereal with Clusters Honey & Cinnamon
TLC Country Cheddar Cheese Crackers
TLC Honey Sesame Snack Crackers
TLC Original 7 Grain with Sea Salt Pita Crisps
Kashi Pita Crisps Zesty Salsa
Kashi TLC Crackers Asiago Cheese
Kashi TLC Crackers Toasted Asiago
Kashi TLC Entertainer Cracker - Mediterranean Bruchetta
Kashi TLC Crackers Party Mediterranean Bruschetta
Kashi TLC Entertainer Cracker - Stoneground 7 Grain
Kashi TLC Crackers Party Stoneground 7 Grain

9

1   Kashi TLC Crackers Fire Roasted Vegetable
    Kashi TLC Entertainer Cracker - Garlic and Thyme
2   Kashi TLC Entertainer Cracker - Stoneground 7 Grain
    Kashi TLC Entertainer Cracker - Original 7 Grain
3   Kashi TLC Crackers Original 7 Grain
    Kashi TLC Crackers-Natural Ranch
4   TLC Happy Trail Mix Chewy Cookies
    TLC Oatmeal Dark Chocolate Chewy Cookies
5   TLC Oatmeal Raisin Flax Chewy Cookies
6   Kashi Entrée Chicken Florentine
    Kashi Chicken Pasta Pomodoro
7   Kashi Entrée Lemongrass Coconut Chicken
    Kashi Entrée Mayan Harvest Bake
8   Kashi Entrée Pesto Pasta Primavera
    Kashi Entrée Southwest Style Chicken
9   Kashi Entrée Spicy Black Bean Enchilada
10  Kashi Tuscan Veggie Bake
    Kashi Pizza Caribbean Carnival
11  Kashi Pizza 5 Cheese & Tomato
    Kashi Pizza Margherita
12  Kashi Pizza Margherita – Thin Crust
    Kashi Pizza Margherita – Stone-Fired Thin Crust
13  Tomato Garlic Cheese Stone-Fired Thin Crust Pizza
    Kashi Pizza Mexicali Black Bean
14  Kashi Pizza Mushroom Trio & Spinach
    Kashi Pizza Mushroom Trio & Spinach – Thin Crust
15  Kashi Pizza Basil Pesto
16  Kashi Pizza Basil Pesto – Stone-Fired Thin Crust
    Kashi Pizza Roasted Garlic Chicken
17  Kashi Pizza Roasted Vegetable
    Kashi Pizza Roasted Vegetable – Thin Crust
18  Heart to Heart Honey Oat Waffles
    Heart to Heart Honey Toasted Oat Cereal
19  Heart to Heart Instant Oatmeal Apple Cinnamon
    Heart to Heart Instant Oatmeal Golden Maple
20  Heart to Heart Instant Oatmeal Raisin Spice
21  Heart to Heart Oat Flakes & Blueberry Clusters Cereal
    Heart to Heart Blueberry Cereal
22  Heart to Heart Roasted Garlic Whole Grain Crackers
    Heart to Heart Warm Cinnamon Oat Cereal
23  Heart to Heart Original Whole Grain Crackers

24          24.    "Released Claims" shall be construed as broadly as possible to effect complete

25  finality over this Litigation, and means, with the exception of claims for personal injury, any and all

26  actions, claims, demands, rights, suits, and causes of action of whatever kind or nature that arose

27

28

1   during the Settlement Class Period against the Released Persons, including damages, costs, expenses,

2   penalties, and attorneys' fees, known or unknown, suspected or unsuspected, in law or equity arising

3   out of or relating to Kashi's packaging, marketing, distribution or sale of food products labeled as

4   "All Natural" or "Nothing Artificial", which have been asserted by the Class in the Plaintiff's

5   Consolidated Amended Complaint or in any of the Original Complaints.

6        25.   "Released Persons" shall be defined and construed broadly to effectuate a

7   complete and comprehensive release, and means and includes Kashi and its past and present direct

8   and indirect corporate parents (including without limitation Kellogg Company), subsidiaries and

9   affiliates (including without limitation Kashi Sales, LLC), joint-ventures, partners, members,

10  divisions, distributors, wholesalers, retailers, re-sellers, licensors, suppliers, officers, directors,

11  employees, shareholders, agents, attorneys, administrators, successors, predecessors, insurers,

12  spokespersons, public relations firms, advertising and production agencies and assigns of all such

13  persons or entities.

14       26.   "Settlement Class Member(s)" or "Member(s) of the Settlement Class" means

15  a member of the Class who has not been properly excluded from the Class.

16       27.   "Settlement Class Period" means the period from August 24, 2007 up to and

17  including May 1, 2014.

18       28.   "Settlement Fund" means the common fund discussed in § IV.A.2 of this

19  Stipulation.

20       29.   "Settlement Hearing" means the hearing(s) to be held by the Court to consider

21  and determine whether the proposed settlement of this Litigation as contained in this Stipulation

22  should be finally approved as fair, reasonable, and adequate, and whether the Judgment approving the

23  settlement contained in this Stipulation should be entered.  The Parties shall ask the Court to schedule

24  a date for the Settlement Hearing 120 days after the Court enters the Preliminary Approval Order.

