**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No.: 12-21678-CIV-LENARD/GOODMAN

LAURA EGGNATZ and KATRINA GARCIA,
individually, and on behalf of all others similarly situated,

       *Plaintiffs*,

   vs.

KASHI COMPANY, a California
Corporation,

       *Defendants.*
_____/


**PLAINTIFFS' RESPONSE TO**
**OBJECTIONS TO CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

I. Introduction ...................................................................................................1

II. The Objectors Have Improper Motives ........................................................2

 A. Thomas Could Not Have Relied on the Document Upon Which His Objection is Based and the Objection is Curiously Connected to Counsel in *Astiana* ..................2

 B. Mr. Sweeney is a Serial Objector with a History of Frivolous Objections ................4

III. The Thomas Objection Should be Overruled ...............................................5

 A. The Release is Not Overbroad and the Settlement Distribution is Fair ....................5

  1. The Release Does Not Include Bear Naked Products ........................................5

  2. The Release is Fair, Reasonable and Adequate ................................................6

  3. The Distribution of Funds is Proper ................................................................7

 B. The Settlement is Sufficiently Funded ................................................................8

  1. The Per-Person Recovery Under the Settlement Exceeds the Amount Available in *Astiana* and Sufficient Funds Are Available to Pay Claims ........8

  2. Class Counsel's Requested Fee Award is Fair and Reasonable .......................9

  3. The Settlement's Non-Monetary Relief Has Value ........................................11

 C. The Court-Approved Notice is Adequate and Satisfies Due Process ......................12

  1. Publication Notice is the "Best Practicable" ..................................................12

  2. The Content of Notice is Adequate and Satisfies Due Process ......................13

IV. The Sweeney Objection Should be Overruled .............................................14

 A. Class Notice and the Claims Administration Process, Timeframes and Deadlines are Fair, Reasonable and Adequate (Objection Nos. 1, 2, 7) ....................................15

 B. Class Counsel's Request for Attorneys' Fees Should be Approved (Objection Nos. 3, 4, 5, 6) ...........................................................................................................16

i

    C.     The Agreement and Notice Clearly Explain How the Settlement Funds Will be Allocated and There Will Not be Any "Unclaimed Funds" (Objection No. 8)........17

    D.     Mr. Sweeney is Not Entitled to So-Called "Incentive Fees" ....................................18

    E.     The Catch-All Objection Should be Overruled .........................................................18

V.    Update Regarding Non-Objecting Class Member, Jay Raab..............................................19

VI.    Conclusion .........................................................................................................................19

# TABLE OF AUTHORITIES

**<u>Case</u>**                                                                  **<u>Page(s)</u>**

### <u>FEDERAL CASES</u>

*Alexander Hun v. Kashi Company* (E.D.N.Y.)
Case No. 15-1391 ............................................................................3

*Arthur v. Sallie Mae, Inc.* (W.D. Wash. Sept. 17, 2012)
2012 WL 4075238 ..........................................................................4

*Bonner v. City of Prichard* (11th Cir. 1981)
661 F.2d 1206 ................................................................................7

*Camden I Condominium Ass'n, Inc. v. Dunkle* (11th Cir. 1991)
946 F.2d 768 ................................................................................17

*Carlough v. Amchem Prods., Inc.* (E.D. Pa. 1993)
158 F.R.D. 314..............................................................................12

*Diaz v. HSBC USA, N.A.* (S.D. Fla. Oct. 29, 2014)
2014 WL 5488161 ..........................................................................7

*Hanlon v. Chrysler Corp.* (9th Cir. 1998)
150 F. 3d 1011 ........................................................................10, 15

*In re Checking Account Overdraft Litig.* (S.D. Fla. 2011)
830 F. Supp. 2d 1330 ..................................................................2, 15

*In re Corrugated Container Antitrust Litig.* (5th Cir. April 3, 1981)
643 F.2d 195 ..................................................................................7

*In re Managed Care* (S.D. Fla. Oct. 24, 2003)
2003 WL 22850070 ........................................................................7

*Larsen v. Trader Joe's Co.* (N.D. Cal. Jul. 11, 2014)
2014 WL 3404531 ..........................................................................4

*Lee v. Ocwen Loan Servicing, LLC* (S.D. Fla. Sept. 14, 2015)
2015 WL 5449813 ......................................................................7, 16

*Lipuma v. Am. Expres Co.* (S.D. Fla. Dec. 20, 2005)
406 F. Supp. 2d 1298 ......................................................................7

iii

*Malchman v. Davis* (2d Cir. 1985)
    761 F.2d 893 ..............................................................................................................10

*Murray v. GMAC Mortgage Corp.* (7th Cir. 2006)
    434 F.3d 948 ..............................................................................................................10

*Nelson v. Mead Johnson & Johnson Co.* (11th Cir. 2012)
    484 F. App'x 429 ........................................................................................................15

*Perez v. Asurion Corp.* (S.D. Fla. 2007)
    501 F.Supp.2d 1360 ...................................................................................................14

*Poertner v. Gillette Co.* (11th Cir. 2015)
    2015 WL 4310896 ...............................................................................................13, 17

*Resnick v. American Dental Assn.* (D.C. Ill. 1982)
    95 F.R.D. 372 ...............................................................................................................4

*Roberts v. Electrolux Home Prod.* (C.D. Cal. 2014)
    Case No. 8:12-cv-01644 ...............................................................................................4

*Saccoccio v. JPMorgan Chase Bank, N.A.* (S.D. Fla. Feb. 28, 2014)
    297 F.R.D. 683.........................................................................................................6, 13

