# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No.: 12-21678-CIV-LENARD/O'SULLIVAN

LAURA EGGNATZ and KATRINA GARCIA,
individually, and on behalf of all others similarly situated,

      *Plaintiffs*,

   vs.

KASHI COMPANY, a California
Corporation,

      *Defendants*.

_____/

## DECLARATION OF SARA D. AVILA IN SUPPORT OF
## PLAINTIFFS' RESPONSE TO OBJECTIONS TO CLASS ACTION SETTLEMENT

I, Sara D. Avila, do hereby declare and state as follows:

1.      I am as Associate at the Law Offices of Milstein Adelman, LLP, counsel of record for Plaintiffs, Laura Eggnatz and Katrina Garcia, and the Class. am licensed to practice before all courts in the State of California and have been admitted *pro hac vice* in this Litigation.  I have personal knowledge of all of the facts stated herein, and if called to testify as a witness, I could and would competently testify to them.

2.      This declaration is made in support of Plaintiffs' Response to Objections to Class Action Settlement.

3.      Attached hereto as **Exhibit 1** is a true and correct copy of the Stipulation of Dismissal Without Prejudice dated September 1, 2015 in the *Alexander Hun v. Kashi Company*, E.D. NY Case No. 15-1391, Docket Entry 11.

4.      Attached hereto as **Exhibit 2** is a true and correct copy of the State Bar of Wisconsin's online LawyerProfile for objector Patrick Sweeney, last viewed January 16, 2016.

5.      Attached hereto as **Exhibit 3** is a true and correct copy of the Florida Bar's Profile for objector Patrick Sweeney, last viewed January 16, 2016.

6.      Attached hereto as **Exhibit 4** is a true and correct copy of the September 11, 2014 Second Amended Order *Nunc Pro Tunc* Granting Joint Motion for Final Approval o Class Settlement and Final Judgment, Granting Class Counsel's Application for Attorneys' Fees, Costs and Incentive Awards, and Overruling Objections to Settleent in *Roberts v. Electrolux Home Prod.*, C.D. Cal. Case No. 8:12-cv-01644, Docket Entry 193.

7.      Neither S. Perry Thomas nor anyone from the law firm Feinstein, Doyle, Payne & Kravek, LLC ("FDPK") contacted Class Counsel to clarify whether Bear Naked products are included in the Release.

8.      The corrected Frequently Asked Questions ("FAQ") (attached as Ex. D to the Schey Decl.) makes no mention of Bear Naked products, because the Settlement does not include Bear Naked products.

9.      The Parties in no way concealed any part of the Release.

10.     All of the Products utilized some iteration of the natural labeling during the Class Period.

11.     Attached hereto as **Exhibit 5** is a true and correct copy of the Final Judgment And Order in *Skye Astiana, et al., v. Kashi Company,* S.D. Cal. Case No. 11-cv-1967-H(BGS), Docket Entry 242.

12.     There was no collusion in reaching this Settlement. This litigation was hotly contested throughout and required three separate days of mediation, months apart, before an agreement could even be reached.

13.     The Settlement's injunctive component prohibits Kashi and Kellogg from continuing to implement the practices challenged in the Second Amended Complaint, which reaped millions of dollars in revenue for Kashi during the Class Period.

14.     I have been informed that in addition to the now-settled *Astiana* action, the only other case filed challenging the marketing of Kashi products as "All Natural" or "Nothing Artificial" was *Alexander Hun v Kashi Company*, Case No. 15-1391 (E.D.N.Y.), which has been dismissed.

15.     Class Counsel and counsel for Defendant have diligently monitored the notice and claims process, including answering questions regarding claims submitted and reviewing a detailed weekly summary of notice and claims activity. DSG continues to receive and process claims and the Parties will file an updated summary of claims following the close of the claims period on January 19, 2016.

16.     After filing his Objection, objector Patrick Sweeney entered a transaction on ECF titled "Notice of Intent to Appear by Patrick S. Sweeney" (ECF 192), but no document was attached. On January 13, 2016, I spoke with Mr. Sweeney. He confirmed he does not currently plan to appear at the hearing and that he would notify me if his plans change.

17.     Class Counsel has been advised by a Class Member, Mr. Jay Raab, that he contacted the Court's law clerk on December 21, 2015 with questions regarding his claim. Class Counsel confirmed that Mr. Raab's claim form and accompanying receipts were received by the Claims Administrator on January 4, 2016. It is my understanding that the United States Postal Service forwarded Mr. Raab's letter to obtain the certified mail return receipt signature he requested. Timeliness of Mr. Raab's claim was never an issue, because timeliness is determined by the postmark date. In addition, Mr. Raab reached out to Class Counsel with his concerns and Class Counsel was able to assist him. Mr. Raab has informed Class Counsel that his concern about the filing of his claim have been resolved. There was also a concern by Mr. Raab regarding DSG's telephone number, but I have been informed that DSG has a U.S. telephone number with a live operator with business hours from 8:00 a.m. to 6:00 p.m. CST.

I declare and state under the penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on January 13, 2016 at Los Angeles, California.

/s/ Sara D. Avila
Sara D. Avila, Declarant

# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALEXANDER HUN and DANA PAUL, on behalf of themselves and all others similarly situated, | Case No. 1:15-cv-01391-ILG-JO |
| Plaintiffs, | |
| v. | |
| KASHI COMPANY, a California Corporation, | |
| Defendant. | |

**FILED**
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ SEP 0 1 2015 ★

BROOKLYN OFFICE

## STIPULATION OF DISMISSAL WITHOUT PREJUDICE

Pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii), Plaintiffs Alexander Hun and Dana Paul ("Plaintiffs") and Defendant Kashi Company ("Kashi"), by their undersigned counsel, stipulate to dismiss Plaintiffs' action without prejudice,[1] subject to the parties' tolling agreement below.

1.     On March 17, 2015, Plaintiffs initiated this action by filing a Class Action Complaint alleging that Kashi had mislabeled certain products as "All Natural" or "Nothing Artificial" despite containing one or more allegedly synthetic and/or artificial ingredients. ECF No. 1, ¶¶ 1–2.

2.     On June 29, 2015, Kashi filed a Motion to Dismiss or Stay Action Pending Ruling on Motion to Approve Class Settlement in *Garcia v. Kashi* ("Motion"). ECF No. 6.

---

[1] A stipulated dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii) is without prejudice unless "the notice or stipulation states otherwise" or "the plaintiff previously dismissed any federal- or state-court action based on or including the same claim." Fed. R. Civ. P. 41(a)(1)(B); *see also Youssef v. Tishman Const. Corp.*, 744 F.3d 821, 825 (2d Cir. 2014) ("In the absence of any indication by the plaintiff, Rule 41(a)(1) presumes that a voluntary dismissal under these circumstances is without prejudice."). Neither circumstance specified in Fed. R. Civ. P. 41(a)(1)(B) applies here, and thus, this stipulated dismissal is without prejudice.

3.  Kashi's Motion seeks to dismiss Plaintiffs' claims without prejudice, or to stay the action, pending approval of a 49-state class-action settlement in *Garcia et al. v. Kashi Co.*, No. 1:12-cv-21678, ECF No. 178 (S.D. Fla.) (preliminary approval filed June 5, 2015) ("Stipulation of Settlement"). *See* Kashi Company's Memorandum of Law in Support of Motion to Dismiss or Stay Action Pending Ruling on Motion to Approve Class Settlement in *Garcia v. Kashi* at 1, ECF No. 6-1.

4.  On August 13, 2015, Plaintiffs filed a response to Kashi's Motion, requesting that the Court deny Kashi's request to dismiss the action because the Stipulation of Settlement had not even been preliminarily approved, and the obvious prejudice to Plaintiffs and putative class members if Plaintiffs' claims were dismissed now, and the Stipulation of Settlement was not ultimately approved. ECF No. 7.

5.  On August 25, 2015, Kashi filed a reply in support of its Motion, arguing that Plaintiffs and putative class members would not be prejudiced by dismissal of this action because, as members of the putative class in *Garcia*, any statutes of limitations in Plaintiffs' independent lawsuit are tolled by virtue of the *Garcia* case, citing *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 554 (1974), *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 350–51 (1983), and their progeny. ECF No. 8.

6.  The Stipulation of Settlement in *Garcia* includes a broad release of claims, proving that "Released Claims" "shall be construed as broadly as possible to effect complete finality over this Litigation" and, except personal-injury claims, shall include:

> any and all actions, claims, demands, rights, suits, and causes of action of whatever kind or nature that arose during the Settlement Class Period against the Released Persons, including damages, costs, expenses, penalties, and attorneys' fees, known or unknown, suspected or unsuspected, in law or equity arising out of or relating to the packaging, marketing, distribution or sale by Kashi of food products labeled as "All Natural," "100% Natural," "Nothing Artificial," or the

2

like, which have been or could have been asserted by the Class Representatives in Plaintiffs' Second Amended Consolidated Class Action Complaint or in any of the previous Complaints.

Stipulation of Settlement at § II.A.23, *Garcia*, ECF No. 179-1.

7.     Given the breadth of the release in the *Garcia* Stipulation of Settlement, and Kashi Company's agreement that *American Pipe* tolling applies to toll Plaintiffs' claims herein, the Parties hereby stipulate that:

a) Plaintiffs' action be dismissed, without prejudice; and

b) Defendant agrees for Plaintiffs' and putative class members' claims arising from their purchases of the Kashi products alleged in the Complaint filed in the herein action (ECF No. 1) all applicable statutes of limitations shall be tolled as of the date of the commencement of this action until sixty (60) days after either: i) the denial of the Motion for Preliminary Approval of the Stipulation of Settlement in *Garcia* (ECF Nos. 178 and 179-1); ii) the denial of any motion to finally approve the Stipulation of Settlement in *Garcia* (ECF Nos. 178 and 179-1); or iii) the granting of any motion to finally approve the Stipulation of Settlement in *Garcia* (ECF Nos. 178 and 179-1) (including the final disposition of all appeals).  Such tolling shall apply to any an individual or subsequent class action Plaintiffs or putative class members file.

DATED:  September 1, 2015          **FARUQI & FARUQI, LLP**

By:  */s/Antonio Vozzolo*

Antonio Vozzolo (No. 8773)
369 Lexington Avenue, 10th Floor
New York, NY 10017
Telephone:  (212) 983-9330
Facsimile:  (212) 983-9331
Email:  avozzolo@faruqilaw.com

*Attorney for Plaintiffs*

3

DATED:  September 1, 2015                    **JENNER & BLOCK LLP**

By:  _/s/Kenneth K. Lee_

Kenneth K. Lee (NY Reg. No. 4056750)
klee@jenner.com
633 West 5th Street
Suite 3600
Los Angeles, CA 90071
Tel.: 213 239-5100
Fax: 213 239-5199

_Attorney for Defendant Kashi Company_

So Ordered

9/1/15

4

# EXHIBIT 2



 Home > Directories > LawyerProfile

# Lawyer Search

The license status and member type information provided reflect this lawyer's current information. For historical information on their license status, please contact Customer Service.

To add to or update your profile, go to myProfile.



**Atty. Patrick S. Sweeney**
Sweeney Legal Group SC
2935 S Fish Hatchery Rd Ste 7
Madison WI 53711-7408
**Phone:** (310) 339-0548
**Fax:** (561) 395-9093
**County:** Dane
**Email:** patrick@sweeneylegalgroup.com

**Member ID:** 1020435
**Graduation Year:** 1986
**Languages:** English
**Law School:**
California Western
School of Law
**WI Admission:**
09/23/1992
**License Status:**
  Suspended Dues
  Suspended CLE
Suspended OLR
Certification

You must Login to view full profile

Live 1

# EXHIBIT 3

Ethics    Rules    Professionalism    Log In    Follow Us

# THE FLORIDA BAR

ABOUT THE BAR        NEWS & EVENTS        FOR THE PUBLIC             MEMBER SERVICES        LOG IN        FIND A LAWYER

Search The Florida Bar

THE FLORIDA BAR  /  Find A Lawyer  /  Profile

## Patrick Shane Sweeney

**Member in Good Standing**

**Eligible to Practice Law in Florida**

| | |
|---|---|
| **Bar Number:** | 593486 |
| **Mail Address:** | Sweeney Legal Group,S.C. |
| | Sweeney Legal Group |
| | 2590 Richardson St |
| | Madison, WI 53711-5432 |
| | United States |
| | Office: 310-339-0548 |
| | Fax: 561-395-9093 |
| | Cell: 310-339-0548 |
| **Email:** | patrick@sweeneylegalgroup.com |
| **Personal Bar URL:** | www.floridabar.org/mybarprofile/593486 |
| **vCard:** | ? |
| **County:** | Non-Florida |
| **Admitted:** | 09/29/1986 |
| **10-Year Discipline History:** | None |
| **Law School:** | California Western School of Law, 1986 |
| **Federal Courts:** | U.S. Court of Appeals for the Eleventh Circuit |
| | U.S. District Court, Eastern District of Wisconsin |
| | U.S. District Court, Southern District of Florida |
| | U.S. District Court, Western District of Wisconsin |
| **State Courts:** | Florida |
| | Wisconsin |
| **Firm:** | Sweeney Legal Group,S.C. |
| **Firm Size:** | One |
| **Firm Position:** | Partner/Shareholder |

The Find a Lawyer directory is provided as a public service. The Florida Bar maintains limited basic information about attorneys licensed to practice in the state (e.g., name, address, year of birth, gender, law schools attended, admission year). However, through this directory The Florida Bar allows individual attorneys the opportunity to provide for public information certain expanded personal and professional data. It is the attorney's responsibility to routinely review and update those expanded listings. The information contained in those expanded listings is presented by the Bar "as is" with no warranty of any kind, express or implied. The Florida Bar, its Board of Governors, employees, and agents thereof are not responsible for the accuracy of that additional data. Publication of attorneys' contact information within this listing should not be construed as their consent to receive unsolicited communications in any form. Certain unauthorized uses of this data may result in civil or criminal penalties. The Find a Lawyer directory is not a lawyer referral service.