25       30.   "Settlement Website" means the website to be created for this settlement that

26  will include information about the Litigation and the settlement, relevant documents and electronic

27  and printable forms relating to the settlement, including the Claim Form which can be submitted

28

1   online or printed and mailed.  The Settlement Website shall be activated no later than seven (7) days

2   after the Court enters the Preliminary Approval Order.

3          31.    "Stipulation" means this Stipulation of Settlement, including its attached

4   exhibits (which are incorporated herein by reference), duly executed by Class Counsel and counsel

5   for Defendant.

6         B.    Other capitalized terms used in this Stipulation but not defined above shall have the

7   meaning ascribed to them in this Stipulation and the exhibits attached hereto.

8   III.    CERTIFICATION OF THE SETTLEMENT CLASS

9         Kashi hereby consents, solely for purposes of the settlement set forth herein, to the

10   certification of the Settlement Class, to the appointment of Class Counsel as counsel for the

11   Settlement Class, and to the conditional approval of Plaintiffs as suitable representatives of the Class;

12   provided, however, that if this Stipulation fails to receive Court approval or otherwise fails to be

13   consummated, including, but not limited to, the Judgment not becoming final as provided in § IX.C

14   of this Stipulation, then Kashi retains all rights it had immediately preceding the execution of this

15   Stipulation to object to the maintenance of this Litigation as a class action by Class Counsel, and in

16   that event, nothing in this Stipulation or other papers or proceedings related to the settlement shall be

17

18   used as evidence or argument by any Party concerning whether the Litigation may properly be

19   maintained as a class action, whether the Class is ascertainable, or whether Class Counsel or the

20   Plaintiffs can adequately represent the Settlement Class Members under applicable law.

21   IV.    SETTLEMENT RELIEF

22         The settlement relief includes cash payments and non-monetary relief.

23         **A.**    **Cash Payments**

24             1.    **Class Members' Cash Recovery**

25

26

27

28

1        a.    <u>With Proof of Purchase</u>:  Class members may seek reimbursement of

2    $0.50 per package for every Product purchased during the Settlement Class Period, for which they

3    can present written proof of purchase in the form of a receipt or a retail rewards submission.

4        b.    <u>Without Proof of Purchase</u>:  Class members may make a claim for

5    every Product for which they submit a valid Claim Form.  Class members may seek reimbursement at

6    $0.50 per package for every Product purchased during the Settlement Class Period, with a maximum

7    recovery of $25 per household.

8        c.    Class Members may obtain relief under both Paragraphs IV.A.1(a), and

9    (b) with the appropriate paper work and subject to the maximum recovery amounts permitted for

10    each type of claim.

11        d.    Claimants may seek reimbursement by submitting a Claim Form either

12    by mail or electronically.  Each Claim Form will be signed (electronic or manual) under penalty of

13    perjury.  The actual amount paid to individual Claimants will depend upon the number of valid

14    claims made.  Adequate and customary procedures and standards will be used by the Class Action

15    Settlement Administrator to prevent the payment of fraudulent claims and to pay only legitimate

16    claims.

17        2.    **Settlement Fund**

18        a.    In accordance with the payment schedule set forth in § IV.A.7, below,

19    Defendant shall pay $5.0 million, less any costs associated with the Class Action Settlement

20    Administrator paid by Kashi prior to that time, in trust to a third party institution (the "Fund

21    Institution") to be approved by the Parties to establish an interest bearing, non-reversionary

22    settlement fund for payments made pursuant to this section.

23        b.    The Settlement Fund shall be applied to pay in full and in order:

24    (i) any necessary taxes and tax expenses; (ii) all costs associated with the Class Action Settlement

25    Administrator, including costs of providing notice to the Class Members and processing claims and

26    all costs relating to providing the necessary notices in accordance with the Class Action Fairness Act

27    of 2005, 28 U.S.C. § 1715; (iii) any Fee and Expense Award made by the Court to Class Counsel

28

1   under § VIII(a); (iv) any Incentive Award made by the Court to the Class Representatives under

2   § VIII(c); and (v) payments to authorized Claimants as allowed by this Stipulation and to be

3   approved by the Court.

4          3.        **Settlement Fund:  Insufficient or Excess Funds**

5                    a.        If the total amount of eligible claims exceeds the Settlement Fund, then

6   each claim's award shall be proportionately reduced.

7                    b.        If after all valid claims (plus other authorized fees, costs and expenses)

8   are paid, money remains in the Settlement Fund, the remaining amount shall be used to

9   proportionately increase the recovery of each eligible claim.

10         4.        **Delivery of Payments to Settlement Class Members**

11                   a.        The Class Action Administrator shall send a letter to any applicable

12  Settlement Class Member explaining the rejection of any claim no later than fifteen (15) days after

13  the Effective Date.  Settlement Class Members' time to appeal any such rejection decisions shall

14  expire forty-five (45) days after the Effective Date.

15                   b.        The Class Action Administrator will send payment directly to the

16  eligible Settlement Class Member no later than ninety (90) days after the Effective Date (the "Claims

17  Payment Date").

18                   c.        Failure to provide all information requested in the Claim Form will not

19  result in nonpayment of a claim.  Instead, the Class Action Settlement Administrator will take all

20  adequate and customary steps to determine the Settlement Class Member's eligibility for payment

21  and the amount of payment based on the information contained in the Claim Form or otherwise

22  submitted, the amount of money available to pay all valid claims, and such other reasonably available

23  information from which eligibility for payment can be determined.