*Smith v. Wm. Wrigley Jr. Co.* (S.D. Fla. June 15, 2010)
    2010 WL 2401149 ......................................................................................................13

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.* (2d Cir. 2005)
    396 F3d 96 ................................................................................................................6, 7


## FEDERAL STATUTES

Fed. R. Civ. P. Rule 23 ...............................................................................................13


## OTHER SOURCES

*Managing Class Action Litigation: A Pocket Guide for Judges*, Rothstein & Willging,
(4th ed. 2005)
    3B5...............................................................................................................................4

*Manual for Complex Litigation* (Fourth) (2004)
    § 21.643.......................................................................................................................2

Plaintiffs Katrina Garcia and Laura Eggnatz (collectively, "Plaintiffs") submit the following response in opposition to the objections to the Settlement[1] filed by S. Perry Thomas, Jr. (ECF 189) and Patrick Sweeney (ECF 191), both of whom are attorneys filing *pro se*.

## I.    Introduction

This Settlement has been met with near universal approval by the Class. Zero Class Members have excluded themselves from the Settlement. Nearly 14,000 individuals have made claims to date, totaling an estimated $1,119,489. Plaintiffs have received objections from only two possible Settlement Class Members, S. Perry Thomas, Jr. and Patrick Sweeney, but these objectors are not well-intentioned members of the Class.

Mr. Thomas, an attorney appearing *pro se*, intentionally distorts the terms of the Settlement by relying on a placeholder draft of the Frequently Asked Questions ("FAQ") on the Settlement Website, which was replaced with the correct and final version before Notice to the Class had even commenced. Curiously, the version of the FAQ Mr. Thomas attached as Exhibit 2 of his objection—and which forms the basis for the vast majority of his objection—could only have been viewed and printed by a computer directly linked to Feinstein Doyle, Payne & Kravec, LLC ("FDPK") in Pittsburg.[2] That same computer later returned to the Settlement Website on three separate occasions and viewed the *corrected* FAQ. The Agreement and Class Notice were available on the Settlement Website at all times, indicating Mr. Thomas intentionally misunderstands the terms of the Settlement for the sole purpose of lodging a (baseless) objection.

Similarly, Mr. Sweeney, also an attorney appearing *pro se*, has a history of filing meritless

---

[1] The Stipulation of Settlement ("Agreement") was filed on June 5, 2015 (ECF 179-1). All capitalized terms herein have the same meanings as ascribed in the Agreement.
[2] FDPK was co-class counsel in *Astiana v. Kashi Company*, the settled California case upon which Mr. Thomas heavily relies for his objection.

1

objections (as both counsel and the client) and has been found by other district courts to be a "serial objector," and asserts another baseless, boilerplate objection here, without any analysis or authority.

Even if the Objections were brought for proper purposes (they are not), they are substantively without merit and based on intentional misunderstandings of the Settlement's terms and should be overruled.

## II.     The Objectors Have Improper Motives

"Objections can be motivated by self-interest rather than a desire to win significant improvements in the class settlement." *Manual for Complex Litigation* (Fourth) § 21.643 (2004). Courts must "distinguish between the meritorious objections and those advanced for improper purposes." *Id. See also In re Checking Account Overdraft Litig*., 830 F. Supp. 2d 1330, 1361 n. 30 (S.D. Fla. 2011) (approving class action settlement, overruling objections and collecting authority disapproving of objections brought with ulterior motive).

### A.     Thomas Could Not Have Relied on the Document Upon Which His Objection is Based and the Objection is Curiously Connected to Counsel in *Astiana.*

Thomas' objection is based largely on his intentionally incorrect assumption that the Settlement releases claims for Bear Naked Products. Rather than relying on the language of the Agreement and Class Notice (both available on the Settlement Website), he instead points to the Settlement Website's FAQ, attaching a copy of a printout of the FAQ with a date and time stamp of "9/15/2015 1:48 PM" in the bottom right corner of each page. ECF 189 at 47-52.[3] Thomas carefully avoids declaring he viewed the FAQs himself (because there is no evidence he did so),

---

[3] Citations to page numbers for docketed items refer to the page number assigned by the ECF system.

stating it was "downloaded September 15, 2015." *Id*. at 8. Only one computer viewed the FAQ[4] on September 15, 2015 during the timeframe noted by Thomas (other than Class Counsel, Kashi's counsel and DSG). Declaration of Mark Schey, filed concurrently herewith ("Schey Decl.") ¶¶ 4-14. A review of the Settlement Website's server logs reveals that the only IP address that viewed and printed this version of the FAQ was directly associated with FDPK, one of two law firms representing plaintiffs in *Astiana v. Kashi Company*, 11-C- 1967-H (BGS), the California lawsuit settling claims similar to those Plaintiffs present here and upon which the Thomas Objection is based. *Id*.

The true motives behind the Thomas Objection are easily gleaned from the docket in a "competing" in New York, *Alexander Hun v. Kashi Company*, Case No. 15-1391 (E.D.N.Y.) (filed March 17, 2015). There, following a stay pending the outcome of Final Approval of this Settlement, the *Hun* plaintiffs voluntarily dismissed their action without prejudice and Kashi agreed to toll their statute of limitations until either this Court denies approval of the Settlement or until a final disposition of all regarding this Settlement.[5] FDPK's co-counsel in *Astiana* is counsel for the plaintiffs in *Hun*. Thus, Thomas' true purpose for filing an objection may be leverage for the named plaintiff and counsel in *Hun* and *Astiana*.