**About the Bar**

President's Page

Board of Governors

Committees

Sections & Divisions

What We Do

Past Presidents

Frequently Asked Questions

History

Strategic Plan & Research

Working at the Bar

Contact Us

Diversity

Leadership Academy

**News, Events & Publications**

Daily News Summary

The Florida Bar News

The Florida Bar Journal

News Releases

Calendars

Meetings

Media Resources

Reporter's Handbook

Issue Papers

Publications

**For the Public**

Attorney Discipline

Consumer Information

Speakers Bureau

Courts

The Vote's in Your Court

Fair & Impartial Courts

Clients' Security Fund

Prepaid Legal Services

Pro Bono/Legal Aid

Unlicensed Practice of Law

Lawyer Referral Service

**Member Services**

Continuing Legal Education

Board Certification

Benefits and Discounts

Employment Opportunities

Lawyers Advising Lawyers

Florida Lawyers Assistance

E-filing Resources

Practice Resource Institute

Pro Bono Information

Legislative Activity

Lawyer Referral Service

Voluntary Bar Center

**Directories**

Lawyers

Authorized House Counsel

Certified Foreign Legal Consultants

Law Faculty Affiliates

Florida Registered Paralegals

Section Membership

Board Certified Lawyers

Florida Bar Staff

Courts and Judges

Legal Groups and Law Schools

Judicial Nominating Commission

**Research & Professionalism**

Ethics Opinions

Rules Regulating the Bar

Fastcase Legal Research

PRI - Practice Resource Institute

Henry Latimer Center for Professionalism

# EXHIBIT 4

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHAWN ROBERTS, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> ELECTROLUX HOME PRODUCTS, INC., <br><br> Defendants. | Master File No. SACV12-1644-CAS(VBKx) <br><br> CLASS ACTION <br><br> **[PROPOSED] SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT** <br><br> The Honorable Christina A. Snyder |
| This Document Relates To: All Actions. | |

Plaintiffs Shannon Carty, Matthew Downs, Stephen Gavic, Michelle McGowan and Tammie Humphrey, on behalf of themselves and a nationwide Settlement Class ("Plaintiffs"), and Defendant Electrolux Home Products, Inc. ("Electrolux") (collectively, "the Parties") have entered into a Settlement Agreement ("Settlement Agreement" or "Agreement"). The Parties previously

-1-

submitted the Settlement Agreement to this Court for preliminary approval of the class action settlement provided for therein (the "Settlement"). On May 5, 2014, this Court entered a Class Settlement Preliminary Approval Order ("Preliminary Approval Order"), which included provisional certification of a nationwide class ("Settlement Class"). Now, the matter having come before the Court for hearing on August 18, 2014, having considered the Parties' joint motion for entry of an order granting final approval of the proposed Settlement and for entry of final judgment in this matter; the Parties' memoranda in support; Class Counsel's application for attorneys' fees, expenses, and incentive awards; briefing submitted to the Court on class members' objections; and arguments presented to the Court at the final approval hearing, the Court FINDS, CONCLUDES, ORDERS, AND ADJUDGES as follows:

## I.    JURISDICTION OF THE COURT

The Parties and the members of the nationwide Settlement Class ("Settlement Class Members") have submitted to the jurisdiction of this Court for purposes of the Settlement; the Court has personal jurisdiction over the Parties and the Settlement Class Members; the Court has subject matter jurisdiction to release all claims and causes of action released in the Settlement; and the Court has subject matter jurisdiction to approve the Settlement.

## II.   CLASS CERTIFICATION

In the Preliminary Approval Order, this Court granted conditional class certification to the above-referenced Settlement Class, as well as to the Past Dryer Fire Subclass and Future Dryer Fire Subclass. The Court ordered that notice of the Settlement be directed by the claims administrator to the Settlement Class and Subclasses, defined as follows:

a. <u>Settlement Class.</u> All residents of the United States who purchased,

primarily for personal or household purposes, a Dryer. A "Dryer" is defined in the Settlement Agreement as a Frigidaire-, White Westinghouse-, Kelvinator-, Gibson-, Tappan-, Crosley-, or Kenmore- brand ball-hitch freestanding clothing dryer manufactured by Electrolux between January 1, 2002, and December 31, 2011. Excluded from the Settlement Class are (a) officers, directors, and employees of Electrolux and its parents or subsidiaries; (b) insurers of Settlement Class Members; (c) subrogees or entities claiming to be subrogated to the rights of Dryer purchasers, owners, or a Settlement Class Members; and (d) issuers or providers of extended Dryer warranties or service contracts.

b. <u>Past Dryer Fire Subclass.</u> All Settlement Class Members who experienced a Past Dryer Fire Event, defined as a fire in the drum, behind the drum, in the lint screen or adjacent air duct and blower, or base of the Dryer that occurred within 10 years after the purchase date of the Dryer that caused the Settlement Class Member to incur some unreimbursed out-of-pocket expense, including, but not limited to, property damage, insurance deductible, or repair or replacement of their Dryer.

c. <u>Future Dryer Fire Subclass.</u> All Settlement Class Members who experience a Future Dryer Fire Event, defined as after the Final Approval Order has been entered, but within the first 10 years after purchase of the Dryer, a fire occurring in the drum, behind the drum, in the lint screen or adjacent air duct and blower, or base of the Dryer that causes the Settlement Class Member to incur some unreimbursed out-of-pocket expense, including, but not limited to, property

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT

MASTER FILE NO. 8:12-cv-01644-CAS-VBK

damage, insurance deductible, or repair or replacement of their Dryer.

The Court found and concluded that the Settlement Class and the two subclasses satisfied all the requirements of due process and other applicable federal law and made several specific decisions relating to the Settlement Class. First, the Court appointed Edward A. Wallace, Amy E. Keller, and Dawn M. Goulet of Wexler Wallace LLP, Erin Dickinson and Charles Crueger of Hansen Reynolds Dickinson Crueger LLC, and Gregory F. Coleman of Greg Coleman Law PC as Co-Lead Counsel for Plaintiffs and the Settlement Class ("Class Counsel"), with authority to execute any and all pleadings and documents on behalf of the Settlement Class. Second, the Court appointed Plaintiffs Shannon Carty, Matthew Downs, Stephen Gavic, Michelle McGowan and Tammie Humphrey as class representatives ("Class Representatives"). Third, the Court appointed Kurtzman Carson Consultants ("KCC") as Class Administrator.

Having considered all submissions filed with the Court pursuant to the Preliminary Approval Order, the Court now finds and concludes that those provisional findings and conclusions should be, and hereby are, confirmed in all respects as a final class certification order under Federal Rule of Civil Procedure 23 for the purposes of implementing the nationwide class action Settlement provided for in the Settlement Agreement and entering final judgment in this action. The Court also overrules any remaining objections, and awards Class Counsel the requested attorneys' fees and costs and Class Representatives' the requested incentive payments.

## III. NOTICE

The Court considered the Settlement Notice Plan submitted by the parties, and the Declaration of Carla A. Peak of KCC describing the Notice Plan. The Preliminary Approval Order approved (1) the form and content of a mailed notice

4

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT

MASTER FILE NO. 8:12-cv-01644-CAS-VBK

of the Settlement to be provided to identifiable members of the Settlement Class (the "Settlement Notice"); (2) the form and content of a publication notice (the "Publication Notice") to be published in the nationally-circulated magazines *Parade* and *People*, as well as Internet banner notices which ran on websites such as HGTV.com and Facebook.com; (3) the form and content of the Frequently Asked Questions Form (the "FAQ") to be posted on the website created for this Settlement by the Settlement Administrator and mailed to any Settlement Class Member who requests a hard copy; (4) the form and content of the Claim Form; and (5) the plan specified in the Settlement Agreement for distributing and publishing the Settlement Notice, the FAQ, the Publication Notice, and the Claim Form.

The Court finds that the Notice itself is appropriate, and complies with Fed. R. Civ. P. 23(b)(3), 23(c)(2)(B), and 23(e), because the Settlement Notice, FAQ, and Publication Notice fairly, accurately, and reasonably informed members of the Settlement Class, in plain language, of (1) appropriate information about the nature of this litigation and the essential terms of the Settlement Agreement; (2) appropriate information about, and means for obtaining, additional information regarding this litigation and the Settlement Agreement; (3) appropriate information about, and means for obtaining and submitting, a Claim Form; (4) appropriate information about the right of members of the Settlement Class to exclude themselves from the Settlement, object to the terms of the Settlement Agreement, including Class Counsel's request for an award of attorneys' fees and costs, and the procedures to do so; and (5) appropriate information about the consequences of failing to submit a Claim Form or failing to comply with the procedures and the deadline for opting out of, or objecting to, the Settlement.

Additionally, the Notice is appropriate and complies with the applicable

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT

MASTER FILE NO. 8:12-cv-01644-CAS-VBK

rules because it describes in plain language: (1) the nature of the action; (2) the definition of the Settlement Class and Subclasses; (3) the class claims, issues, or defenses; (4) that a Class member could enter an appearance through an attorney if the member so desired; (5) that the Court will exclude from the Class any member who timely requested exclusion; (6) the time and manner for requesting exclusion; (7) the time and manner for objecting to the Settlement; and (8) the binding effect of a judgment on Settlement Class members under Fed. R. Civ. P. 23(c)(3) and the terms of the releases.

On June 19, 2014, Carla A. Peak submitted a declaration informing the Court of the Parties' compliance with the notice procedures. And on August 8, 2014 (supplemented on September 11, 2014), Kenneth A. Stalzer—counsel for Electrolux—informed the Court that KCC mailed letters, pursuant to 28 U.S.C. § 1715, to the Attorney General of the United States and the attorneys general of each of the 50 states, U.S. territories, and the District of Columbia, and that no objections to the Settlement from any attorney general were received.

The Court finds that the Notice Plan—which includes the direct notice and publication notice as described above, in addition to the creation of a Settlement website (which includes copies of the Notice, Claim Form, FAQ or "long form" notice, and relevant pleadings) and toll-free number that Settlement Class members may call for additional information, meets the requirements of due process and Fed. R. Civ. P. 23(c) and (e), is the best notice practicable under the circumstances, and constitutes sufficient notice to all persons entitled to notice.

Accordingly, the Court hereby finds and concludes that members of the Settlement Class have been provided the best notice practicable of the Settlement and that such notice satisfies all requirements of federal and California laws and due process. The Court finally approves the Notice Plan in all respects. The

Court also finds that notice to appropriate federal and state officials pursuant to the federal Class Action Fairness Act has been timely sent and that such notice satisfies the requirements of the federal Class Action Fairness Act, 28 U.S.C. § 1715.  Any objections to the notice provided to the Class are hereby overruled.

## IV.    FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT

In the Preliminary Approval Order, the Court found that the Settlement Agreement appeared to be fair, reasonable, and adequate.  The Court confirms this finding, holds that the Settlement is fair, reasonable and adequate and grants final approval of the Settlement.

### A.    Benefits Available Under the Settlement

Pursuant to the Settlement, Electrolux is required to provide several different benefits to Settlement Class Members: (1) a Customer-Instruct Safety Notice mailed to identifiable Settlement Class Members with the Settlement Notice and posted to Frigidaire and Electrolux's websites (as well as the Settlement website); (2) a free safety cleaning service for Settlement Class Members who experienced a Qualifying Performance Problem (as that term is defined in the Settlement Agreement), and to provide training to its authorized service professionals regarding the proper way to perform this cleaning service pursuant to the Settlement and for Dryers in the future; (3) cash reimbursement to members of the Past Dryer Fire Subclass and the Future Dryer Fire Subclass of out-of-pocket expenses incurred due to a Dryer fire within the first 10 years after purchase; and (4) a cash rebate to any Settlement Class Members for the purchase of a new Frigidaire- or Electrolux-brand dryer or other qualifying home appliance upon the submission of a qualifying claim form, or a discount code to any Settlement Class Member who submits a qualifying claim form to be used in purchasing new products from Electrolux's direct-to-consumer website,

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT
MASTER FILE NO. 8:12-cv-01644-CAS-VBK

www.ElectroluxAppliances.com, in lieu of purchasing a new home appliance. The Settlement does not require consumers to release any personal injury or property damage claims—save for the economic loss to the Dryers, themselves.