24         5.        **Claim Form Availability**

25         The Claim Form will be available for downloading and may be completed and submitted

26  online at the Settlement Website, and the Claim Form will be available for downloading on Class

27  Counsel's websites, at Class Counsel's option.  The Claim Form may also be requested by calling the

28

1   toll-free number provided by the Class Action Settlement Administrator or by writing to the Class

2   Action Settlement Administrator.

3           6.      **Eligibility for Cash Payment**

4                   a.      To be eligible for a cash payment, the Settlement Class Member must

5   timely submit a signed and completed Claim Form containing his or her name and mailing address.

6   The Claim Form will also request an e-mail address for the Settlement Class Member, but an e-mail

7   address will not be required to be eligible for a cash payment.  The Settlement Administrator may pay

8   claims that are otherwise valid but untimely filed if there is sufficient money to pay all valid and

9   timely claims in full plus untimely but otherwise valid claims from the Settlement Fund, and payment

10  of any such untimely but valid claims is administratively feasible and otherwise reasonable, taking

11  into account the need to timely pay claims.  The determination of the Class Action Settlement

12  Administrator, after consultation with Class Counsel and Defendant's Counsel, concerning the

13  eligibility and amount of payment shall be final.  In the event a Settlement Class Member disagrees

14  with such a determination, the Class Action Settlement Administrator agrees to reconsider such

15  determination, which includes consultation with Class Counsel.

16                  b.      To be eligible, Claim Forms must be postmarked or submitted online

17  no later than eight (8) days before the Settlement Hearing (the "Claims Deadline").

18          7.      **Funding the Settlement Fund**

19                  a.      Subject to § IV.A.2, above, Defendant shall fund the Settlement Fund

20  no later than seven (7) days after the Effective Date.

21      B.      **Other Relief**

22                  a.      By the later of (i) 120 days following the Effective Date or (ii)

23  December 31, 2014 ("the Injunctive Relief Effective Date"), Kashi agrees to modify its current

24  labeling and advertising to remove "All Natural" and  "Nothing Artificial" from those Products that

25  contain the following Challenged Ingredients:  (i) pyridoxine hydrochloride, calcium pantothenate

26  and/or hexane-processed soy ingredients in products labeled "All Natural," and (ii) pyridoxine

27

28

15

1    hydrochloride, alpha-tocopheral acetate and/or hexane-processed soy ingredients in products labeled

2    "Nothing Artificial," unless the ingredients are approved or determined as acceptable for products

3    identified as "natural" by a federal agency or controlling regulatory body.  Sales of products

4    manufactured prior to the Injunctive Relief Effective Date shall not constitute a violation of this

5    Stipulation.  The injunctive terms and requirements of this Paragraph shall expire three years after the

6    Effective Date.

7    V.      NOTICE TO THE CLASS, COMMUNICATIONS WITH SETTLEMENT CLASS
            MEMBERS AND REDEMPTION OF SETTLEMENT RELIEF

8

9         A.     **Class Notice**

10          The Class Notice shall conform to all applicable requirements of the Federal Rules of Civil

11    Procedure, the United States Constitution (including the Due Process Clauses), model class notices of

12    the Federal Judicial Center and any other applicable law, and shall otherwise be in the manner and

13    form agreed upon by the Parties and approved by the Court.  Collectively, the Class Notice shall set

14    forth the following information

15            1.     General Terms.  The Class Notice shall:

16               a.     inform Settlement Class Members that, if they do not exclude

17    themselves from the Class, they may be eligible to receive the relief under the proposed settlement;

18               b.     contain a short, plain statement of the background of the Litigation, the

19    Class certification and the proposed settlement;

20               c.     describe the proposed settlement relief outlined in this Stipulation;

21               d.     explain the impact of the proposed settlement on any existing litigation,

22    arbitration or other proceeding; and

23               e.     state that any relief to Settlement Class Members is contingent on the

24    Court's final approval of the proposed settlement.

25           2.     Notice of Exclusion, Objection and Other Rights.  The Class Notice shall

26    inform Settlement Class Members:

27

28

16

1          a.     that they may exclude themselves from the Class by submitting a

2   written exclusion request postmarked no later than eight (8) days before the date the Court sets for

3   the Settlement Hearing;

4          b.     that any Settlement Class Member who has not submitted a written

5   request for exclusion may, if he or she desires, object to the proposed settlement by filing and serving

6   a written statement of objections along with proof of membership in the Class no later than thirty

7   (30) days before the date the Court sets for the Settlement Hearing;

8          c.     that any Settlement Class Member who has filed and served written

9   objections to the proposed settlement may, if he or she so requests, enter an appearance at the

10  Settlement Hearing either personally or through counsel;

11         d.     that any Judgment entered in the Litigation, whether favorable or

12  unfavorable to the Class, shall include, and be binding on, all Settlement Class Members who have

13  not been excluded from the Class, even if they have objected to the proposed settlement and even if

14  they have any other claim, lawsuit or proceeding pending against Defendant;

15         e.     that any Settlement Class Member who has not submitted a timely

16  written request for exclusion may submit a completed and signed Claim Form seeking a cash

17  payment under this settlement that must be postmarked or electronically submitted no later than eight

18  (8) days before the date the Court sets for the Settlement Hearing; and

19         f.     of the terms of the release.