Thomas cannot argue he retained FDPK as counsel, as his Objection states: "Identity of counsel representing me: N/A." ECF 189 at 1. To the extent Thomas was contacted by FDPK to solicit an objection, such contact is prohibited, as courts have held such contact triggers the

---

[4] The corrected FAQ was uploaded to the Settlement Website before Notice commenced. *See* Section II(A) below.

[5] *See Id.* at ECF 11 (September 1, 2015 Stipulation of Dismissal Without Prejudice), attached as **Exhibit 1** to the Declaration of Sara D. Avila in Support of Plaintiffs' Response to Objections to Class Action Settlement ("Avila Decl."), filed concurrently herewith.

no-contact rules. *See Resnick v. American Dental Assn.* 95 F.R.D. 372, 378-379 (D.C. Ill. 1982) (class certification barred attorney from communicating with absent class members under applicable Rules of Professional Conduct because "without question" absent members are represented by class counsel). Thomas' objection was not brought for the good of the Class.

### B.    Mr. Sweeney is a Serial Objector with a History of Frivolous Objections.

The boilerplate and inaccurate Sweeney Objection was filed to extract an "incentive fee" in this case. ECF 191 at 3. The Federal Judicial Center advises courts to "[w]atch out, though, for canned objections filed by professional objectors who seek out class actions to simply extract a fee by lodging generic, unhelpful protests." *Managing Class Action Litigation: A Pocket Guide for Judges*, Rothstein & Willging, 3B5 (4th ed. 2005) (interior quotations and citation omitted).

Although Mr. Sweeney is a lawyer (Avila Decl. at ¶¶ 4-5, **Exs. 2 and 3**), his Objection is devoid of any legal authority or analysis.[6]  At least one court has found Sweeney's objections were "filed by counsel who routinely files objections to class settlements" and characterized him as a "serial objector." *Roberts v. Electrolux Home Prod*., No. 8:12-cv-01644, Dkt. 193 at 21-22, (C.D. Cal. 2014) (Avila **Ex. 4**); *see also Larsen v. Trader Joe's Co*., No. 11-cv-05188-WHO, 2014 WL 3404531, *7 (N.D. Cal. Jul. 11, 2014) (overruling objections and recognizing that "attorney Patrick Sweeney also has a long history of representing objectors in class action proceedings"); *Arthur v. Sallie Mae, Inc*., No. 10-cv-00198-JLR, 2012 WL 4075238, at *2 (W.D. Wash. Sept. 17, 2012) (overruling Sweeney's objection as "meritless").

//

//

---

[6] The Sweeney Objection is deficient. Objections must include "all grounds for objection, accompanied by any legal support known to objecting Class Member." ECF 186-2 at 23; ECF 183.

4

**III.    The Thomas Objection Should be Overruled.**

    **A.    The Release is Not Overbroad and the Settlement Distribution is Fair.**

        **1.    The Release Does Not Include Bear Naked Products.**

Thomas contends the Release includes Bear Naked Products. He is wrong. The FAQ upon which Thomas bases his objection was a placeholder draft that appeared on the Settlement Website months before Notice was given to the Class. Schey Decl. at ¶ 4. The incorrect FAQ was taken down on September 17, 2015 and replaced well before Class Notice commenced October 15, 2015. *Id*. at ¶ 4. As explained in Section II(A), *supra*, only four non-party IP addresses viewed the incorrect FAQs—one of which was the IP address owned by Thomas' cohorts at FDPK. *Id.* at ¶ 6.

The corrected FAQ (attached as Ex. D to the Schey Decl.)[7] makes no mention of Bear Naked products, because the Settlement does not include Bear Naked products. Avila Decl. at ¶ 7. The Parties in no way concealed any part of the Release. *Id.* at ¶ 8. Class Notice and the Agreement were available on the Settlement Website while the incorrect FAQs were posted (as well as when the computer linked to FDPK viewed the **<u>correct</u>** FAQ page on October 13, 2015, November 2, 2015 and November 3, 2015). Schey Decl. at ¶ 5. What is truly "shameful" (*See* ECF 189 at 9) is that Thomas would attempt to mislead the Court and waste judicial resources arguing about a clearly erroneous statement on a (draft) FAQ that *he acknowledges* was later corrected and at all times was contrary to the terms of the actual Agreement and Class Notice.

Any concern Class Members viewed the incorrect FAQ is alleviated by the fact that only

---

[7] Thomas concedes the Claims Administrator "changed the FAQ to remove reference to Bear Naked" at footnote 5 of his Objection. Neither Thomas nor anyone from FDPK contacted Class Counsel to clarify whether Bear Naked products are included in the Release. Avila Dec. at ¶ 7. If any of the attorneys had bothered to review the Agreement, the terms of the Release make this point clear. Agreement §§ II(22)-(23), Ex. H.

four non-Party IP addresses viewed them, and no unidentified potential Class Member viewed the incorrect FAQ without returning to view the corrected FAQ. *Id*. at ¶ 18.