Plaintiffs' counsel retained Frank Bernatowicz to perform a valuation of the various benefits under this Settlement.  Mr. Bernatowicz has a Bachelor of Science in Electrical Engineering and a Master of Business Administration degree (along with a concentration in Accounting).  He is also a Professional Engineer and Certified Public Accountant with lengthy experience as described in his Declaration.  (ECF No. 153-1 at 28-29.)  Mr. Bernatowicz employed methods and analyses of a type reasonably relied upon by experts in his field forming opinions or inferences on valuation.  In connection with his valuation, Mr. Bernatowicz also relied upon the Settlement Agreement, reports of two of Plaintiffs' other experts (Marthinus van Schoor, Ph.D. and Carol Pollack-Nelson, Ph.D.), a report authored by the Federal Emergency Management Agency ("FEMA") concerning dryer fires which utilized conservative, voluntarily-reported data from the National Fire Incident Reporting System ("NFIRS") where the fire department was called, and a review and summary of literature on consumer motivation and behavior concerning recall effectiveness authored by the United States Consumer Product Safety Commission ("CPSC").  The Court has reviewed Mr. Bernatowicz's valuation, along with the Parties' submissions and the record, and makes the following findings concerning the Settlement's benefits.

### 1. Customer-Instruct Safety Notice

The Court finds that the Customer-Instruct Safety Notice confers significant benefits to Class Members, informing them that lint can build up inside of their Dryers—more specifically, behind the drums of the Dryers—and should be cleaned by an authorized service professional at least every 18 months.  The Court

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT

MASTER FILE NO. 8:12-cv-01644-CAS-VBK

notes that, in addition to being disseminated to identifiable class members by U.S. Mail and electronic mail, the notice is also posted to Electrolux and Frigidaire's websites and the Settlement website.

This Customer-Instruct Safety Notice was negotiated and developed by the Parties to address the allegations in Plaintiffs' Second Amended Consolidated Class Action Complaint ("Complaint"), as well as certain findings by their expert witnesses. Electrolux's cleaning instructions and warning in its Use and Care Guides contained no specific instructions that consumers needed to clean and remove lint *behind* the drums of these Dryers—where lint could accumulate next to the Dryers' heat source. Notably, Plaintiffs' expert Carol Pollack Nelson, a human factors psychologist specializing in consumer product safety (and who formerly worked for the United States Consumer Product Safety Commission), found—based upon research and a survey of Electrolux dryer owners—that consumers were not likely to follow safety and cleaning instructions when they are buried within the materials consumers receive when purchasing a Dryer. A stand-alone instruction is more likely to be read and understood by consumers and, according to Plaintiffs' expert Frank Bernatowicz, will "have a significant impact on the number of future fire incidents that will occur related to the subject Electrolux dryers," because it will influence consumer behavior. Mr. Bernatowicz estimates, utilizing data from Dr. van Schoor concerning future fires, that the benefits to the Class from the Customer-Instruct Safety Notice are valued at approximately $15.8 million.[1]

---

[1] Mr. Bernatowicz provides "full utilization" values and "projected utilization" values. The Court discusses Mr. Bernatowicz's "projected utilization" values, here, but notes that Mr. Bernatowicz provides a range of values as well as Electrolux's overall total potential liability as part of Class Counsel's Application

*(Footnote cont'd on next page.)*

9

The Court finds that this portion of the Settlement provides a substantial benefit to the Class and addresses the defects alleged in Plaintiffs' Complaint.

## 2. Safety Cleaning Service, Free-of-Charge to Class Members

Class members who experienced a Qualifying Service Problem with their Dryers—such as overheating, burning, or scorching of laundry loads—within the first five years of the purchase of the subject Dryers (and if the Dryers are less than ten years old—the "useful life" of these Dryers), are eligible for one free cleaning of the Dryer by an Electrolux-authorized service representative. Eligible Class members may schedule this cleaning any time within the next two years, and will be reminded 30 days before the end of that period to schedule the service. The cost of this service, which takes about an hour to perform, is estimated to be approximately $100 and there is no evidence in the record to rebut this estimate. Further, under the terms of the Settlement, should the cleaning be more than $100 or take more than one hour, Class members will *not* be charged for this service. As described in the Settlement Agreement and represented by the Parties to this Court—this service will occur free-of-charge to qualifying Class members.

Another component to this Settlement benefit requires Electrolux to provide training materials to its authorized service technicians concerning how to properly clean the subject Dryers. Plaintiffs' counsel notes that, through testimony provided to the Court from Electrolux's witnesses, in order to clean these Dryers, the drums of the Dryers must be removed and lint cleaned from the heater pan. These witnesses also testified that Electrolux previously provided no training or

_____

*(Footnote cont'd from previous page.)*

for Attorneys' Fees and Expenses and for Service Awards. (ECF No. 153.) No one has presented any evidence rebutting Mr. Bernatowicz's valuations.

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT

MASTER FILE NO. 8:12-cv-01644-CAS-VBK

instructions to its authorized service technicians to clean the Dryers. So, in some instances, if Class members previously requested and paid for a cleaning, there would be no guarantee that their Dryers would be properly cleaned, and that lint would be removed from behind the drums and in the heater pans.

Mr. Bernatowicz examined this and other data provided by Plaintiffs' expert Dr. van Schoor. Dr. van Schoor's report included findings that the number of Dryer fires increases up to year five, and then significantly declines immediately thereafter. Further, individuals who experience the "Qualifying Service Problems" discussed in the Settlement Agreement may have Dryer conditions that are more likely to result in a fire. Dr. Bernatowicz determined that the benefit to the Class members under this portion of the Settlement is approximately $11.9 million.

The Court finds, based upon a review of the record, that this portion of the Settlement also provides a tangible benefit and a service to the Class members—free of charge—that is not a coupon.

### 3. Monetary Benefits for Dryer Fire Subclass Members

Class members who experience a Dryer fire within the first ten years after the Dryer's purchase (which is, again, the useful life of the Dryers) will be eligible to receive up to $1,300 for unreimbursed expenses incurred in repairing or replacing their Dryers or for property damage. This benefit is available for individuals who experienced a Dryer fire in the past or may experience one in the future for the entire prospective useful life of the last models of these Dryers sold—or until December 31, 2022. Again, like the other benefits available to the Class members, individuals who make claims under this portion of the Settlement will not be releasing any personal injury or property damage claims—except for economic loss claims regarding damage to the Dryers themselves.

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT

MASTER FILE NO. 8:12-cv-01644-CAS-VBK

Utilizing data from Plaintiffs' experts, the estimated value of this portion of the Settlement is $7.8 million based upon expected utilization rates. This portion of the Settlement provides real, tangible benefits in the form of monetary relief to the Fire Subclass members.

### 4. Cash Rebates and Online Vouchers to Purchase New Products

Finally, the Settlement provides up to $350 off the purchase price of a replacement Electrolux- or Frigidaire-brand clothes Dryer or an online code that can be used to purchase a number of Electrolux products at up to a 20% discount online. Customers will have up to two years to use the cash rebate benefit or online voucher code, and will be reminded to do so 30 days prior to its expiration. Additionally, the rebates and vouchers are fully transferrable—Settlement Class members may sell or give these benefits away to non-Class members.

The parties presented evidence and argument to the Court that Electrolux ceased producing these Dryers in 2011. Therefore, individuals who purchase new Electrolux products using the benefits provided under the Settlement will *not* be purchasing one of the allegedly-defective Dryers.

Mr. Bernatowicz did not assign a value to this portion of the Settlement, but the Court finds that it provides additional benefits to the Settlement Class members above and beyond the benefits already discussed.

### B. Additional Fairness Considerations

The Court finds that the benefits offered to the Settlement Class members are substantial. Taking other factors into account as required for final approval, the Court finds that the Settlement was negotiated with the assistance of nationally-renowned mediator Jonathan Marks, who submitted a declaration that the Settlement was reached after arms' length negotiations without any evidence

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT

MASTER FILE NO. 8:12-cv-01644-CAS-VBK

1   of fraud or collusion in the negotiation process.

2       The Settlement was reached notwithstanding that on the merits Plaintiffs

3   faced a number of obstacles on the merits, including that Electrolux has won every

4   case it has tried regarding the alleged defects found in these Dryers, and that

5   Electrolux takes the position that over 99 percent of Dryer owners will never

6   experience a fire.  In addition to issues presented on the merits proving design

7   defects and causation, Plaintiffs faced obstacles regarding the economic loss rule

8   and manifestation of injury defenses under state law.  Plaintiffs also faced

9   obstacles related to the certification of a nation-wide or several state-wide classes

10   and maintaining certification through trial.

11       Having considered (1) the benefits offered to Settlement Class Members;

12   (2) the strength of Plaintiffs' case on the merits, and the defenses that may be

13   asserted by Electrolux; (3) the risks to members of the Settlement Class that

14   Electrolux would successfully defend some or all of the claims asserted by

15   Plaintiffs, whether litigated on a classwide basis or by members of the Settlement

16   Class themselves; (4) the expense and complexity of continued litigation; (5) the

17   length of time that would be required for members of the Settlement Class, or any

18   group thereof, to obtain a final judgment through one or more trials and appeals;

19   (6) the experience and views of Co-Lead Counsel and Electrolux's counsel; and

20   (7) the small number of members of the Settlement Class who have elected to be

21   excluded from the Settlement or who have objected to the Settlement, the Court

22   finds the Settlement to be fair, reasonable, and adequate.  Moreover, the Court

23   finds that the Settlement is the result of extended, arm's length negotiations

24   among experienced counsel, before an experienced mediator, and is non-collusive.

25       In consideration of the foregoing, the Court grants final approval of the

26   Settlement Agreement and enters this Final Order and Judgment implementing its

27

28

terms, including but not limited to the releases in the Settlement Agreement as to Settlement Class members except those who timely sought exclusion.  All objections filed by members of the Settlement Class have been considered by the Court and are hereby overruled, as explained further herein.  The Court finds that the Settlement Agreement is in all respects fair, reasonable, adequate, and in the best interest of the Settlement Class and hereby adopts and incorporates the terms of the Settlement Agreement for purposes of this Final Order and Judgment, including the definitions set forth in the Agreement.  The Parties are directed to consummate the Settlement Agreement in accordance with its terms.

## V.    FEES, COSTS, AND INCENTIVE AWARDS

The Court recognizes that Mr. Marks's declaration also stated that attorneys' fees were negotiated separately and apart from the Settlement.  The Court finds that certain provisions of this Settlement will require additional work by Class Counsel, and that they have incurred, and will continue to incur, additional fees and expenses for which they will not seek reimbursement, including potential follow-on enforcement actions and monitoring of the Settlement.  Class Counsel must monitor the Fire Subclass portion of this Settlement until at least December 31, 2022, as the Settlement provides for a meet and confer process regarding any denied claims.

The Court finds that the lodestar method is the appropriate approach for the calculation of attorneys' fees in this case.  *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011); *In re Ferrero Litig.*, No. 11-cv-00205-KSC, 2012 U.S. Dist. LEXIS 94900, *10 (S.D. Cal. July 9, 2014), *aff'd*, No. 12-56469, 2014 U.S. App. LEXIS 13573 (9th Cir. July 16, 2014) (in class action settlement providing for injunctive relief, "[t]he Court concludes that Plaintiffs are prevailing parties as the term is used in the fee-shifting provision of

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT

MASTER FILE NO. 8:12-cv-01644-CAS-VBK

the Consumer Legal Remedies Act, and Class Counsel are thus entitled to a reasonable fee and expense award for their work."). This litigation asserted claims under fee-shifting statutes including state consumer protection statutes (Cal. Civ. Code § 1750, *et seq.*, Ark. Code Ann. § 4-88-107, *et seq.*, N.Y. G.B.L. § 349, *et seq.*), and the Magnuson-Moss Warranty Improvement Act (15 U.S.C. § 2301, *et. seq.*)), each of which provides for attorneys' fees to a successful plaintiff (15 U.S.C. § 2310(d); Cal. Civ. Code. § 1780(e); Ark. Code Ann § 4-88-113; N.Y. G.B.L. § 349(h)) as well as significant injunctive relief and safety benefits. Under these circumstances the lodestar method of calculating fees is the appropriate method by which to measure attorneys' fees in this matter.

The Court hereby awards Class Counsel $8,000,000 for their incurred expenses and costs, as well as for attorneys' fees. As the record reflects, all of the attorneys appointed Class Counsel—in addition to local counsel in each of the consolidated actions—have prosecuted this action, with no guarantee of recovery, and have advanced all costs to date. The Court notes that Class Counsel has incurred over $627,000 in costs. As of July 22, 2014, this $8,000,000 request represented only a 1.23x multiplier on Class Counsel's fees[2]—and this multiplier will likely decrease as the Settlement moves forward and Class Counsel continues to monitor claims and respond to inquiries from the Class members. The Court finds that this multiplier is appropriate given the extensive amount of time spent by Class Counsel over the course of the two years prosecuting this action, the complexity of the case, the quality of representation, the novelty of issues presented (including the sophisticated engineering concepts involved in this case),

---

[2] The Court finds that Class Counsel's hourly rates are consistent with prevailing market rates.

15

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT

MASTER FILE NO. 8:12-cv-01644-CAS-VBK

and the risk of nonpayment. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (citations omitted).