20      3.     No later than seven (7) days after the Court enters the Preliminary Approval

21  Order, the Class Notice shall be posted on the Settlement Website and, at their option, on the websites

22  of Class Counsel.  The Class Notice shall also be sent via electronic mail or regular mail to those

23  Class Members who so request.

24  **B.     Publication Notice Deadline**

25      No later than fifty (50) days after the Court enters the Preliminary Approval Order, the Class

26  Action Settlement Administrator will cause to be published in accordance with the media plan,

27  attached as Exhibit G, the Publication Notice, a copy of which is attached as Exhibit D.

28

### C.  Retention of Class Action Settlement Administrator

Subject to Court approval, The Garden City Group, Inc. shall be retained as the Class Action Settlement Administrator to help implement the terms of the proposed Stipulation.  All costs associated with the Class Action Settlement Administrator, including costs of providing notice to the Class Members and processing claims, shall be paid out of the Settlement Fund.  Any reasonable costs associated with the Class Action Settlement Administrator incurred and paid prior to the funding of the Settlement Fund will be paid by Kashi, but upon the occurrence of the Effective Date and the triggering of the payments required by Paragraph IV.A above, any such payments will reduce the amount Kashi is obligated to pay to establish the Settlement Fund.

1.  The Class Action Settlement Administrator(s) shall assist with various administrative tasks, including, without limitation, (a) mailing or arranging for the mailing or other distribution of the Class Notice, Claim Forms to Settlement Class Members, and the statement pursuant to § V.A.4, (b) arranging for publication of the Publication Notice, (c) handling returned mail not delivered to Settlement Class Members, (d) attempting to obtain updated address information for Settlement Class Members and for any Class Notice Packages returned without a forwarding address or an expired forwarding address, (e) making any additional mailings required under the terms of this Stipulation, (f) answering written inquiries from Settlement Class Members and/or forwarding such inquiries to Class Counsel or their designee, (g) receiving and maintaining on behalf of the Court and the Parties any Settlement Class Member correspondence regarding requests for exclusion to the settlement, (h) establishing the Settlement Website that posts notices, Claim Forms and other related documents, (i) receiving and processing claims and distributing payments to Settlement Class Members, and (j) otherwise assisting with administration of the Stipulation.

2.  The contract with the Class Action Settlement Administrator shall obligate the Class Action Settlement Administrator to abide by the following performance standards:

1          a.        The Class Action Settlement Administrator shall accurately and

2    neutrally describe, and shall train and instruct its employees and agents to accurately and objectively

3    describe, the provisions of this Stipulation in communications with Settlement Class Members;

4          b.        The Class Action Settlement Administrator shall provide prompt,

5    accurate and objective responses to inquiries from Class Counsel or their designee, Defendant and/or

6    Defendant's Counsel.

7    VI.    APPROVAL PROCEDURES AND RELATED PROVISIONS

8          A.    **Preliminary Approval and Settlement Hearing**

9          Promptly after execution of this Stipulation, the Parties shall submit this Stipulation to the

10   Court and shall jointly apply for entry of a Preliminary Approval Order preliminarily approving this

11   Stipulation, providing for the dissemination of the Class Notice, and scheduling a Settlement

12   Hearing.

13         B.    **Requests for Exclusion**

14         1.        Any potential Settlement Class Member who wishes to be excluded from the

15   Class must mail or deliver a written request for exclusion to the Clerk of the Court, care of the

16   address provided in the Class Notice, postmarked or delivered no later than eight (8) days before the

17   Settlement Hearing, or as the Court otherwise may direct.  The written request for exclusion must

18   request exclusion from the Class, must be signed by the potential Settlement Class Member and

19   include a statement indicating that the requester is a member of the Settlement Class.  A list reflecting

20   all requests for exclusion shall be filed with the Court by Plaintiffs at or before the Settlement

21   Hearing.

22         2.        Any potential Settlement Class Member who does not file a timely written

23   request for exclusion as provided in the preceding § VI.B.1 shall be bound by all subsequent

24   proceedings, orders and the Judgment in this Litigation relating to this Stipulation, even if he or she

25   has pending, or subsequently initiates, litigation, arbitration or any other proceeding against

26   Defendant relating to the Released Claims.

27

28

## VII.   RELEASES

As of the Effective Date, Plaintiffs and each Settlement Class Member who has not validly excluded himself or herself from the Settlement Class pursuant to §VI.B of this Stipulation, and each of their heirs, guardians, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, and assigns, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against the Released Persons.  In connection with the Released Claims, each Settlement Class Member shall be deemed as of the Effective Date to have waived any and all provisions, rights, and benefits conferred by § 1542 of the California Civil Code and any statute, rule, and legal doctrine similar, comparable, or equivalent to California Civil Code § 1542, which reads as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

## VIII.   CLASS COUNSEL'S ATTORNEYS' FEES, COSTS AND EXPENSES AND CLASS REPRESENTATIVE INCENTIVE AWARDS

A.   The parties agree that Class Counsel may apply for an award of attorneys' fees and reasonable, actual out-of-pocket expenses from the Settlement Fund not to exceed $1,250,000 ("Fee and Expense Award").  Subject to the terms and conditions of this Stipulation and any order of the Court, the Fee and Expense Award awarded by the Court to Class Counsel shall be paid out of the Settlement Fund within ten (10) days after the Effective Date.  Such payment will be in lieu of any statutory fees Plaintiffs and/or their attorneys might otherwise have been entitled to recover from Kashi.