### 2.    The Release is Fair, Reasonable and Adequate

Thomas argues that the release is overbroad because it releases claims without compensation for unidentified Products, includes claims that were never at issue in the Litigation and fails to identify the "Released Parties." Thomas again misconstrues the Settlement. *First*, as set forth above, Class Members are not releasing claims for Bear Naked-branded products. *Second*, Thomas does not cite to any Products that *should have been* listed in the Product List attached as Exhibit H to the Agreement. To the extent Products are not enumerated but did in fact contain the challenged natural claims, Class Members may also receive compensation for such Products. Agreement §§ II(22), Ex. H. *Third,* even if Thomas' contentions regarding the included products were true, which they are not, "class action settlements have in the past released claims against non-parties where, as here, the claims against the non-party being released were based on the same underlying factual predicate as the claims asserted against the parties to the action being settled." *Saccoccio v. JP Morgan Chase Bank, N.A.,* 297 F.R.D. 683, 697 (S.D. Fla. Feb. 28, 2014) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F3d 96, 109 (2d Cir. 2005)). Here, the claims being released against Kashi, Kellogg and their subsidiaries only involve the labeling of Kashi-branded food products as "All Natural," "100% Natural" and "Nothing Artificial." Agreement § II(3)-(4).

Thomas also claims the Settlement improperly releases statutory damages that may be available in other states and claims that "could have been asserted." ECF 189 at 6, n. 3 and 8, fn 6. But he ignores well-established precedent that "a court may release not only those claims alleged

in the complaint and before the court, but also claims which could have been alleged by reason of or in connection with any matter or fact set forth or referred to in the complaint." *In re Corrugated Container Antitrust Litig.,* 643 F.2d 195, 221 (5th Cir. April 3, 1981).[8] The Fifth Circuit went on to say: "even when the court does not have power to adjudicate a claim, it may still approve release of that claim as a condition of settlement of an action before it." *Id. See also Lee v. Ocwen Loan Servicing, LLC,* No. 14-CV-60649-GOODMAN, 2015 WL 5449813, *12 (S.D. Fla. Sept. 14, 2015) (same and collecting cases); *Lipuma v. Am. Expres Co.,* 406 F. Supp. 2d 1298, 1317 (S.D. Fla. Dec. 20, 2005) (same) (citing *Wal-Mart* 396 F3d at 106).

Here, as set forth at length in Plaintiffs' Motion for Final Approval, Class Members are receiving more than the price premium calculated by Plaintiffs' damages expert. ECF 186 at 24. That is, Class Members submitting receipts will receive full compensation under the Settlement, a result available at trial only if the trier of fact determined the Kashi Products were valueless (which under the circumstances is unlikely). *Id.* Thomas, like all Eleventh Circuit objectors, "can opt out if [he has] concerns about releasing [his] claims." *Id.* (quoting *In re Managed Care*, No. 00-1334, 2003 WL 22850070, at *5 (S.D. Fla. Oct. 24, 2003); *Diaz v. HSBC USA, N.A.*, No. 13-21104, 2014 WL 5488161, at *3 (S.D. Fla. Oct. 29, 2014) (same). Notably, no Class Members, not even the plaintiffs in *Hun*, opted out of the Settlement. Schey Decl. at ¶ 23.

### 3.    The Distribution of Funds is Proper

Thomas' attacks on the allocation of the cash payment are baseless. He argues the Settlement is unfair because some Class Members may have purchased the Products during a time

---

[8] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

in which the Products did not bear the "All Natural" labeling, and that such individuals should not be compensated under the Settlement. Thomas' flawed reasoning is that the Settlement distribution is "inequitable" because it pays claims for purchases of Kashi products without the natural labeling. This is incorrect, as all of the Products utilized some iteration of the natural labeling during the Class Period. Avila Decl. at ¶ 10. If Thomas truly believes the distribution of funds is improper, he is free to exclude himself from the Settlement and file a separate action.

Finally, Thomas' suggestion that the Parties redesign the Claim Form, reissue Class Notice and ask people to resubmit their claims is absurd and would be a tremendous waste of resources. These documents, which were carefully crafted by the Parties and approved by the Court, are more than fair, reasonable and adequate, as demonstrated by the tremendous reaction by the Class.

### B.     The Settlement is Sufficiently Funded.

#### 1.     The Per-Person Recovery Under the Settlement Exceeds the Amount Available in *Astiana* and Sufficient Funds Are Available to Pay Claims.

Thomas argues that because the *Astiana* action settled for $5 million for one state, this case should have settled for $33 million. Any facial appeal of this argument fades when one considers the per-person recovery here exceeds the amount made available in *Astiana*. There, the Court approved reimbursement of $0.50 per package (maximum recovery of $25 per household without receipts) and $0.50 per package with receipts (no household limit). ECF 189 at 32. Here, claiming Settlement Class Members may make claims for $0.55 per package with a maximum recovery of $27.50 per household without receipts and a full reimbursement without limit with proof of purchase. Agreement at § IV(A)(1). In addition, the fund in *Astiana* proved to be excessive, as the Court noted the common fund there was not exhausted by claims (a mere 18,176), and estimated class members would receive approximately $4.30/unit. *See Astiana* Final Approval Order at 13,

8

n. 3. [9]

The Parties had the benefit of this data in determining an appropriate remedy for the Class here. ECF 186-1 at ¶ 51. This informed the decisions of Class Counsel in reaching the Settlement and has since been confirmed by the number of claims received to date. As of January 11, 2015, 113,980 individuals have made claims, totaling an estimated $1,119,489.33.[10] Schey Decl. at ¶¶ 26-27. With $2 million available to pay eligible claims, the fund's distribution is more than sufficient.