The Court also notes that a settlement valuation cross-check supports this fee award. The evidence and expert testimony submitted to the Court supports a valuation of the Settlement benefits totaling a minimum of $35.5 million. This value is based on expected utilization rates for which no contradictory evidence has been submitted. According to the evidence submitted, the total potential value of the Settlement is $155 million, however, that number was not used in evaluating the fee request. The cash rebate portion of the Settlement has not been valued or included in performing a valuation for lodestar cross-check purposes.

The requested fees approximate 21% of the value of the Settlement. This is well within—and even below—the benchmark recognized as appropriate in this Circuit. *See Hanlon*, 150 F.3d at 1029; *Iorio v. Allianz Life Ins. Co. of N. Am., Inc.*, No. 05-cv-0633-JLS (CAB), 2011 U.S. Dist. LEXIS 21824, **36-37 (S.D. Cal. Mar. 3, 2011) (attorneys' fees represented 16.48% of settlement's "full utilization value," and 29.95% of the settlement's "projected utilization value"). The payment of attorneys' fees and costs will not diminish any of the benefits provided to the Settlement Class members.

The Court further awards $3,000 as an incentive award to each Class Representative: Shannon Carty, Matthew Downs, Stephen Gavic, Michelle McGowan and Tammie Humphrey, for their time spent prosecuting this action—including sitting for depositions, responding to discovery, and making their homes and Dryers available for inspection. The Court notes that certain Class Representatives experienced past dryer fires, and will submit claim forms as part of the Past Dryer Fire Subclass, and their claims will be considered and paid pursuant to the terms of the Settlement Agreement.

16

The Court further finds that the Class Representatives are individually releasing claims for the property damage experienced as a result of their Dryer fires (and none of the absent Settlement Class members are providing these releases). The Court notes that, as part of their individual settlements, Plaintiffs will receive the following for individual (non-class) property damage claims: $25,000 to Shannon Carty; $7,587.33 to Matthew Downs; and $1,239.65 to Michelle McGowan. These separate settlement amounts do not render the Class Representatives inadequate or otherwise cause a conflict of interest; rather, the Class Representatives are settling their individual claims and providing releases— above and beyond the Settlement—as part of their own individual property damage claims. The Court finds that this creates no conflict of interest between the Class Representatives and the Class; nor does it creates a conflict between Class Counsel and the Class. *See La Fleur v. Medical Mgmt. Int'l*, No. 13-01960-VAP (OPx), 2014 U.S. Dist. LEXIS 90367, *22 (C.D. Cal. June 25, 2014) (incentive payment of $15,000 to each named plaintiff approved because, *inter alia*, the named plaintiffs released *all* claims against the defendant); *Hillgamyer v. Reliastar Life Ins. Co.*, No. 11-cv-729, 2013 U.S. Dist. LEXIS 147457 (W.D. Wis. Oct. 4, 2013) (pursuit and settlement of class representative's individual claim not incompatible with her serving as class representative so long as no class-wide release given). Finally, the Court awards $839 in litigation costs to Tammie Humphrey for the destructive testing of her Dryer as a necessary cost to pursue this litigation.

These amounts shall be paid by Electrolux consistent with the terms of the Settlement Agreement and will not diminish any of the benefits afforded to the Settlement Class members.

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT

MASTER FILE NO. 8:12-cv-01644-CAS-VBK

Case 2:12-cv-01644-CAS-VBK Document 198 Filed 09/11/13 Page 32 of 69
Case 8:12-cv-01644-CAS-VBK Document 198 Filed 09/18/2016 Page 82 of
#:3934

## VI.   OBJECTIONS TO THE SETTLEMENT

The Court has had an opportunity to review the objections submitted by a small percentage of the Settlement Class Members (10 objections by consumers, and objections from four objectors represented by counsel) and finds that an overwhelming majority of the Settlement Class views the Settlement favorably (there are approximately 6.5 million Class members), and notes that a majority of the consumer objectors have represented to Class Counsel that they will be or have withdrawn their objections.[3] *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) ("[i]t is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of the proposed class settlement action are favorable to class members."). *See also Churchill Vill., LLC v. GE*, 361 F.3d 566, 577 (9th Cir. 2003) (settlement approved with 500 opt-outs and 45 objections out of 90,000 class members); *Fulford v. Logitech, Inc.*, No. 08-cv-02041 MMC, 2010 U.S. Dist. LEXIS 29042, *12 (N.D. Cal. Mar. 5, 2010) (response of Class favored settlement where only 12 of 82,000 class members objected). Of the remaining objections, the Court has carefully considered the letters and briefs submitted on behalf of the objectors and by Class Counsel and overrules the objections on the following bases.

---

[3] All objections received by Class members were attached to the Declaration of Amy E. Keller (ECF No. 163). The Court has reviewed those objections in connection with issuing this Order, and finds that the objections, if not formally withdrawn, are overruled for the same reasons discussed herein related to the other objections.

18

A.     **Consumer Objectors**

1.     **Objector Jerry Atkins**

The Court notes that Mr. Atkins bases his objection on three main points: 1) that Electrolux has failed to inform owners of the cause and remedies considering long-term use of the Dryers; 2) that Electrolux has offered no preventative solutions; and 3) that Electrolux has not identified any design changes in newer models that would eliminate the alleged defect.

The Court finds that Mr. Atkins's objections are actually addressed by the terms of the Settlement: 1) Class members are receiving a Safety Notice that informs them that lint must be cleaned from behind the Dryers' drums to reduce the risk of fire and that this cleaning must be performed every 18 months; 2) Electrolux is cleaning eligible Class members' Dryers at no cost to the Class members; and 3) that newer models of Electrolux dryers do not contain the alleged defect or "ball-hitch" design described in Plaintiffs' Complaint.  Mr. Atkins states that he fears that the "suit will permit escaping responsibilities for defective design," however, that ignores the reality of Electrolux's obligations under the terms of the Settlement as well as the fact that Class members are not, nor will they be required to, release any personal injury or property damage claims for past or future Dryer fires.  Mr. Atkins's objection is hereby overruled.

2.     **Objector Ronald Mondary**

Mr. Mondary objects to the Settlement for a number of reasons; however, his objections are the result of a misunderstanding of the Settlement Agreement and issues with Electrolux that appear to have nothing to do with the allegations of this case.  Namely, Mr. Mondary argues that he will be charged for the safety cleaning benefit; however, that benefit will be provided to eligible class members free-of-charge.  Concerning Mr. Mondary's other objections (that his refrigerator

19

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT

MASTER FILE NO. 8:12-cv-01644-CAS-VBK

1  is not, as advertised, energy efficient, or that delivery persons who installed his

2  Electrolux machines robbed his home), those claims are not the subject of this

3  lawsuit, and he retains the right to seek relief concerning those other events, as

4  appropriate, pursuant to another lawsuit if he so chooses. Mr. Mondary's

5  objection is hereby overruled.

6  **B. Objections by those Represented by Counsel**

7  The Court notes that, initially, three objections were filed by objectors

8  represented by counsel July 28, 2014. One of those objections, advanced by

9  Daniel Hall, was later withdrawn after Class Counsel submitted a response to his

10  objection on August 11, 2014.[4] Two objections remain. Neither counsel for the

11  objectors nor the objectors themselves appeared at the Fairness Hearing on August

12  8, 2014. The objectors submitted no evidence or expert testimony in support of

13  their objections.

14  As the Ninth Circuit recognized in *Hanlon v. Chrysler Corp.*:

15  Of course it is possible . . . that [a] settlement could have been better.

16  But this possibility does not mean [a] settlement presented [is] not

17  fair, reasonable or adequate. Settlement is the offspring of

18

19  _____

20  [4] Despite the withdrawal of this objection, the Court notes that the objection would have been overruled in its entirety. It is unclear whether Mr. Hall even had

21  standing to object to the Settlement. The rest of Mr. Hall's objections misunderstand or misread the Settlement Agreement, or provide no evidence or

22  support (besides attorney argument) to advance his objection. For example, the Court overrules Mr. Hall's characterization of the Settlement as providing only

23  "illusory value" to the Class—as stated herein—the benefits to the Class are substantial. Mr. Hall also misinterprets the Settlement Agreement concerning his

24  objections related to the Fire Subclasses—no Class member is required to release his or her personal injury or property damage claims under the Settlement.

25  Finally, no conflicts exist between Class Counsel, the Class Representatives, and the Class. As explained herein, Class Counsel's attorneys' fees request is

26  reasonable and the Class Representatives' settlement of their individual claims does not render them inadequate.

27

20

28  _____

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS
SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES,
COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT

MASTER FILE NO. 8:12-cv-01644-CAS-VBK

compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion. In this regard, the fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness. There [is] no disparate treatment between class members; all stood to benefit equally, a fact which lessens the likelihood that the named Plaintiff and their attorneys colluded with [the defendant] to increase their own recovery at the expense of the unnamed Plaintiff who Class Counsel had a duty to represent. . . . [Objectors who] . . . thought that [their personal claim was being sacrificed for the greater good] had the right to opt out of the class.

*Hanlon*, 150 F.3d at 1027.

The Court addresses the particular objections of the objectors represented by counsel as follows.

### 1. Objector Patrick Sweeney

The Court has considered the objections of Mr. Sweeney, overrules them in their entirety, finds that they are not made for the purpose of benefitting the Class), and finds that they are meritless in all respects. The objections are filed by counsel who routinely files objections to class settlements. *See, e.g., City of Roseville Empls. Ret. Sys. v. Orloff*, 484 F. App'x 138, 141 (9th Cir. 2012) (Mr. Palmer's appeal of an award of attorneys' fees found to be "meritless" and based upon misapprehensions of the law); *Larsen v. Trader Joe's Co.*, No. 11-cv-05188-WHO, 2014 U.S. Dist. LEXIS 95538, **22-24, n.4 (N.D. Cal. July 11, 2014) (overruling objections and recognizing that "[l]ike Darrell Palmer, attorney Patrick Sweeney also has a long history of representing objectors in class action

21

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT

MASTER FILE NO. 8:12-cv-01644-CAS-VBK

proceedings"); *In re Dell Sec. Litig.*, No. A-06-CV-726-SS, ECF No. 342 (W.D. Tex. Jan. 11, 2011) (objection showed "little respect for the intelligence of [the] Court.").[5] Here, as noted in Plaintiffs' response to Mr. Sweeney's objection, the fact that Mr. Palmer's client is also a serial objector in class action matters raises additional issues as to the legitimacy of the objection.

Aside from the fact that the Court finds that the objection is lawyer-driven and appears to be brought for an improper motive, and would otherwise delay important safety benefits to the Settlement Class members, the Court also finds that the objection is without merit, without evidentiary support and rests on inaccurate premises and mischaracterizations of the Settlement.

This is not a "coupon settlement." While a portion of the Settlement provides Settlement Class members with cash rebates and vouchers, it provides numerous other benefits to the Settlement Class Members that specifically address the allegations in Plaintiffs' Complaint—such as safety measures including a notice to consumers, training regarding cleaning and a cleaning program designed to prevent fires. Contrary to Objectors' unsupported arguments, the cleaning benefit is a significant and tangible benefit to Dryer owners and is not a "coupon" or a "discount for services." The cleaning program is neither unreasonably limited nor "valueless" as Mr. Sweeney (and, as discussed below, the other objectors) asserts without support. Further, the Settlement also includes cash payments to

---

[5] The Court notes that Mr. Palmer has faced disciplinary actions in a number of courts, and has a pending disciplinary action before the State Bar of California.

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT

MASTER FILE NO. 8:12-cv-01644-CAS-VBK

individuals who have suffered a fire and cash payments to those individuals who buy a new dryer or other product.  These actual benefits are not "coupons."[6]

The Court finds that Mr. Sweeney's claims that the Settlement is "valueless" are without merit and consist of nothing more than unsupported attorney argument that contradicts the evidence presented to this Court.  As discussed fully herein, the Settlement provides significant safety benefits to the Class and provides real economic relief to Class Members.  The Court finds the valuation of the Settlement performed by Mr. Bernatowicz to be reliable and based upon standard accounting practices, and notes that the Mr. Sweeney has provided no evidence that Mr. Bernatowicz's calculation is "speculative," or "excessive," as his objection so states.[7]  Objectors have not provided their own valuation of the Settlement and have provided no evidence or expert testimony as to what they believe its value might be.  They conclude without support or evidence that the Settlement is simply "valueless."  These conclusory statements cannot be weighed against the significant evidence and expert testimony supporting the value of the Settlement benefits.  *See In re Toyota Unintended Acceleration*, No. 8:10ML 02151 JVS (FMOx), 2013 U.S. Dist. LEXIS 123298, **310-311 (C.D. Cal. July 24, 2013) (rejecting unsupported objections to a

---

[6] The cash rebate program has not been used to value the Settlement, but the Court notes that it does provide additional value to the Class, objectors' arguments to the contrary.

[7] Mr. Sweeney also states that the settlement benefit provided to the Fire Subclass members is of "little value" because he misinterprets the Settlement.  The Settlement is *not capped*, will be *fully-funded* by Electrolux, and does *not* require any release of personal injury or property damage claims (save for the economic loss to the Dryer, itself).  That is, individuals who experience a Dryer fire may recoup dollar for dollar what they paid for their Dryers, and may still pursue their own personal injury or property damage claims.

23

1   proposed fee award where the objectors presented no expert declaration or other

2   evidence undermining the Court's conclusions).