B.   Class Counsel shall allocate and distribute the Court's Fee and Expense Award among Plaintiffs' Counsel.  Kashi shall have no liability or other responsibility for allocation of any such Fee and Expense Award awarded, and, in the event that any dispute arises relating to the allocation of

1    fees, Class Counsel agree to hold Kashi harmless from any and all such liabilities, costs, and

2    expenses of such dispute.

3         C.    Class Counsel may ask the Court for the award of an Incentive Award from the

4    Settlement Fund to each of the class representatives of $4,000.  Any Incentive Awards approved by

5    the Court shall be paid from the Settlement Fund within ten (10) days after the Effective Date.

6    IX.    CONDITIONS OF SETTLEMENT, EFFECT OF DISAPPROVAL, CANCELLATION
            OR TERMINATION
7

8         A.    The Effective Date of this Stipulation shall be the first date after which all of the

     following events and conditions have been met or have occurred:
9

10             1.    The Court has preliminarily approved this Stipulation and entered the

11    Preliminary Approval Order;

12             2.    The Court has entered the Final Judgment; and

13             3.    Unless the Parties otherwise agree in writing to waive all or any portion of the

14    following provision, there has occurred:  (i) in the event there is a properly and timely filed objection

15    to entry of the Final Judgment, the expiration (without the filing or noticing of an appeal) of the time

16    to appeal from the Final Judgment; (ii) the final dismissal of all appeals from the Final Judgment;

17    (iii) affirmance on appeal of the Final Judgment in substantial form; (iv) if a ruling or decision is

18    entered by an appellate court with respect to affirmance of the Final Judgment, the time to petition

19    for rehearing or re-argument, petitions for rehearing en banc and petitions for certiorari or any other

20    form of review with respect to such ruling or decision has expired; or (v) if a petition for rehearing or

21    re-argument, petitions for rehearing en banc and petitions for certiorari or any other form of review

22    with respect to the Final Judgment is filed, the petition has been denied or dismissed or, if granted,

23    has resulted in affirmance of the Final Judgment in substantial form.

24        B.    If all of the conditions specified in § IX.A of this Stipulation are not met, then this

25    Stipulation shall be canceled and terminated unless Class Counsel and Defendant mutually agree in

26    writing to proceed with this Stipulation.

27

28

1      C.     In the event that this Stipulation is not approved by the Court or the settlement set

2  forth in this Stipulation is terminated or fails to become effective in accordance with its terms, the

3  Parties shall be restored to their respective pre-settlement positions in the Litigation, including with

4  regard to any agreements concerning tolling and similar agreements, and this entire Stipulation shall

5  become null and void.

6      D.     In the event that this Stipulation is not approved by the Court or the settlement set

7  forth in this Stipulation is terminated or fails to become effective in accordance with its terms, any

8  reasonable costs associated with the Class Action Settlement Administrator incurred prior to that time

9  will be paid by Kashi.

10  X.     MISCELLANEOUS PROVISIONS

11      A.     The Parties hereto and their undersigned counsel agree to undertake their best efforts

12  and mutually cooperate to promptly effectuate this Stipulation and the terms of the settlement set

13  forth herein, including taking all steps and efforts contemplated by this Stipulation and any other

14  steps and efforts which may become necessary by order of the Court or otherwise.

15      B.     The undersigned counsel represent that they are fully authorized to execute and enter

16  into the terms and conditions of this Stipulation on behalf of their respective clients.

17      C.     This Stipulation contains the entire agreement among the Parties hereto and

18  supersedes any prior agreements or understandings between them.  Except for § I, all terms of this

19  Stipulation are contractual and not mere recitals and shall be construed as if drafted by all Parties.

20  The presumption found in California Civil Code section 1654 (and equivalent, comparable or

21  analogous provisions of the laws of the United States of America or any state or territory thereof, or

22  of the common law or civil law) that uncertainties in a contract are interpreted against the party

23  causing an uncertainty to exist hereby is waived by all Parties.

24      D.     The terms of this Stipulation are and shall be binding upon each of the Parties, their

25  agents, attorneys, employees, successors and assigns, and upon all other Persons claiming any

26  interest in the subject matter through any of the Parties, including any Settlement Class Member.