### 2.    Class Counsel's Requested Fee Award is Fair and Reasonable

Standard practice for serial objectors and objectors with improper motives is to attack Class Counsel's fee request, regardless of the amount requested amount, novelty of claim, litigation risks, or work performed. Thomas takes this well-worn path here, arguing the Settlement is the product of collusion. This outrageous accusation is false. Thomas does not point to any express evidence of collusion—because there was no collusion. This litigation was hotly contested throughout and required three separate days of mediation, months apart, before an agreement could even be reached. Avila Decl. at ¶ 13. There was also no collusion or self-dealing, and any concerns stemming from the presence of a 'clear-sailing' provision in the Agreement are completely dispelled by an examination of the litigation history. *Id. See also* ECF 186, 187.

As detailed in Plaintiffs' Motion for Attorneys' Fees and Costs and the accompanying documentation, Class Counsel expended significant time litigating this Action, including significant motion practice and discovery, and will have spent considerably more time by the time

---

[9] The *Astiana* Final Approval Order is attached as **Ex. 5** to the Avila Dec.

[10] As of December 14, 2015, 96,214 individuals had submitted claims totaling $955,750. ECF 186. Updated claims data will be provided to the Court following the close of the claim deadline.

Final Approval is obtained, the Settlement defended on appeal, and relief distributed. *See* 186, 187, ECF 187-1 at ¶ 67. Class Counsel's fee request is reasonable given the effort on a wholly contingent basis that Counsel expended in obtaining the significant relief for the Class. *See* ECF 187 at 24-26. Likewise, Class Counsel's request for reimbursement of $168,204 for costs necessarily incurred is also reasonable in light of the number of critical liability experts retained, the number of depositions, and the stage in the litigation at which the case settled. *See* ECF 187 at 27-28.[11]

Thomas also ignores recent Eleventh Circuit authority reaffirming the permissibility of so-called 'clear sailing' provisions, whereby defendants agree not to oppose or otherwise object to an application by Class Counsel for a fixed award of attorneys' fees and costs. *Poertner v. Gillette Co.,* --- Fed. Appx. ---, 2015 WL 4310896, at *6 (11th Cir. 2015) (overruling objector's argument that such a provision is a 'red flag' of unfairness" and affirming final approval wherein 55,346 class members made claims totaling $344,850 and the attorneys' fees and costs were $5.68 million); *Lee*, 2015 WL 5449813, at *12 (clear-sailing provision may "be included for purposes of finality and risk avoidance") (citing *Malchman v. Davis,* 761 F.2d 893, 905 n. 5 (2d Cir. 1985) (clear-sailing provisions may be "essential to completion of the settlement, because the defendants want to know their total maximum exposure and the plaintiffs do not want to be sandbagged")).

//

---

[11] The case law upon which Thomas relies to support his argument the fee request is 'disproportionate' actually favors Plaintiffs here. *See* ECF 189 at 14 (citing *Hanlon v. Chrysler Corp.,* 150 F. 3d 1011, 1021 (9th Cir. 1998) (finding counsel did not receive a disproportionate distribution of the settlement where they conducted intense factual investigations and engaged in discovery) and *Murray v. GMAC Mortgage Corp.,* 434 F.3d 948, 952 (7th Cir. 2006) (vacating settlement wherein a $950,000 fund would be used to pay a $3,000 incentive award, attorneys' fees and less than $1 per recipient for claims with a *minimum* $100/ person statutory penalty)).

### 3. The Settlement's Non-Monetary Relief Has Value.

Although Class Counsel has not placed a specific dollar value on the non-monetary relief, it adds considerable value to the Settlement. ECF 187 at 15-16. The Settlement's injunctive component prohibits Kashi and Kellogg from continuing to implement the practices challenged in the Second Amended Complaint, which reaped millions of dollars in revenue for Kashi during the Class Period. Avila Decl. at ¶ 14. Thomas contends this relief is "illusory" because Kashi "agreed to remove these same 'All Natural' statements by the end of 2014 for all of its products sold nationwide as a result of the *Astiana* agreement, and its products are no longer are labeled All Natural" (ECF 189 at 16-17). But this is misleading. The *Astiana* agreement does not mention removal of the "All Natural" claims from Products sold nationwide. ECF 189 at 34-35 (section IV(B) of the *Astiana* agreement). Additionally, the Products have a ten to twelve month shelf life (ECF 142), and thus Products with the natural labeling were likely still in the stream of commerce when the Parties settled.

Moreover, Thomas' challenge to the non-GMO Product Verification labels as valid nonmonetary relief secured by the Settlement is groundless. Plaintiffs' Motion for Preliminary Approval states: "Kashi also intends to manufacture, *or continue manufacturing*, certain Products as 'GMO free' and display on those products a 'Non-GMO Project Verified label designation" and, as such, "Kashi will provide Plaintiffs' Counsel with compliance information regarding Non-GMO Project Verified label designations on the Products on a bi-annual basis for three years." ECF 173 at 12 (emphasis added). Kashi will provide Class Counsel with, among other things, a list of Products that are being manufactured without GMO ingredients, copies of all licensing agreements for the Products between Kashi and the Non-GMO Project Verified, copies

of all documents provided for evaluation purposes to Kashi's third party administrator for the Non-GMO Verified Project, and Product label modifications that are introduced into the stream of commerce. *Id.* (citing Agreement at § IV(C)(2)). Thus, Class Counsel's future monitoring of the non-GMO Product Verification is valuable non-monetary relief.