3        Mr. Sweeney also questions whether the Settlement will reduce the risk of

4   fires, and points to the FEMA Report cited by Mr. Bernatowicz as evidence of the

5   average damage caused by a dryer fire in the United States.  Mr. Sweeney

6   provides no expert testimony to support his speculation based on this FEMA

7   report on dryer fire rates or on the rate of failure of Electrolux's Dryers, and his

8   objection on this point is overruled on that basis alone.  In any event, his

9   assumption that the FEMA report forecasts dryer fires or reflects all dryer fires in

10  the United States is inaccurate. As explained by Class Counsel at the Fairness

11  Hearing, the National Fire Incident Reporting System ("NIFRS") data in the

12  FEMA report does not forecast Dryer failure rates.  This is because the NIFRS

13  data only contains data from *fire departments* who *voluntarily* report information

14  on fires where the fire department was actually called.  Mr. Bernatowicz and Dr.

15  van Schoor used Electrolux's own information to forecast potential Dryer fires

16  using broad search terminology in Electrolux's warranty database, which the

17  Court finds to be reliable for purposes of this settlement.  Mr. Bernatowicz's

18  valuation of the benefit provided by the safety cleaning and notice provisions of

19  the Settlement is accepted as reliable by this Court. Mr. Sweeney has provided no

20  evidence to show that this valuation is speculative or inaccurate.

21       Mr. Sweeney's arguments that commonality "may" not exist are likewise

22  overruled.  His argument that commonality may not exist because "every fire is

23  different" or "issues of comparative negligence" may exist is unexplained and

24  lacks merit, given members of the Fire Subclass receive identical benefits (that is,

25  up to the value they paid for the Dryers for economic loss related to the Dryers)

26  under the Settlement and Class Members' property damage or personal injury

27

28

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS
SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES,
COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT
MASTER FILE NO. 8:12-cv-01644-CAS-VBK

claims are *not* released under the Settlement: they (or their insurers) are still able to pursue those claims. Mr. Sweeney's argument that commonality does not exist among the Class members is also without merit because Plaintiffs' claims arise from breach of warranty and violations of state consumer protection laws— damages from those violations which occur at the *point of sale* of the Dryers—not if and when the Dryers catch fire.

Mr. Sweeney's argument that Class Counsel are somehow "inadequate" because they are "putting their own interests ahead of the class" lacks foundation and contradicts the evidence. Sweeney and Palmer never explain their basis for this conclusory statement. Jonathan Marks, the mediator overseeing settlement negotiations, found no evidence of collusion or that counsel put their interests ahead of the Class. Mr. Marks' opinion is compelling and objectors provide no evidence to the contrary. Mr. Sweeney's objection on this basis is overruled.

Mr. Sweeney also takes issue with the requested fee award. The Court has found that Class Counsel's fee request is reasonable, and the information provided to the Court concerning their lodestar and hourly rates is adequate. *See* Section V, *supra*. Mr. Sweeney provides no evidence or expert declaration to contradict Plaintiffs' submissions. As such, his objection to the amount of Plaintiffs' attorneys' fee request is properly overruled. *See In re Toyota Unintended Acceleration*, 2013 U.S. Dist. LEXIS 123298, **310-311 ("All objectors to the proposed fee award contend that it is excessive. As a preliminary matter, the Court notes that none of the objectors have provided an expert declaration or any other evidence undermining the Court's conclusions herein."). As described above in this Court's approval of Attorneys' fees, the multiplier requested by Class Counsel is more than appropriate given the complexity of the case, the work required, the discovery performed, and the results obtained for the Class—which

25

1  are substantial and appropriate.

2       Objectors' argument that the fee petition was not timely filed is also

3  overruled.  Plaintiffs intent to seek attorneys' fees and the amount of those fees

4  have been in the record of this case since April 2014, and both the Plaintiffs'

5  motion for Final Approval and Class Counsel's application for Attorneys' Fees

6  were filed within the deadlines set by this Court.  Plaintiffs' request for

7  Preliminary Approval, filed on April 30, 2014, listed the bases for approval, the

8  terms of the Settlement, attached the Notices and outlined the amount of fees

9  attorneys were seeking.  The Notices also provided Class members with

10  information concerning the amount of fees requested.  Objectors fail to explain

11  how these filings provide insufficient notice regarding the terms of the Settlement

12  and the amount of fees Class Counsel is seeking (especially when the terms are

13  identical).  Plaintiffs' application for attorneys' fees and expenses was filed *prior*

14  to the deadline to submit objections.  Further, the Court notes that this Settlement

15  does not involve a common fund apportioned between relief and fees—and the

16  attorneys' fee award will not reduce any benefits received by the Class.  Thus, any

17  objection regarding a so-called "clear sailing" provision is also overruled.  *See*

18  *Eisen v. Porsche Cars N. Am., Inc.*, No. 2:11-cv-09405-CAS-FFMx, 2014 U.S.

19  Dist. LEXIS 14301, **29-30 (C.D. Cal. Jan. 30, 2014) ("The Settlement

20  Agreement merely provides that PCNA will not object to a fee petition by

21  plaintiffs' counsel so long as the requested fees and costs do not exceed $950,000.

22  This type of provision is appropriate when, as here, it does not impact the

23  substantive benefits offered to the class."); *Calloway v. Cash Am. Net of*

24  *California LLC*, No. 09-CV-04858 RS, 2011 U.S. Dist. LEXIS 41098, **3-5

25  (N.D. Cal. Apr. 12, 2011) (where no common fund exists, no adversarial

26  relationship exists between class counsel and the class concerning fees).  As

27

28

26

1    evidenced by their extensive objections, Mr. Sweeney, represented by Mr. Palmer,

2    appear to have had ample opportunity to review and critique Class Counsel's fee

3    petition and their objection based on the timing of the filing of Plaintiffs' Fee

4    Petition therefore lacks merit.

5        The Court has considered the entirety of Mr. Sweeney's objection and

6    overrules that objection as lacking merit and foundation.

7        ## 2.    Objectors Kristina Newman and Joyce Miller

8        The Court has considered the objections of Ms. Newman and Ms. Miller

9    and overrules them in their entirety.

10       The Court has already held that this is not a "coupon" settlement.  *See*

11   Sections IV.A. and B, V., and VI.B.1., *supra.*   For the same reasons as set forth in

12   the foregoing sections of this Court's Order, Ms. Newman and Ms. Miller's

13   objections on this point are likewise overruled.

14       The Court also overrules Newman and Miller's objections regarding the

15   purported "lack of benefit" the Settlement provides the Settlement Class for the

16   same reasons contained in Sections IV.A. and B, V., and VI.B.1., *supra.*  As fully

17   set forth therein, the Settlement provides numerous benefits to the Settlement

18   Class Members that specifically address the allegations in Plaintiffs' Complaint—

19   such as safety measures including a notice to consumers, training regarding

20   cleaning, and a cleaning program designed to prevent fires. The Settlement also

21   includes cash payments to individuals who have suffered a fire and cash payments

22   to those individuals who buy a new dryer or other product.  No part of the

23   Settlement requires class members to release personal injury or property damage

24   claims above the economic loss to the Dryers, themselves.

25       Ms. Newman and Ms. Miller provide no expert testimony or evidentiary

26   support for their objection that the Settlement is "without benefit."   Their

27

28

1   objections cannot properly be weighed against the ample evidence and expert

2   testimony before this Court supporting the valuation of the Settlement benefits.

3   *See supra* Section VI.B.1.

4           The Court also overrules the objection and finds that the claims procedure is

5   reasonable and adequate.  Further, the acceptable documentation to prove that

6   Subclass members experienced a fire suggested in the Settlement papers (such as

7   photographs of the Dryer, fire department reports, or documentation from

8   insurance companies) are more than reasonable, especially considering that Class

9   Counsel may meet-and-confer with Electrolux to resolve any claims that are

10  denied for lack of sufficient documentation.[8]

11          The objectors also takes issue with the requested attorneys' fees and

12  incentive awards; however, as noted herein, Class Counsel has provided adequate

13  support to justify their reasonable fee request, and the fee request is further

14  supported by the valuation of the Settlement benefits.  *See* discussion *supra*

15  Section VI.B.1.  As described above in this Court's approval of attorneys' fees,

16  the multiplier requested by Class Counsel is more than appropriate given the

17  complexity of the case, the work required, the discovery performed, and the

18  results obtained for the Class.  *See supra* Section V.

19          Finally, neither Class Counsel nor the Class Representatives placed their

20  interests ahead of the interests of the absent Class members—as the objectors

21  erroneously suggest.  As is shown in the evidence submitted by the mediator, Mr.

22  Marks, there was no collusion in negotiating the attorneys' fees in this matter and

23

24  ――――――――――――――――

25  [8] One consumer objector (Mr. Olesh) withdrew his objection on this basis after
    discussing the many different types of supporting documentation he could submit

26  to support his claim as a Subclass member.  *See* Declaration of Amy E. Keller
    (ECF No. 163).

27                                          28

28

those fees were negotiated *separate and apart* from the Class Settlement. The Class Representatives' settlement of their own personal property damage claims—separate and apart from the Settlement and without reducing any of the Settlement benefits—does not make them inadequate representatives, nor does it implicate any breach of fiduciary duty to the absent Class members by Class Counsel. *See supra* Section V.

The Court has considered the objections raised by Ms. Newman and Ms. Miller, and overrules them in their entirety.

## VII. EXCLUSIONS FROM THE SETTLEMENT CLASS

The Court notes, as it did in its discussion regarding objectors to the Settlement, that the reaction to the Settlement has been overwhelmingly positive. The Settlement Administrator has received requests for exclusion from 62 members of the Settlement Class, and has provided Class Counsel and Electrolux's counsel copies of those requests. Class Counsel and Electrolux's counsel have jointly filed with the Court a list of those persons who have timely elected to be excluded. All persons named in the list on file with the Court as having filed timely exclusions with the Settlement Administrator are hereby excluded from the Settlement Class and will not be bound by the terms of the Settlement. Each individual or entity who falls within the definition of the Settlement Class shall be bound by the terms of the Settlement.

## VIII. IMPLEMENTATION OF SETTLEMENT

Consistent with the Settlement Agreement, Electrolux shall make the payments described in the Settlement Agreement, including, without limitation, payment to each Settlement Class Member of the cash rebate amount, free Dryer cleaning service, or cash reimbursement for a dryer fire, pursuant to applicable terms and documentation requirements set forth in the Settlement Agreement. The

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT

MASTER FILE NO. 8:12-cv-01644-CAS-VBK

1    Parties shall carry out their respective obligations as stated in the Settlement

2    Agreement.

3    **IX.    RELEASE, COVENANT NOT TO SUE, AND EFFECT OF**

4    **SETTLEMENT**

5        **A.    Release**

6            **1.    Settlement Class Members Who Are Not Members of**

7                **the Past or Future Dryer Fire Subclass**

8            In consideration of the terms of the Settlement Agreement, as to Plaintiffs

9    and Settlement Class Members who are not members of the Past Dryer Fire

10   Subclass or currently members of the Future Dryer Fire Subclass, they are hereby

11   found, deemed, and adjudged to have fully, finally, and forever released and

12   discharged all known and unknown claims, actions, and causes of action dealing

13   whatsoever with the Dryers, other than claims for personal injury or property

14   damage.  If any Class member becomes a member of the Future Dryer Fire

15   Subclass in the future, he or she does not waive his or her ability to pursue

16   additional compensation pursuant to this Settlement.  Plaintiffs have expressly,

17   knowingly, and voluntarily waived the provisions of Section 1542 of the

18   California Civil Code, which provides as follows, "A general release does not

19   extend to claims which the creditor does not know or suspect to exist in his favor

20   at the time of executing the release, which if known by him must have materially

21   affected his settlement with the debtor."

22           Plaintiffs have expressly waived and relinquished all rights and benefits that

23   they may have under, or that may be conferred upon them by, the provisions of

24   Section 1542 of the California Civil Code and of all similar laws of other States, to

25   the fullest extent that they may lawfully waive such rights or benefits pertaining to

26   their released claims.

27

28

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS
SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES,
COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT
MASTER FILE NO. 8:12-cv-01644-CAS-VBK

### 2. Members of the Past Dryer Fire Subclass or Future Dryer Fire Subclass

In consideration of the terms of the Settlement Agreement, as to members of the Past Dryer Fire Subclass or for those individuals who become members of the Future Dryer Fire Subclass, they are hereby found, and will be found, deemed, and adjudged to have fully, finally, and forever released and discharged all known and unknown claims, actions, and causes of action for economic loss dealing whatsoever with the Dryers, specifically excluding claims for personal injury or damage to property other than the Dryers. Plaintiffs have expressly, knowingly, and voluntarily waived the provisions of Section 1542 of the California Civil Code, which provides as follows, "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

Plaintiffs have expressly waived and relinquished all rights and benefits that they may have under, or that may be conferred upon them by, the provisions of Section 1542 of the California Civil Code and of all similar laws of other States, to the fullest extent that they may lawfully waive such rights or benefits pertaining to their released claims.

The Court shall retain jurisdiction over the Parties and the Agreement with respect to the future performance of the terms of the Agreement, and to assure that all payments and other actions required of any of the Parties by the Settlement are properly made.