27

28

1    E.    Whenever this Stipulation requires or contemplates that one Party shall or may give

2  notice to the other, notice shall be provided by facsimile, email and/or next day (excluding Sunday)

3  express delivery service as follows:

4        1.    If to Plaintiffs, then to:

5          Joseph N. Kravec, Jr.              Nadeem Faruqi
            Wyatt A. Lison                     Antonio Vozzolo
6          Feinstein Doyle Payne &            Andrea Clisura
            Kravec, LLC                        Faruqi & Faruqi, LLP
7          429 Forbes Avenue                  369 Lexington Avenue
            Allegheny Building, 17th Floor     10th Floor
8          Pittsburgh, PA  15219              New York, NY  10017
                                              Telephone:  (212) 983-9330
9          Telephone:  (412) 281-8400

10       2.    If to Defendant, then to:

11         Dean N. Panos
            dpanos@jenner.com
12         Jenner & Block LLP
            353 North Clark Street
13         Chicago, IL  60654-3456
            Telephone:  (312) 923-2765
14         Facsimile:  (312) 840-7765

15    F.    The time periods and/or dates described in this Settlement Agreement with respect to

16  the giving of notices and hearings are subject to approval and change by the Court or by the written

17  agreement of Plaintiffs' Counsel and Defendant's Counsel, without notice to Settlement Class

18  Members.  The Parties reserve the right, by agreement and subject to the Court's approval, to grant

19  any reasonable extension of time that might be needed to carry out any of the provisions of this

20  Settlement Agreement.

21    G.    All time periods set forth herein shall be computed in business days if seven days or

22  less and calendar days if eight days or more unless otherwise expressly provided.  In computing any

23  period of time prescribed or allowed by this Stipulation or by order of the Court, the day of the act,

24  event or default from which the designated period of time begins to run shall not be included.  The

25  last day of the period so computed shall be included, unless it is a Saturday, a Sunday or a legal

26  holiday, or, when the act to be done is the filing of a paper in Court, a day in which weather or other

27

28

1   conditions have made the Office of the Clerk or the Court inaccessible, in which event the period

2   shall run until the end of the next day as not one of the aforementioned days.  As used in this

3   subsection, "legal holiday" includes New Year's Day, Martin Luther King, Jr.'s Birthday,

4   Washington's Birthday, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans'

5   Day, Thanksgiving Day, Christmas Day and any other day appointed as a holiday by the President or

6   the Congress of the United States.

7        H.     The Parties, their successors and assigns, and their attorneys undertake to implement

8   the terms of this Stipulation in good faith and to use good faith in resolving any disputes that may

9   arise in the implementation of the terms of this Stipulation.

10        I.     This Stipulation may be amended or modified only by a written instrument signed by

11   Class Counsel and any of Defendant's Counsel.  Amendments and modifications may be made

12   without additional notice to the Settlement Class Members unless such notice is required by the

13   Court.

14        J.     The exhibits to this Stipulation are an integral part of the Settlement and are hereby

15   incorporated and made a part of this Stipulation.

16        K.     Neither this Stipulation nor the settlement, nor any act performed or document

17   executed pursuant to or in furtherance of this Stipulation or the settlement:  (i) is or may be deemed

18   to be or may be used as an admission of, or evidence of, the validity of any Released Claim, or of any

19   wrongdoing or liability of Defendant, or of the propriety of Class Counsel maintaining the Litigation

20   as a class action; or (ii) is or may be deemed to be or may be used as an admission of, or evidence of,

21   any fault or omission of Defendant in any civil, criminal, or administrative proceeding in any court,

22   administrative agency, or other tribunal, except that Defendant may file this Stipulation or the

23   Judgment in any action that may be brought against any Released Person in order to support a

24   defense or counterclaim based on principles of *res judicata,* collateral estoppel, release, good faith

25   settlement, judgment bar, or reduction or any other theory of claim preclusion or issue preclusion or

26   similar defense or counterclaim.

27

28

STIPULATION OF SETTLEMENT, Case No. 11-CV-1967-H (BGS)

1    L.    The Court shall retain jurisdiction with respect to the implementation and enforcement

2    of the terms of this Stipulation, and all Parties hereto submit to the jurisdiction of the Court for

3    purposes of implementing and enforcing the settlement embodied in this Stipulation.

4    M.    This Stipulation shall be deemed to have been executed upon the last date of execution

5    by all of the undersigned.

6    N.    This Stipulation may be executed in counterparts, each of which shall constitute an

7    original.

8    IN WITNESS THEREOF, the Parties hereto have caused this Stipulation to be executed by

9    their duly authorized representatives.

10

11   **FOR PLAINTIFFS**

12   Dated: May 2, 2014                              FEINSTEIN DOYLE PAYNE & KRAVEC, LLC

13                                                   By:    /s/ Joseph N. Kravec, Jr.

14                                                          Joseph N. Kravec, Jr.
                                                           Wyatt A. Lison
15                                                         Feinstein Doyle Payne & Kravec, LLC
                                                           429 Forbes Avenue
16                                                         Allegheny Building, 17th Floor
                                                           Pittsburgh, PA 15219
17                                                         Telephone: (412) 281-8400

18

19

20

21

22

23

24

25

26

27

28

1    Dated:  May 2, 2014                    FARUQI & FARUQI, LLP

2                                           By:    /s/ Antonio Vozzolo

3                                               Nadeem Faruqi
                                                Antonio Vozzolo
4                                               Andrea Clisura
                                                Faruqi & Faruqi, LLP
5                                               369 Lexington Avenue, 10th Floor
                                                New York, NY  10017
6                                               Telephone:  (212) 983-9330

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STIPULATION OF SETTLEMENT, Case No. 11-CV-1967-H (BGS)