### C.       The Court-Approved Notice is Adequate and Satisfies Due Process.

Thomas ignores this Court's review and approval of all forms of Notice and the Claim Form. ECF 183 at 4. The Court found "that the proposed methods for giving notice of the Settlement to Members of the Settlement Class, as set forth in this [Preliminary Approval] Order and the Stipulation of Settlement, meet the requirements of Federal Rule of Civil Procedure 23 and requirements of state and federal due process" as well as that it "is the best notice practicable under the circumstances, and shall constitute due and sufficient notice[.]" *Id.*

### 1.       Publication Notice is the "Best Practicable."

Thomas speculates the Parties might be able to identify some potential Class Members and should, therefore, have sent these individuals direct notice. But this would be unduly burdensome and needlessly increase claims administrative costs. *See Carlough v. Amchem Prods., Inc.,* 158 F.R.D. 314, 327 (E.D. Pa. 1993) ("In striking the balance between protecting the rights of absent class members and making Rule 23 workable, courts have held that it is not necessary to send individual notices to an over inclusive group of people simply because that group contains some additional class members.").

The Notice approved by this Court—consisting of print publication, digital publication and long form Notice available on the Settlement Website (which Mr. Thomas' colleagues appeared to have no trouble finding right away) and upon request—is exactly the type of notice that has been

approved and used over and over by Courts in this Circuit. *See Poertner,* 2015 WL 4310896, at *5 ("even if it was possible to identify *some* unnamed class members, that does not mean that the district court lacked discretion to approve the settlement as fair absent the identification of these class members"). *See also Smith v. Wm. Wrigley Jr. Co.,* No. 09-60646-CIV, 2010 WL 2401149, at *6 (S.D. Fla. June 15, 2010) (approving notice plan consisting of notice given "in two widely-read magazines" as well as several popular websites).

Here, the Court-approved notice program was a massive success on all accounts. As of January 12, 2016, the Settlement Website has received 193,972 unique visits. The extensive publication notice that reached over 69% of the relevant demographic, well within the standard set by the Federal Judicial Center. *See* 186-2 at ¶ 13.

### 2.    The Content of Notice is Adequate and Satisfies Due Process.

Thomas' frivolous contention that Notice should have "inform[ed] Class Members about other claims pending against Kashi, or that by not opting out of the Settlement they will be giving up any rights to pursue [claims based on the labeling of products] against Kashi and its parent and affiliated companies in the future" (ECF 189 at 12) should be overruled. The content of Class Notice also complies with Rule 23, which requires, among other things, a clear and concise statement "in plain, easily understood language" describing "the class claims, issues, or defenses" and "the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. Rule 23(c)(2)(B)(iii), (vii). Notice need only contain the information reasonably necessary for Class Members to decide "[whether] to remain a class member and be bound by the final judgment or opt out of the class action, though need not include every material fact or be overly detailed." *Saccoccio,* 297 F.R.D. at 697 (overruling objection) (quoting *Faught,* 668 F.3d at 1239).

Thomas presents no authority requiring class notice to list every case pending against a settling defendant. Such a requirement would be unwieldy, irrelevant and confusing. For example, Thomas states "Kashi and its parent company have been the targets of numerous lawsuits throughout the nation alleging violations of FDA regulations and state consumer laws based on the labeling of their products." *Id.* Including references to all such cases—even those that have nothing to do with whether labeling Kashi Products as "All Natural" or containing "Nothing Artificial" is false—is *not* required. The only other unresolved case challenging the marketing of Kashi products as "All Natural" or "Nothing Artificial" was *Hun*. Avila Decl. at 15. Thus, Thomas' suggestion the Notice should have directed Class Members in this Litigation to a dismissed New York case is nonsensical.

Moreover, as explained above, the Thomas Objection misconstrues the language of the Release to make it appear broader than it is. Settlement Class Members are not barred from suing other food companies or "similarly-labeled competitors," nor from suing Kellogg and Kashi on grounds other than the "All Natural," "100% Natural" and/or "Nothing Artificial" claims on Kashi Products. Agreement §§ II(22)-(23). The Notice describes the Release in plain language and also quotes it verbatim. ECF 186-2 at 20-21 (Question 8).

## IV.    The Sweeney Objection Should be Overruled.

Sweeney does not proffer a proper objection, but a generic desire to receive more money or a better result. *See* Section I(B), *supra; Perez v. Asurion Corp.*, 501 F.Supp.2d 1360, 1382 (S.D. Fla. 2007) (overruling perfunctory objections who "desired to 'have a better deal'"). In a list of eight objections containing no analysis or authority whatsoever, Sweeney summarily challenges various aspects of the Settlement. ECF 191. The Court should be skeptical of such a vacuous

objection. *See Nelson v. Mead Johnson & Johnson Co*., 484 F. App'x 429, 434-35 (11th Cir. 2012) (the "objections to the inadequacy of the settlement consideration and the allocation of the settlement proceeds were conclusory and failed to account for other pertinent considerations, including the plaintiffs' risk of losing at trial"); *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1021 (9th Cir. 1998) (affirming final approval of nationwide class action settlement where "objectors presented no evidence" to support their arguments); *In re Checking Account,* 830 F. Supp. 2d at n. 1351, 13 (rejecting objectors' "conclusory assertions" with "no evidentiary basis"). Even if the Court considers Sweeney's objections, they should be overruled.

### A. Class Notice and the Claims Administration Process, Timeframes and Deadlines are Fair, Reasonable and Adequate (Objection Nos. 1, 2, 7).