### B. Covenant Not to Sue

In consideration of the terms of the Settlement Agreement, all Settlement Class Members, including Plaintiffs, are hereby found, deemed, and adjudged to

31

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT

MASTER FILE NO. 8:12-cv-01644-CAS-VBK

have (a) covenanted and agreed that neither Plaintiffs nor any of the Settlement Class Members, nor anyone authorized to act on behalf of any of them, will commence, authorize, or accept any benefit from any judicial or administrative action or proceeding, other than as expressly provided for in this Settlement, against Releasees (as defined in the Settlement Agreement), or any of them, in either their personal or corporate capacity, with respect to any claim, matter, or issue that in any way arises from, is based on, or relates to any alleged loss, harm, or damages allegedly caused by Releasees, or any of them, in connection with the Released Claims (as defined in the Settlement Agreement); (b) waive and disclaim any right to any form of recovery, compensation, or other remedy in any such action or proceeding brought by or on behalf of any of them; and (c) agree that the Settlement Agreement shall be a complete bar to any such action.

C.    **Settlement Agreement as Exclusive Remedy for Released Claims**

Upon entry of this Order and Judgment, enforcement of the Settlement Agreement shall be the exclusive remedy for all members of the Settlement Class, including Plaintiffs, all of whom are hereby permanently barred and enjoined from instituting, commencing, prosecuting or continuing to prosecute, either directly or indirectly, any claims released under the Settlement Agreement against Electrolux or Releasees, as the release provisions of the Settlement Agreement define these terms.  Settlement Class Members who are prosecuting or asserting any of the released claims are ordered to take whatever measures necessary to effectuate dismissal of their claims.

D.    ***Effect of a Final Judicial Determination of Invalidity or Unenforceability***

If, after entry of this Final Order and Judgment by the Court, a notice of

32

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT

MASTER FILE NO. 8:12-cv-01644-CAS-VBK

appeal of this Final Order and Judgment is timely filed by any party, objector, claimant, or other person or entity, and if an appellate court makes a final determination that this Final Order and Judgment is in any respect invalid, contrary to law, or unenforceable (except for such determinations that are limited to the attorneys' fees or incentive awards), this Order shall be automatically vacated, the Settlement Agreement shall be null and void, and Electrolux may fully contest certification of any class as if no Settlement Class or subclasses had been certified.  In addition, the Parties shall return to their respective positions in this lawsuit as they existed immediately before the Parties executed the Settlement Agreement, and nothing stated herein or in the Settlement Agreement shall be deemed an admission or waiver of any kind by any of the Parties or used as evidence against, or over the objection of, any of the Parties for any purpose in this action or in any other action.

## X.     NO ADMISSION OF LIABILITY

The Parties entered into the Settlement Agreement solely for the purpose of compromising and settling disputed claims.  Nothing contained in the Settlement Agreement, any documents relating to the Settlement, the Preliminary Approval Order, or this Final Order and Judgment shall be construed, deemed, or offered as an admission by any of the Parties or any member of the Settlement Class for any purpose in any judicial or administrative action or proceeding of any kind, whether in law or equity.  In entering this Order with this provision and other limiting provisions, this Court specifically refers to and invokes the Full Faith and Credit Clause of the United States Constitution and the doctrine of comity and requests that any court in any other jurisdiction reviewing, construing, or applying this Order implement and enforce such limiting provision.

## XI.   ENTRY OF FINAL JUDGMENT

The Court hereby dismisses with prejudice all claims alleged in this action. The Court further orders the entry of, and enters, this Final Order and Judgment on all claims, counts, and causes of action alleged in this action by Plaintiffs, on behalf of themselves, the Settlement Class, or both.  In entering this Final Order and Judgment, this Court specifically refers to and invokes the Full Faith and Credit Clause of the United States Constitution and the doctrine of comity, and requests that any court in any other jurisdiction reviewing, construing, or applying this Judgment implement and enforce its terms in their entirety.

Without affecting the finality of this Final Order and Judgment in any way, this Court hereby reserves jurisdiction over (1) implementation of this Settlement and this action; (2) all matters relating to the administration and consummation of the Settlement; and (3) all Parties to this action for the purpose of implementing, enforcing, and monitoring compliance with, effectuating, administering, and interpreting the provisions of Settlement Agreement and this Final Order and Judgment.

In issuing this Order, the Court grants final approval to the Settlement, awards the requested attorneys' fees and costs, awards the requested incentive payments to the Class Representatives, and overrules the objections as stated herein.

IT IS SO ORDERED.

Dated: September 11, 2014

Honorable Christina A. Snyder
United States District Judge

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT

MASTER FILE NO. 8:12-cv-01644-CAS-VBK

# EXHIBIT 5

1

2

3

4

5

6

7

8           **UNITED STATES DISTRICT COURT**

9         **SOUTHERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11 SKYE ASTIANA, et al., individually and on behalf of all others similarly | CASE NO. 11-CV-1967-H (BGS)[1] |
| 12 situated, | **FINAL JUDGMENT AND** |
| 13             Plaintiffs, | **ORDER:** |
| 14   vs. | **(1) CERTIFYING SETTLEMENT CLASS;** |
| 15 | **(2) GRANTING FINAL** |
| 16 | **APPROVAL OF CLASS SETTLEMENT;** |
| 17 KASHI COMPANY, | **(3) APPROVING** |
| 18            Defendant. | **PLAINTIFFS' REQUEST FOR ATTORNEYS' FEES,** |
| 19 | **COSTS, AND INCENTIVE AWARD** |
| 20 | |

21       On July 29, 2014, Plaintiffs Skye Astiana, Milan Babic, Tamara Diaz, Tamar

22 Larsen, and Kimberly S. Sethavanish ("Plaintiffs") filed a motion for final approval of

23 class settlement and certification of the settlement class. (Doc. No. 229.) On July 29,

24 2014, Plaintiffs also filed a motion for attorneys' fees, expenses and costs, and

25 incentive awards for the class representatives. (Doc. No. 230.) Three class members

26

----

27      [1]This is the lead case in consolidated cases 11-CV-2256-H (BGS), 11-CV-2285-H (BGS), 11-CV-2637-H (BGS), 11-CV-2356-H (BGS), 11-CV-2629-H (BGS), and 11-CV-

28 2816-H (BGS). (Doc. Nos. 16, 22.)

filed objections to the settlement agreement. (Doc. Nos. 232, 233, and 235.) The Court held a hearing on September 2, 2014. No objectors appeared at the hearing. Attorneys Antonio Vozzolo, Joseph Kravec, Jr., Marc Godino, Michael Braun, and Rosemary Rivas appeared telephonically for Plaintiffs. Attorney Dean Panos appeared telephonically for Defendant. After due consideration, the Court certifies the settlement class, grants final approval of the settlement, approves Plaintiffs' request for attorneys' fees and expenses, approves the incentive awards for the class representatives, and enters final judgment.

**Background**

## I. Factual and Procedural Background

This is a consumer class action lawsuit brought on behalf of people who have purchased Kashi food products. Plaintiffs claim the products contained deceptive and misleading labeling and advertisements. (Doc. No. 49 ¶¶ 1-2.) Plaintiffs allege that Defendant packaged, marketed, distributed, and sold Kashi products as being "All Natural" or containing "Nothing Artificial." (Id.) Plaintiffs claim certain ingredients or processes used to manufacture Kashi products are not "natural," but rather are synthetic. (Id.)

In 2011, Plaintiffs filed class action complaints against Kashi in this Court in the following cases: Bates v. Kashi Company, et al., 11-cv-1967; Babic v. Kashi Company, 11-cv-2816; Espinola v. Kashi Company, 11-cv-2629 (initially filed in the United States District Court for the Central District of California (11-cv-8534)); Diaz v. Kashi Company, et al., 11-cv-2256; Chatham v. Kashi Company, et al., 11-cv-2285; Sethavanish, et al. v. Kashi Company, 11-cv-2356 (initially filed in the United States District Court for the Northern District of California (11-cv-4453)); and Baisinger v. Kashi Company, 11-cv-2367 (initially filed in the United States District Court for the Northern District of California (11-cv-4581)).

On November 28, 2011, the Court ordered the consolidation of the actions against Kashi. (Doc. No. 16; see also Doc. No. 22.) On January 18, 2012, the Court

appointed the law firms of Stember Feinstein Doyle & Payne, LLC and Faruqi & Faruqi, LLP as interim co-lead counsel. (Doc. No. 41.)

On February 21, 2012, Plaintiffs filed a Consolidated Amended Complaint against Kashi Company, Kashi Sales, LLC and Kellogg Company that amended and superseded the Original Complaints. (Doc. No. 49.) On April 6, 2012, Defendants filed a motion to dismiss the Consolidated Amended Complaint. (Doc. No. 61.) On July 16, 2012, the Court granted in part and denied in part Defendants' motion to dismiss. (Doc. No. 79.) The Court dismissed all of Plaintiffs' claims against Kashi Sales, LLC and Kellogg Company. (Id. at 11-13.)

On August 15, 2012 Kashi answered the Consolidated Amended Complaint. (Doc. No. 81.) The parties engaged in extensive discovery, including depositions of Kashi's marketing expert, multiple sets of requests for production of documents and interrogatories, and several subpoenas to third parties. (Doc. No. 220-1 at 15.) Further, Kashi deposed the named Plaintiffs as well as Plaintiffs' marketing expert. (Id.)

On April 15, 2013, Plaintiffs filed a motion for class certification. (Doc. No. 108.) On July 30, 2013, the Court certified a class of California purchasers of Kashi products marketed and labeled as containing "Nothing Artificial" that contained "Pyridoxine Hydrochloride, Alpha-Tocopherol Acetate and/or Hexane-Processed Soy ingredients." (Doc. No. 148 at 25-26.) The Court also certified a class of California purchasers of Kashi products marketed and labeled as "All Natural" that contained "Pyridoxine Hydrochloride, Calcium Panthothenate and/or Hexane-Processed Soy ingredients." (Id. at 26.) The Court appointed Faruqi & Faruqi, LLP and Feinstein Doyle Payne & Kravec, LLC as co-lead counsel. (Id.)

On August 12, 2013, Kashi filed a petition to appeal the Court's class certification order pursuant to Federal Rule of Civil Procedure 23(f) in the United States Court of Appeals for the Ninth Circuit. (Doc. No. 150.) On October 24, 2013, the Ninth Circuit denied Kashi's petition for permission to appeal the District Court's

class certification ruling. (Doc. No. 178.)

On August 27, 2013, Plaintiffs moved for partial reconsideration of the Court's class certification order. (Doc. No. 157.) On August 28, 2013, Kashi moved for partial reconsideration of the Court's class certification order. (Doc. No. 160.) On September 18, 2013, the Court denied both Plaintiffs' and Kashi's motions for reconsideration. (Doc. No. 173.)

On October 24, 2013, Kashi filed an additional motion to modify the Court's class certification order. (Doc. No. 182.) On November 22, 2013, the Court denied Kashi's motion to modify the Court's class certification order. (Doc. No. 203.)

On October 23, 2013 and December 5, 2013 the parties participated in mediation sessions conducted by an experienced mediator. (Doc. No. 219 ¶ I.M; Doc. No. 220-1 at 17.) With the mediator's assistance, the parties reached a settlement. (Doc. No. 219 ¶ I.M; Doc. No. 220-1 at 18.) On May 2, 2014, the parties entered into a Stipulation of Settlement. (Doc. No. 219.)

On May 2, 2014, Plaintiffs filed a motion for preliminary approval of the settlement, conditional certification of the settlement class, and approval of the class notice. (Doc. No. 220.) On May 27, 2014, the Court granted preliminary approval of the settlement, provisionally certified a settlement class under Federal Rule of Civil Procedure 23(b)(3), and approved the form and manner of notice. (Doc. No. 222 at 13.) On July 29, 2014, Plaintiffs filed a motion for final approval of class settlement and certification of the settlement class. (Doc. No. 229.) On July 29, 2014, Plaintiffs also filed a motion for attorneys' fees, expenses and costs, and incentive awards for the class representatives. (Doc. No. 230.) Three class members filed objections to the settlement agreement. (Doc. Nos. 232, 233, and 235.) On August 28, 2014, Plaintiffs filed a response in support of the motion for final settlement approval and response to the objections. (Doc. No. 238.)

///

///

11cv1967

## II.    The Settlement

The settlement provides relief to a settlement class comprising California residents who, at any time between August 24, 2007 and May 1, 2014, purchased any of the Kashi products labeled "All Natural" or "Nothing Artificial" that contained any of the Challenged Ingredients.  (See Doc. No. 219 ¶¶ II.A.1 (listing all the Challenged Ingredients); II.A.23 (listing all relevant Kashi products).)  Excluded from the class are: (a) Kashi's employees, officers and directors; (b) persons or entities who purchased the Kashi products for the purpose of re-sale; (c) retailers or re-sellers of the Kashi products; (d) governmental entities; (e) persons who timely and properly exclude themselves from the settlement class; and (f) the Court, the Court's immediate family, and Court staff.  (Id. ¶ II.A.5.)