**FOR DEFENDANT**

Dated: May 2, 2014                                    JENNER & BLOCK LLP

                                      By:      /s/ Dean N. Panos
                                               DEAN N. PANOS

                                               353 North Clark Street
                                               Chicago, IL  60654-3456
                                               Telephone:  (312) 923-2765
                                               Facsimile:  (312) 840-7765
                                               dpanos@jenner.com

                                               Kenneth K. Lee (Cal. Bar No. 264296)
                                               Kate T. Spelman (Cal. Bar No. 269109)
                                               JENNER & BLOCK LLP
                                               633 West 5th Street, Suite 3600
                                               Los Angeles, CA 90071
                                               Telephone:  (213) 239-5100
                                               Facsimile:  (213) 239-5199
                                               Email:  klee@jenner.com
                                                        kspelman@jenner.com

STIPULATION OF SETTLEMENT, Case No. 11-CV-1967-H (BGS)

# Frequently Asked Questions

← Back to Home

1. What Is This Website About?

2. What Is A Class Action Lawsuit?

3. What Are These Lawsuits About?

4. How Do I Know if I Am In The Settlement Class?

5. What Do The Settlements Provide?

6. When Will I Get My Payment?

7. How Do I Get Benefits / Submit A Claim Form

8. What Am I Giving Up if I Stay in The Class?

9. What Happens If I Do Nothing At All?

10. How Do I Make A Claim?

11. Who Represents Me?

12. Will I Have To Pay The Lawyers?

13. How Do I Get Out Of -- Or Exclude Myself From -- The Settlement?

14. If I Did Not Exclude Myself, Can I Sue Kashi Company and Bear Naked, Inc. For the Same Thing Later?

15. If I Excluded Myself, Can I Get Anything From This Settlement?

16. How Do I Object to The Settlement?

17. When is the Hearing to Decide Whether to Approve the Settlement?

18. Where Do I Get More Information?

## Important Documents

- Frequently Asked Questions
- 58 Second Amended Complaint
- Stipulation of Settlement
- Proposed Order Approving Class Action Settlement
- Unopposed Motion for Preliminary Approval of Class Action Settlement
- Exhibit A -- Claim Form
- Exhibit B -- Claim Protocol
- Exhibit C -- Class Notice
- Exhibit D -- Legal Notice
- Exhibit E -- Final Order
- Exhibit F -- Preliminary Approval Order
- Exhibit H -- Product List
- Endorsed Order
- Order Granting Preliminary

- Help: If you're having issues viewing the pdf files, please click here to download Adobe Acrobat Reader.

## Important Dates

- **December 28, 2015**
  Deadline for Class Members to Opt-Out or Object

- **January 13, 2016**
  Responses to Objections Due



EXHIBIT

2

### 1. What Is This Website About?

This website explains the Settlements of two class action lawsuits. This website is not an expression of any opinion by the Court about the merits of any of the claims or defenses made by any of the Parties in this case. This website summarizes the lawsuits, the Settlements, your legal rights, what benefits are available, and who is eligible for them.

(back to top)

### 2. What Is a Class Action Lawsuit?

A class action is a lawsuit in which one or more individuals sue an individual(s), company or other entity on behalf of all other people who have similar claims. Collectively, these people are referred to as a "Class" or "Class Members." In a class action, the court resolves certain legal issues, legal claims and defenses for all class members in one lawsuit, except for those who ask to be excluded from the class.

(back to top)

### 3. What Are These Lawsuits About?

A proposed settlement has been reached in a class action lawsuit which claimed that the marketing of certain Kashi products as "All Natural" or "100% Natural" or "Nothing Artificial" was not true. Kashi stands by its marketing and denies that it did any thing wrong. If you are a member of the Class in this lawsuit, you may make a claim by mailing or electronically submitting a Claim Form.

A federal court authorized this notice. Before any money is paid, the court will have a hearing to decide whether to approve the settlements. On December 14, 2015, Class Counsel will submit their motion for final approval and request for attorneys' fees and/or expenses, which will be available on this web site or by calling 877-342-0808.

(back to top)

### 4. How Do I Know If I Am In The Settlement Class?

You may be a Kashi All Natural Food Products Class Member if you are not a California resident and you purchased between May 3, 2008 through September 4th, 2015 one of the Kashi

- **January 19, 2016**
  Deadline to Submit Claims
- **January 27, 2016**
  Settlement Hearing

## File A Claim

- File Online Claim.
- Download Claim Form (PDF)

Products listed in Exhibit H to the Kashi Stipulation of Settlement for personal or household use. Excluded from the class are employees, officers and directors of Kashi and The Kellogg Company; persons that purchased the Products for the purpose of re-sale; retailers or re-sellers of the Products; governmental entities; persons who properly exclude themselves from the Class; the Court, the Court's immediate family, and Court staff; and California residents.

(back to top)

## 5. What Do The Settlements Provide?

Kashi will pay $3.99 million to be used to pay eligible claims of Kashi Class Members for the Kashi Products they purchased, pay notice and administrative costs, attorneys' fees and expenses, and Class Representatives' Service Awards. Kashi will also make certain changes to its current labeling and marketing of certain products.