Sweeney's first objection, concerning "oversight, accountability, and reporting about whether the claims process actually delivers what was promised" is baseless. *First*, the Claims Administration Protocols, attached as Exhibit B to the Agreement, governs the claims process and obligates DSG and the Parties to comply with its terms. Sweeney does not cite any deviations or compliance issues—because there are none. *Second*, Class Counsel and counsel for Defendant have diligently monitored the notice and claims process, including answering questions regarding claims submitted and reviewing a detailed weekly summary of notice and claims activity. Avila Decl. at ¶ 16. *Third,* DSG continues to receive and process claims and the Parties will file an updated summary of claims following the close of the claims period on January 19, 2016. *Id.*

Next, contrary to Sweeney's second objection, the Agreement clearly provides a "timeframe for completing the administration of the Monetary Relief." Agreement § IV(A)(4), II(13) and IX. Payment will be sent directly to eligible Settlement Class Members within 90 days of the Effective Date. Agreement § IV(A)(4); *Id.* at §§ II(13) and IX. *See also* ECF 186-2 at 20

15

(Question 6 of Class Notice) (explaining when Class Members can expect payment).

Sweeney's seventh objection is frivolous and based on a misunderstanding (or failure to read) the Agreement. Class Notice complies with Rule 23, as set forth in Section III(C), *supra.* The response to Question 3 of the Class Notice—"What is This Lawsuit About?"—explains Plaintiffs' claims, the basis for those allegations, and Kashi's defense. ECF 186-2 at 18. The complaint (ECF 58) and Plaintiffs' Motion for Final Approval (ECF 186), both of which are available on the Settlement Website, also detail Plaintiffs' claims.

Moreover, there is no authority requiring a briefing schedule, since objectors have the opportunity to appear at the Final Approval Hearing. ECF 186-2 at 20 (Question 15 of Class Notice). Sweeney's seventh objection is particularly perplexing, as Mr. Sweeney—an attorney himself—does not plan to attend the Final Approval Hearing. ECF 191 at 1.[12]

### B.  Class Counsel's Request for Attorneys' Fees Should be Approved (Objection Nos. 3, 4, 5, 6).

As set forth above and in Plaintiffs' motion for attorneys' fees and costs (ECF 187), Class Counsel's requested attorneys' fee award is fair, reasonable and sufficiently documented.[13]

*First*, there is no authority requiring a portion of attorneys' fees "to be withheld to assure Class Counsel's continuing oversight and involvement in implementing settlement." ECF 191 at ¶ 3. Courts often grant fee awards prior to the conclusion of the settlement process, sometimes before the final claims deadline. *See, e.g., Lee*, 2015 WL 5449813, at *22, 26 (overruling objection that the Court should not grant final approval without knowing the claims rate and awarding fees)

---

[12] After filing his Objection, Sweeney entered a transaction on ECF titled "Notice of Intent to Appear by Patrick S. Sweeney" (ECF 192), but no document was attached. Class Counsel spoke to Mr. Sweeney and confirmed he does not plan to appear at the hearing. Avila Decl. at ¶ 17.

[13] Sweeney's characterization of the requested attorneys' fees as "disproportionate to the value of the Recovery of the Class" is addressed in Section III(B), *supra.*

16

(collecting cases). Moreover, Class Counsel testified they will continue to monitor the notice program, communicate with DSG, respond to class member inquiries, continue to oversee the claims administration process, including addressing any claim review issues, monitor distribution of benefits to the Settlement Class, and review and monitor Defendant's bi-annual compliance reports for three years. *See* ECF 187-1 at ¶ 67.

*Second,* Sweeney's objection that the requested attorneys' fees "do not depend upon how much relief is actually paid to the Class Members" (ECF 191 at ¶ 4) is meritless. The calculation of attorneys' fees here is properly based on a percentage of the *entire* $3.99 million cash payment, not just the amount claimed against it. The Eleventh Circuit recently rejected an objection that class counsel's fee was too large when compared to the value of the actual payout to the settlement class, stating the objection was "based on [a] flawed valuation of the settlement pie: limiting the monetary value to amount of [Defendant's] actual payments, while excluding the value of the injunctive and other negotiated relief." *Poertner,* 2015 WL 4310896, at *6.

*Third,* Sweeney objects on grounds Class Counsel should be required to produce billing records. ECF 191 at ¶ 6. Class Counsel's fee request is reasonable under the percentage-of-the-fund and the lodestar approach and satisfies the factors set forth in *Camden I Condominium Ass'n, Inc. v. Dunkle,* 946 F.2d 768 (11th Cir. 1991). ECF 187 at 16-29. Moreover, Class Counsel provided sufficient documentation in support of their fee request, including pages of detailed time summaries. ECF 187-1 at ¶¶ 37, 44, 53, 58. This document was made available to Class Members via the Settlement Website, where it could be downloaded and reviewed.

    **C.    The Agreement and Notice Clearly Explain How the Settlement Funds Will be Allocated and There Will Not be Any "Unclaimed Funds" (Objection No. 8).**

Sweeney also complains "[t]he Settlement Agreement lacks critical information which

must be determined before final approval, such as where unclaimed funds will go." ECF 191 at ¶ 8. But this boilerplate objection does not apply to the terms of the Agreement because there will not be any reversion of funds back to Kashi or Kellogg.

The Agreement and Class Notice make clear that under the Settlement, Kashi agreed to provide a cash payment. Agreement § IV(A)(2); ECF 186-2, Appx. D. The proceeds of the Settlement payment, less the costs of settlement administration, attorneys' fees, expenses and Service Awards, will be distributed to claiming Settlement Class Members. *Id.* At least $2 million will be available to pay claims, and in the event the amount claimed by Class Members is less, reimbursements will be increased *pro rata* on a per-product basis. *Id.*.