The settlement provides for monetary relief to the settlement class by requiring Kashi to pay $5 million into a settlement fund.  (Id. ¶ IV.A.2.)  The settlement fund pays any necessary taxes and tax expenses, all costs associated with the Class Action Settlement Administrator, including costs of providing notice to the settlement class members and processing claims and all costs relating to providing the necessary notices in accordance with the Class Action Fairness Act of 2005, any award of fees and expenses made by the Court to class counsel, any incentive award made by the Court to the class representatives, and payments to authorized claimants.  (Id. ¶ IV.A.2.b.)

The settlement also provides that class counsel may apply for an award of attorneys' fees and reimbursement for expenses from the settlement fund of up to $1,250,000 and each named Plaintiff may apply for a $4,000 incentive award from the settlement fund.  (Id. ¶¶ VIII.A, VIII.C.)

Settlement class members may seek reimbursement of $0.50 per package for every Kashi product purchased from August 24, 2007 to May 1, 2014.[2]  (Id. ¶ IV.A.1.) Settlement class members may seek reimbursement by presenting written proof of

---

[2]Because the number of claims did not exhaust the settlement fund, class members will receive approximately $4.30 for each product claimed.  (Doc. No. 238 at 11.)

purchase in the form of a receipt or a retail rewards submission, in which case there is no limit on the amount of their recovery. (Id.) Settlement class members may seek reimbursement without presenting written proof of purchase by submitting a valid claim form, in which case there is a maximum recovery of $25 per household. (Id.) If the total amount of eligible claims exceeds the $5 million settlement fund, then each claimant's award will be proportionately reduced. (Id. ¶ IV.A.3.) If, after all valid claims (plus other authorized costs and expenses) are paid, money remains in the settlement fund, the remaining amount will be used to increase pro rata the recovery of each eligible claim. (Id.)

Furthermore, the proposed settlement requires Kashi to modify its labeling and advertising to remove "All Natural" and "Nothing Artificial" from those products that contain the following Challenged Ingredients:

> (i) pyridoxine hydrochloride, calcium pantothenate and/or hexane-processed soy ingredients in products labeled "All Natural," and (ii) pyridoxine hydrochloride, alpha-tocopheral acetate and/or hexane-processed soy ingredients in products labeled "Nothing Artificial," unless the ingredients are approved or determined as acceptable for products identified as "natural" by a federal agency or controlling regulatory body. (Id. ¶ IV.B.)

In exchange, class members, other than those who opt-out, agree to release all claims asserted in the Consolidated Amended Complaint relating to Kashi's packaging, marketing, distribution, or sale of food products labeled as "All Natural" or "Nothing Artificial." (Id. ¶ VII.)

## III.   Class Members' Notice of Settlement

On June 9, 2014, The Garden City Group ("GCG"), the settlement administrator, commenced the notice plan. (Doc. No. 229-14, Declaration of Jennifer M. Keough ("Keough Decl.") ¶ 6.) GCG published notice of the settlement once in the California editions of People Magazine, Parade, and USA Weekend, published four consecutive weekly notices in the San Diego Union-Tribune, Los Angeles Times, San Francisco Chronicle, and Sacramento Bee, and issued a press release containing notice of the settlement. (Id. ¶¶ 7, 11.) Additionally, GCG established a website and a toll-free

telephone number to provide information about the settlement to potential class members. (Id. ¶¶ 12, 14.) GCG also purchased Internet banner notices through the Xaxis Premium Network, Yahoo.com, and Advertising.com that contained a brief statement advising class members of the settlement and took those who clicked on the banner notices to the settlement website. (Id. ¶ 10.) Finally, GCG mailed notice packets to those settlement class members who so requested. (Id. ¶ 13.) GCG estimated that notice reached 83% of the class members. (Id. ¶ 5.)

As of July 24, 2014, the settlement website had 59,814 visits, the toll-free telephone number received 502 calls, and GCG mailed 328 notice packets to potential class members. (Id. ¶¶ 12-14.) No class member has opted-out of the settlement. Three class members have filed objections to the settlement agreement. (See Doc. Nos. 232, 233, and 235.)

## Discussion

When the parties reach a settlement agreement prior to class certification, the Court is under an obligation to "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003). Thus, the court must first assess whether a class exists, and second, determine whether the proposed settlement is "fundamentally fair, adequate, and reasonable." Id.

## I. Class Certification

A plaintiff seeking to certify a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure must first satisfy the requirements of Rule 23(a). Fed. R. Civ. P. 23(b). Once subsection (a) is satisfied, the purported class must then fulfill the requirements of Rule 23(b)(3). Here, Plaintiffs seek to certify a class for settlement purposes consisting of all California residents who, at any time between August 24, 2007 and May 1, 2014 purchased any of the Kashi products labeled "All Natural" or "Nothing Artificial" that contained any of the Challenged Ingredients. (See Doc. No. 219 ¶¶ II.A.1 (listing all the Challenged Ingredients); II.A.23 (listing all relevant Kashi

products).)

## A. Rule 23(a) Requirements

Rule 23(a) establishes that one or more plaintiffs may sue on behalf of class members if all of the following requirements are met: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a).

The numerosity prerequisite is met if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiffs assert that the class consists of thousands of consumers, and notes that Kashi has sold millions of units in the United States in the past four years. (Doc. No. 108-1 at 22.) Accordingly, the class satisfies the numerosity requirement.

The commonality prerequisite is met if there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Rule 23(a)(2) is construed permissively. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). "[T]he key inquiry is not whether the plaintiffs have raised common questions, 'even in droves,' but rather, whether class treatment will 'generate common answers apt to drive the resolution of the litigation.'" Abdullah v. U.S. Sec. Associates, Inc., 731 F.3d 952, 957 (9th Cir. 2013) (quoting Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011)). Here, there are questions of law and fact that are common to the class, such as whether settlement class members were exposed to advertising using the terms "All Natural" or "Nothing Artificial" and purchased Kashi products containing the Challenged Ingredients based on those representations. Accordingly, the class satisfies the commonality requirement.

Typicality requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A plaintiff's claims are "'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020. Typicality requires that a representative plaintiff "possess the same interest and suffer the same injury as the class members." Gen. Tel. Co. of the Southwest v. Falcon, 457

U.S. 147, 156 (1982). Here, Plaintiffs and settlement class members purchased a Kashi product based on alleged misrepresentations and false advertising. (Doc. No. 49 ¶¶ 1-2.) As Plaintiffs' claims are reasonably co-extensive with the claims of absent class members, the class satisfies the typicality requirement.

Adequacy of representation under Rule 23(a)(4) requires that the class representative be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Representation is adequate if the named plaintiff and class counsel (1) do not have any conflicts of interest with other class members and (2) will prosecute the action vigorously on behalf of the class. Hanlon, 150 F.3d 1020. Here, there are no conflicts of interest between Plaintiffs and the absent class members. Additionally, Plaintiffs have participated in the litigation process and discovery. (Doc. No. 229-1 at 25.) Class counsel have extensive experience and expertise in prosecuting consumer class actions related to food labels. (Doc. No. 229-1 at 26.) As a result, Plaintiffs and their counsel are adequate representatives of the proposed class. For the foregoing reasons, Plaintiffs have met all of the requirements of Rule 23(a).

## B. Rule 23(b)(3) Requirements

Rule 23(b)(3) requires the court to find that: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members;" and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These requirements are referred to as the "predominance" and "superiority" tests. See Vinole v. Countywide Home Loans, Inc., 571 F.3d 935, 944 (9th Cir. 2009). Rule 23(b)(3)'s predominance and superiority requirements are designed "to cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" Amchem Products, Inc. v. Windsor, 521 U.S. 591, 615 (1997) (quoting Advisory Committee's Notes on Fed. R. Civ. P. 23, 28 U.S.C. App., pp. 696-97).

### 1. Predominance

"The main concern in the predominance inquiry [is] the balance between individual and common issues." In re Wells Fargo Home Mortg. Overtime Pay Litigation, 571 F.3d 953 (9th Cir. 2009). This analysis requires more than proof of common issues of law and fact. Hanlon, 150 F.3d at 1022. Rather, the common questions should "present a significant aspect of the case and . . . be resolved for all members of the class in a single adjudication." Id. (internal quotation omitted).

Courts have found that common factual issues involving a single advertisement seen by all class members can predominate over individual issues. See Weeks v. Kellogg Co., No. 09-8102, 2011 U.S. Dist. LEXIS 155472 (C.D. Cal. Nov. 23, 2011) (certifying a class under Rule 23(b)(3) alleging that defendant's marketing campaign that certain of its cereal products can support a family's immune system was false and misleading). On the basis of additional evidence after the certification order, and after considering the merits, the parties have agreed that an expanded settlement class encompassing all the Challenged Ingredients best resolves the common questions regarding Kashi's alleged conduct. (Doc. No. 220-1 at 30; 36.) The Court agrees.

For the purposes of class certification, it is sufficient that the statements regarding the "All Natural" and "Nothing Artificial" products were part of common advertising to which the entire class was exposed, and is a sufficiently definite representation whose accuracy has been legitimately called into question. See Hanlon, 150 F.3d at 1019-22; Wolin v. Jaguar Land Rover N. Am., LLC, 617 F.3d 1168, 1173 (9th Cir. 2010). Accordingly, Plaintiffs have met their burden to show that the issues common to the class predominate over the individual issues. Fed. R. Civ. P. 23(b)(3).

### 2. Superiority

"Rule 23(b)(3)'s superiority test requires the court to determine whether maintenance of this litigation as a class action is efficient and whether it is fair." Wolin, 617 F.3d at 1175-76. Notably, the class action method is considered to be superior if "classwide litigation of common issues will reduce litigation costs and

promote greater efficiency." Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996) (citation omitted). Here, there is no evidence that absent class members wish to pursue their claims individually. Further, class-wide treatment of these issues will be efficient as the settlement class members' claims appear to involve a relatively small amount of damages per member. (See generally Doc. No. 49.) Accordingly, the class action meets the superiority requirement. As Plaintiffs have satisfied the requirements of Rule 23(b)(3), the Court certifies the settlement class.

## II. Settlement

Rule 23(e) requires a court to determine whether a proposed settlement is "fundamentally fair, adequate, and reasonable." Staton, 327 F.3d at 959 (quoting Hanlon, 150 F.3d at 1026). To make this determination, a court must consider a number of factors, including: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement. Staton, 327 F.3d at 959. In addition, the settlement may not be the product of collusion among the negotiating parties. In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000) (citing Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1290 (9th Cir. 1992)).

In determining whether a proposed settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." In re Heritage Bond Litigation, 2005 WL 1594403, at *2 (C.D. Cal. June 10, 2005) (citing Class Plaintiffs v. Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992)). The Ninth Circuit favors deference to the "private consensual decision of the [settling] parties," particularly where the parties are represented by experienced counsel and negotiation has been facilitated by a neutral party, in this instance, a private mediator and a magistrate judge. See Rodriguez v.

West Publishing Corp., 563 F.3d 948, 965 (9th Cir. 2009). "In reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlements by considering the likelihood of a plaintiff's or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value." Id.

### A.     The Strength of Plaintiffs' Case and Risk of Further Litigation

Both parties have expended significant time, effort, and resources supporting their positions, and would continue to do so if the settlement failed to get final approval. (Doc. No. 229-1 at 21-22.)  The disputed factual and legal issues would be complex and costly to resolve at trial. (Id. at 22-24.)  Both parties have considered the uncertainty and risk of the outcome of future litigation, the burdens of proof for liability and damages, as well as the general difficulties and delays of litigation. (Id. at 21-24.)  These considerations led the parties to conclude that a timely settlement would be best for all involved parties. See Linney v. Cellular Alaska Partnership, 151 F.3d 1234, 1242 (9th Cir. 1998) ("[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlement.") (emphasis, internal quotation marks, and citation omitted).  The Court agrees that the recovery through settlement confers a substantial benefit to the class that outweighs the potential recovery that could have been obtained through full litigation.

### B.     The Amount Offered in Settlement

The proposed settlement provides class members with immediate monetary relief by establishing a common fund of $5 million.  Class members may recover $0.50 per package, without limitation, for every Kashi product purchased during the class period for which the member provides written proof of purchase.  Settlement class members may seek reimbursement without presenting written proof of purchase by submitting a valid claim form, in which case there is a maximum recovery of $25 per household. If money remains in the settlement fund after all valid claims, fees, and expenses are paid, the remaining amount will be used to increase pro rata the recovery of each

eligible claim.[3]  Additionally, the proposed settlement requires Kashi to modify its labeling and advertising to remove "All Natural" and "Nothing Artificial" from those products that contain the Challenged Ingredients.  This settlement is a good result for the class and eliminates the risks, expenses, and delay associated with continued litigation.  Moreover, the settlement amount is the result of arm's-length negotiation conducted by experienced counsel.  Accordingly, the Court concludes that the amount offered in settlement weighs in favor of granting final approval of the settlement.

### C.    The Extent of Discovery Completed and Stage of the Proceedings

In the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, "'formal discovery is not a necessary ticket to the bargaining table.'"  Linney, 151 F.3d at 1239 (quoting In re Chicken Antitrust Litig., 669 F.2d 228, 241 (5th Cir.1982)).