(back to top)

## 6. When Will I Get My Payment?

The Court will hold a hearing on January 27, 2016 to decide whether to approve the Settlement. Settlement payments will be paid if and when the Court grants approval to the Settlement and after any appeals are resolved.

(back to top)

## 7. How Do I Get Benefits? Submit A Claim Form.

The only way for Class Members to participate in the Settlement is to complete and submit a Claim Form by January 19, 2016. If you do not submit a valid Claim Form by the deadline, you are not eligible to receive any cash payments from the Settlement.

(back to top)

## 8. What Am I Giving Up If I Stay In The Class?

If you stayed in the Kashi Class, you cannot sue or be part of any other lawsuit against Kashi Company or related entities or persons for any of the claims asserted in the Consolidated Amended Complaint or the Original Complaints filed in the Kashi lawsuit by or on behalf of California residents arising out of or relating to the packaging, marketing, distribution or sale of

the Kashi Products that are identified in section II, paragraph
A.23 of the Kashi Stipulation of Settlement (the "Kashi
Products"), purchased between May 3, 2008 and September 4,
2015. In addition, if you stayed in the Kashi Class, all of the
Court's orders apply to you and legally bind you.

(back to top)

## 9. What Happens If I Do Nothing At All?

If you did nothing, you will not get any cash from these
Settlements. But, unless you excluded yourself, you will not be
able to start a lawsuit or be part of any other lawsuit against
Kashi Company for any of the Released Claims described
above.

(back to top)

## 10. How Do I Make A Claim?

File a claim here: http://kyeng.dimstage.com/ClaimForm.dtm

(back to top)

## 11. Who Represents Me?

Class Counsel are the lawyers for the Class. The Class
Representatives and Class Counsel will act as your
representatives for this Settlement if you do not exclude yourself
from the Class.

The Court has appointed to represent the Kashi Class and
Class Members:

Plaintiffs' Counsel:
Mark A. Milstein
Gillian L. Wade
Sara D. Avila
MILSTEIN
ADELMAN LLP
2800 Donald Douglas
Loop North
Santa Monica, CA
90405

Defendant's Counsel:
Dean Panos
Jenner & Block LLP



353 North Clark Street
Chicago, IL 60654

The Court has appointed Chanee Thurston as Class
Representative.

(back to top)

## 12. Will I Have To Pay The Lawyers?

No. You will not be responsible for any costs or attorneys' fees
incurred in these lawsuits. Attorneys' fees and expenses are
paid out of the respective Settlement Funds.

(back to top)

## 13. How Do I Get Out Of -- Or Exclude Myself From -- The Settlement?

In order to be excluded from the Settlements, Class Members
need to send a letter to the Claims Administrator postmarked
prior to December 28, 2015. Your letter needs to specify
whether you were requesting exclusion from the Kashi
Settlement Class. You need to include your full name, address,
and telephone number. If you do not include the required
information or fail to submit your request for exclusion on time,
you will remain a Class Member and be bound by the
Settlement and Final Judgment and Order. If you exclud
yourself from the Class, you give up your right to receive any
money from the Settlements, and you will not be bound by the
Settlements or Final Judgments and Orders, and you will not be
barred from pursuing any individual claim you may otherwise
have relating to the Released Claims.

(back to top)

## 14. If I Did Not Exclude Myself, Can I Sue Kashi Company and Bear Naked, Inc. For the Same Thing Later?

No. Unless you excluded yourself, you gave up any right to sue
Kashi Company for the claims that these Settlements resolve,
including any claims relating to Kashi Company for any of the
Released Claims.

(back to top)

## 14. If I Excluded Myself, Can I Get Anything From This Settlement?

No. If you excluded yourself, you are not eligible to receive any cash for Kashi.

(back to top)

## 16. How Do I Object To The Settlement?

In order to object to the Settlements you need to file an objection with the Court prior to December 28, 2015.

(back to top)

## 17. When is the Hearing to Decide Whether to Approve the Settlement?

The Court will hold a Settlement Hearing for the Kashi All Natural / Nothing Artificial Products Class Settlement on January 27, 2016.

(back to top)

## 18. Where Do I Get More Information?

This website summarizes the Settlement. More details are in a Settlement Agreement.

PLEASE DO NOT CALL OR WRITE KASHI OR BEAR NAKED OR THE COURT FOR ADDITIONAL INFORMATION OR ADVICE.

(back to top)

This site is not operated by the Court, Class Counsel, Defendant's Counsel, or Defendant. This class action settlement is supervised by the Court and is administered by a consulting firm that handles all aspects of settlement administration.

Copyright © 2015 Digital Settlement Group - All Rights Reserved. - Privacy Policy | Terms

7012 3460 0001 5543 1141

CERTIFIED MAIL™

RETURN RECEIPT
REQUESTED

Abbey, Abbey & Thomas, PLLC
121 West Grant Street, Suite 3
Caro, Michigan 48723

To:

CLERK OF COURTS
UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF FLORIDA
U.S. COURTHOUSE
400 NORTH MIAMI AVENUE
MIAMI, FL 33128



1000

33128





U.S. POSTAGE
PAID
CARO, MI
48723
SEP 23 15
AMOUNT

$9.21

R2305K138234-10



USMS INSPECTED
BY