> **D.    Mr. Sweeney is Not Entitled to So-Called "Incentive Fees."**

Without authority or explanation, Mr. Sweeney seeks "an incentive fee to this Objector for her [sic] role in improving the Settlement, if applicable." ECF 191 at 3. It is unclear whether Sweeney seeks an incentive award similar to that available to a class representative or attorneys' fees for representing himself, but under either scenario such a request should be denied because Sweeney has done nothing to improve the Settlement. To the contrary, he has wasted judicial resources and harmed the Class by seeking to delay distribution of claiming Settlement Class Members' awards with his baseless objection.

Sweeney states he "intends to file a claim in this matter on or before January 19, 2016" (ECF 191 at 1), but Mr. Sweeney actually made a claim on November 18, 2015. Schey Decl. ¶ 24. His recovery should be limited to payment for his claim under the terms of the Agreement.

> **E.    The Catch-All Objection Should be Overruled.**

Sweeney's purported adoption and joinder "in all other objections which are based on

18

sufficient precedent and theories of equity and law in this case" should be overruled. There is no basis asserted and the only other objector is Mr. Thomas, whose objection itself is meritless and brought for improper purposes. Sweeney's attempt to incorporate Thomas' objections "by reference as if they were fully described herein" is a curious attempt to recover an "incentive fee" and should be rejected.

## V.   Update Regarding Non-Objecting Class Member, Jay Raab

Class Counsel has been advised by a Class Member, Mr. Jay Raab, that he contacted the Court's law clerk on December 21, 2015 with questions regarding his claim.[14]  Avila Decl. at ¶ 18. Class Counsel confirmed that Mr. Raab's claim form and accompanying receipts were received by the Claims Administrator on January 4, 2016. *Id. See also* Schey Decl. at ¶ 21. A true and correct copy of the envelope received by the Claims Administrator is attached as Exhibit C to the Schey Declaration. The United States Postal Service forwarded Mr. Raab's letter to obtain the certified mail return receipt signature he requested. Schey Decl. at ¶ 19, n. 6. Timeliness of Mr. Raab's claim was never an issue, because timeliness is determined by the postmark date. *Id.*

In addition, Mr. Raab reached out to Class Counsel with his concerns and Class Counsel was able to assist him. Avila Decl. at ¶ 18.   Mr. Raab has informed Class Counsel that his concern about the filing of his claim have been resolved. *Id.*

## VI.   Conclusion

Based on the foregoing—and for all the reasons set forth in Plaintiffs' motions for final approval (ECF 186) and attorneys' fees and costs (ECF 187)—Plaintiffs and Class Counsel

---

[14] There was also a concern by Mr. Raab regarding DSG's telephone number. DSG has a U.S. telephone number with a live operator with business hours from 8:00 a.m. to 6:00 p.m. CST. Schey Decl. at ¶ 22.

respectfully request that this Court overrule these objections and grant Final Approval.


Dated:   January 13, 2016                    Respectfully submitted,


*/s/ Gillian L. Wade*
MILSTEIN ADELMAN, LLP
Mark A. Milstein, Esq. (Admitted *pro hac vice*)
California Bar No. 155513
mmilstein@milsteinadelman.com
Gillian L. Wade, Esq. (Admitted *pro hac vice*)
gwade@milsteinadelman.com
California Bar No. 229124
Sara D. Avila Esq. (Admitted *pro hac vice*)
California Bar No. 263213
savila@milsteinadelman.com
10250 Constellation Boulevard, 14th Floor
Los Angeles, CA 90067
Tel.: (310) 396-9600
Fax: (310) 396-9635

LAW OFFICE OF L. DEWAYNE LAYFIELD
L. De-Wayne Layfield, Esq.(Admitted *pro hac vice*)
Texas Bar No.: 12065710
dewayne@layfieldlaw.com
P.O. Box 3829
Beaumont, TX 77704-3829
Tel.: (409) 832-1891
Fax: (866) 280-3004

THE   LAW   OFFICES   OF   HOWARD   W.
RUBINSTEIN, P.A.
Michael T. Fraser
Florida Bar No. 87411
mfraser@hwrlawoffice.com
One Embarcadero Center, Suite 500
San Francisco, CA 94111
Tel.: (800) 436-6437
Fax: (415) 692-6607

THE CHAFFIN LAW FIRM
Angela Arango-Chaffin, Esq.
Florida Bar No. 87919

20

angela@chaffinlawfirm.com
90 Alton Road, Unit 2704
Miami Beach, FL 33139
Tel.: (713) 818-2515
Fax: (713) 952-5972

THE CHAFFIN LAW FIRM
Robert A. Chaffin, Esq. (Admitted *pro hac vice*)
Texas Bar No. 04057500
robert@chaffinlawfirm.com
4265 San Felipe, No. 1020
Houston, TX 77027
Tel.: (713) 5281000
Fax: (713) 952-5972

*Counsel for Plaintiffs and the Settlement Class*

**CERTIFICATE OF COMPLIANCE**

I HEREBY CERTIFY that on this 13th day of January, 2016, this filing complies with Local Rule 5.1 and this Court's January 29, 2015 Order (Dkt. 173).

By:_____/s/ Gillian L. Wade_____
           Gillian L. Wade

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was filed and served via CM/ECF electronic transmission on January 13, 2016 to those parties that are registered with the Court to receive electronic notifications in this matter.

By:_____/s/ Michael T. Fraser_____
           Michael T. Fraser