The parties reached settlement over two years after the first complaint was filed and after extensive discovery and analysis of Plaintiffs' claims.  (Compare Doc. No. 1 with Doc. No. 219; Doc. No. 229-1 at 25-26.)  Defendant produced, and Plaintiffs' counsel reviewed, thousands of pages of documents, including technical and scientific documents, marketing and business plans, product packaging and labels, and email communications.  (Doc. No. 229-1 at 25-26; Doc. No. 229-2, Declaration of Antonio Vozzolo ("Vozzolo Decl.") ¶ 43.)  Defendant deposed the class representatives and Plaintiffs' marketing expert, and Plaintiffs deposed several individuals, including Defendant's marketing expert.  (Doc. No. 229-1 at 25; Doc. No. 229-2, Vozzolo Decl. ¶ 16.)  Class counsel were able to negotiate the settlement based on a full record and a thorough understanding of the strengths and weaknesses of the claims.  Accordingly, the parties' extensive investigation, discovery, and subsequent settlement discussions weigh in favor of granting final approval.

///

---

[3]Because the number of claims did not exhaust the settlement fund, class members will receive approximately $4.30 for each product claimed.  (Doc. No. 238 at 11.)

**D.      The Experience and Views of Counsel**

Plaintiffs' counsel has extensive experience acting as class counsel in consumer class action cases, including cases involving false advertising claims.  (See Doc. No. 229-1 at 26; Doc. No. 229-2, Vozzolo Decl. ¶ 41.)  Class counsel recommend the settlement as both fair and adequate, a factor that weighs in favor of granting final approval.  (Doc. No. 229-1 at 26; Doc. No. 229-2, Vozzolo Decl. ¶ 46.)

**5.      The Reaction of the Class Members to the Proposed Settlement**

As of July 24, 2014, the settlement website has been visited 59,814 times and the settlement administrator, GCG, has received 502 calls on a case-dedicated, toll-free telephone number.  (Doc. No. 229-14, Keough Decl. ¶¶ 12, 14.)  Additionally, GCG mailed 328 notice packets to potential class members who requested such packets. (Id. ¶ 13.)  No class member had opted-out of the settlement as of July 24, 2014, and only three class members have filed objections to the settlement agreement.  (Id. ¶ 15.; see Doc. Nos. 232, 233, and 235.)  The small number of objectors supports the fairness, reasonableness, and adequacy of the settlement.  See In re Austrian & German Bank Holocaust Litig., 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." (citations omitted)); Boyd v. Bechtel Corp., 485 F. Supp. 610, 624 (N.D. Cal. 1979) (finding "persuasive" the fact that 84% of the class had filed no opposition). Accordingly, the reaction of the class members weighs in favor of granting final approval.

**6.      No Evidence of Collusion Between the Parties**

The collusion inquiry addresses the possibility the agreement is the result of either overt misconduct by the negotiators or improper incentives of certain class members at the expense of other members of the class.  Stanton, 327 F.3d at 960.  In the present case, because there is no evidence of overt misconduct, the Court's inquiry focuses on the aspects of the settlement that lend themselves to self-interested action.

The $4,000 incentive awards for Plaintiffs Skye Astiana, Milan Babic, Tamara

11cv1967

1   Diaz, Tamar Larsen, and Kimberly S. Sethavanish do not appear to be the result of

2   collusion. The Court evaluates incentive awards using "'relevant factors including the

3   actions the plaintiff has taken to protect the interests of the class, the degree to which

4   the class has benefitted from those actions, . . .[and] the amount of time and effort the

5   plaintiff expended in pursuing the litigation . . . .'" <u>Staton</u>, 327 F.3d at 977 (quoting

6   <u>Cook v. Niedert</u>, 142 F.3d 1004, 1016 (7th Cir. 1998)). In the present case, Plaintiffs

7   have protected the interests of the class by engaging in investigation and discovery,

8   each attending a deposition, and assisting counsel with other aspects of the case. (Doc.

9   No. 229-2, Vozzolo Decl. ¶ 79; Doc. No. 229-13, Declaration of Joseph N. Kravec, Jr.

10  ("Kravec Decl.") ¶ 7.) Therefore, the $4,000 award to each of the class representatives

11  appears to be reasonable in light of their efforts in this litigation.

12      Finally, the attorneys' fees do not appear to be the result of collusion. Plaintiffs'

13  counsel may simultaneously negotiate the merits of the action and their attorneys' fees.

14  <u>Stanton</u>, 327 F.3d at 971. The attorneys' fees, litigation costs, and administration costs

15  sought by Plaintiffs' counsel are reasonable under the circumstances.

16      The Court has reviewed the objectors' arguments and finds they have no merit.[4]

17  Accordingly, the objections to the settlement and attorneys' fees are overruled.

18      After considering all applicable factors, the Court concludes the settlement is

19  "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); <u>Staton</u>, 327 F.3d at 959.

20  Accordingly, the Court grants Plaintiffs' motion for final approval of the settlement.

21  **III.  Attorneys' Fees and Expenses**

22      With respect to the attorneys' fees, the Ninth Circuit has established a 25%

23  "benchmark" for common fund cases. <u>Torrisi v. Tucson Elec. Power Co.</u>, 8 F.3d 1370,

24  1376 (9th Cir. 1993). This "benchmark percentage should be adjusted, or replaced by

25  _____

26      [4]For example, one week after the settlement administrator filed a declaration
    demonstrating compliance with the Class Action Fairness Act's notice requirement, one

27  objector claimed "there is no evidence that counsel has complied with the requirements of the
    Class Action Fairness Act as it relates to providing state and federal authorities with notice of

28  the settlement." (<u>Compare</u> Doc No. 229-15, Declaration of Jennifer M. Keough - CAFA; <u>with</u>
    Doc. No. 233.)

a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." <u>Six Mexican Workers v. Arizona Citrus Growers</u>, 904 F.2d 1301, 1311 (1990). Regardless of whether the court uses the percentage approach or the lodestar method, the main inquiry is whether the end result is reasonable. <u>Powers v. Eichen</u>, 229 F.3d 1249, 1258 (9th Cir. 2000). The Ninth Circuit has identified a number of factors that may be relevant in determining if the award is reasonable: (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by class counsel; and (6) the awards made in similar cases. <u>See</u> <u>Vizcaino v. Microsoft Corp.</u>, 290 F.3d 1043, 1048-50 (9th Cir. 2002). Here, Plaintiffs have requested an award of $873,414.05 in attorneys' fees and $376,585.95 in out-of-pocket litigation costs for a total of $1,250,000. (Doc. No. 230-1 at 2, 25.) The requested amount of attorneys' fees is approximately 17.5% of the total fund.

The results achieved in this case were favorable. Class members are provided with immediate monetary and injunctive relief, and the overall award is substantial. Additionally, the risks of litigation were real and substantial. Further, the complexity and potential duration of the case, coupled with the intensity of settlement negotiations, indicate that a 17.5% award is reasonable. Moreover, class counsel took this case on a contingent fee basis, bearing the entire risk and cost of litigation. (Doc. No. 203-1 at 12.) Finally, the request for attorneys' fees in the amount of 17.5% of the common fund falls below the Ninth Circuit's 25% benchmark. <u>See</u> <u>Vasquez v. Coast Valley Roofing, Inc.</u>, 266 F.R.D. 482, 491 (E.D. Cal. 2010) (noting that "[t]he typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark"). Finally, class counsel has represented that $873,414.05 is approximately 39% of the amount that would have been calculated using the lodestar method. (Doc. No. 230-1 at 25-26.) <u>See</u> <u>In re Bluetooth Headset Prods. Liab. Litig.</u>, 654 F.3d 935, 944-45 (9th Cir. 2011)

1   (encouraging district courts to cross-check their calculations under the percentage-
2   of-recovery method against the lodestar method).

3       Plaintiffs have represented to the Court that class counsel have incurred litigation
4   expenses in the amount of $376,585.95. (Doc. No. 230-1 at 31; Doc. No. 229-2,
5   Vozzolo Decl. ¶ 69; Doc. No. 229-6, Declaration of D. Joshua Staub ¶ 13; Doc. No.
6   229-7, Declaration of Michael D. Braun ¶ 12; Doc. No. 229-8, Declaration of Bruce D,
7   Greenberg ¶ 13; Doc. No. 229-9, Declaration of Janet Spielberg ¶ 10; Doc. No. 229-10,
8   Declaration of Marc L. Godino ¶ 17; Doc. No. 229-11, Declaration of Rosemary M.
9   Rivas ¶ 25; Doc. No. 229-12, Declaration of Jason Hartley ¶ 13; Doc. No. 229-13,
10  Kravec Decl. ¶¶ 11-12.) After reviewing counsels' declarations regarding expenses,
11  the Court concludes $376,585.95 in litigation expenses is reasonable. Similarly,
12  Plaintiffs' request of $354,608 in costs for the settlement administrator is reasonable
13  in light of the fact that it is less than the $800,000 that was set aside by the settlement
14  agreement for administration costs. (Doc. No. 229-1 at 20.)

15      For these reasons, the Court concludes that an award of attorneys' fees in the
16  amount of $873,414.05, and litigation expenses in the amount of $376,585.95, are
17  reasonable and warranted in this case. Accordingly, the Court grants Plaintiffs' request
18  for attorneys' fees and expenses.

19  **V.    Incentive Payments to Class Representatives**

20      Finally, the $4,000 incentive awards for Plaintiffs Astiana, Babic, Diaz, Larsen,
21  and Sethavanish are reasonable. "The criteria courts may consider in determining
22  whether to make an incentive award include: 1) the risk to the class representative in
23  commencing suit, both financial and otherwise; 2) the notoriety and personal
24  difficulties encountered by the class representative; 3) the amount of time and effort
25  spent by the class representative; 4) the duration of the litigation and; 5) the personal
26  benefit (or lack thereof) enjoyed by the class representative as a result of the litigation."
27  Van Vranken v. Atlantic Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995)
28  (citations omitted).

11cv1967

After reviewing the factors announced in <u>Van Vranken</u>, the Court concludes that the requested incentive awards for the named Plaintiffs are reasonable. The $4,000 awards are well within the acceptable range awarded in similar cases. <u>See, e.g.</u>, <u>Fulford v. Logitech, Inc.</u>, No. 08-CV-02041, 2010 WL 807448, at *3 n.1 (N.D. Cal. 2010) (collecting cases awarding incentive payments ranging from $5,000 to $40,000). Each of the Plaintiffs advanced the interests of the absent class members by engaging in investigation and discovery, attending depositions, and assisting counsel with other aspects of the case. (<u>See</u> Doc. No. 229-2, Vozzolo Decl. ¶ 79; Doc. No. 229-13, Kravec Decl. ¶ 7.) Accordingly, the Court approves the $4,000 incentive awards for Plaintiffs Astiana, Babic, Diaz, Larsen, and Sethavanish.

## Conclusion

For the reasons stated above, it is ordered that:

1.  This Judgment incorporates by reference the definitions in the Stipulation of Settlement dated May 2, 2014 (Doc. No. 219, "Settlement") and all terms used in this Judgment shall have the same meanings as set forth in the Settlement.

2.  The Court has jurisdiction over the subject matter of this action and all parties to the action, including all Settlement Class Members.

3.  The Court certifies the following Class: All California residents who purchased any of the Products listed in paragraph 22 of the Settlement during the Settlement Class Period. Excluded from the Class are: (a) Kashi's employees, officers and directors; (b) persons or entities who purchased the Products for the purpose of re-sale; (c) retailers or re-sellers of the Products; (d) governmental entities; (e) persons who timely and properly exclude themselves from the Class as provided herein; and (f) the Court, the Court's immediate family, and Court staff.

4.  All Persons who satisfy the Class definition above, except those Class Members who timely and validly excluded themselves from the Class, are

1   Settlement Class Members bound by this Judgment.

2   5.   The form and method of notice satisfied the requirements of the Federal

3        Rules of Civil Procedure, 28 U.S.C. § 1715 ("CAFA"), and the United

4        States Constitution, including the Due Process Clause.

5   6.   No part of the Settlement, this Judgment, nor the fact of the settlement

6        constitutes any admission by any of the Parties of any liability,

7        wrongdoing or violation of law, damages or lack thereof, or of the validity

8        or invalidity of any claim or defense asserted in the Litigation.

9   7.   Class Counsel is awarded $873,414.05 in attorneys' fees, and

10       $376,585.95 in expenses.

11  8.   Plaintiff Class Representatives are each entitled to an incentive award of

12       $4,000. The attorneys' fees and expense award and Plaintiffs' incentive

13       awards are to be paid out of the Settlement Fund created by Kashi

14       pursuant to the time table set forth in the Settlement.

15  10.  Without affecting the finality of this Judgment, the Court reserves

16       jurisdiction over the implementation, administration, and enforcement of

17       this Judgment and the Settlement, and all matters arising thereunder.

18  11.  This document shall constitute a judgment for purposes of Rule 58 of the

19       Federal Rules of Civil Procedure.  Final Judgment in this action is

20       entered.  The Court dismisses with prejudice the action, and all Released

21       Claims against each and all Released Persons and without costs to any of

22       the Parties as against the others.

23  **IT IS SO ORDERED.**

24  DATED: September 2, 2014

25

26  MARILYN L. HUFF, District Judge
    UNITED STATES DISTRICT COURT

27

28

11cv1967

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 13th day of January, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record by Notices of Electronic Filing generated by CM/ECF.

_/s/ Michael T. Fraser_
Michael T. Fraser